

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 1 0 2002

Michael N. Milby
Clerk of Court

LAURA ESTELLA SALAZAR-REGINO,    )
                                  )
v.                                )
                                  )    CIVIL ACTION NO. B-02-045
E.M. TROMINSKI,                   )
DISTRICT DIRECTOR, THE            )
IMMIGRATION & NATURALIZATION      )
SERVICE, and                      )
JOHN ASHCROFT, UNITED STATES      )
ATTORNEY GENERAL                  )
_____    )


RESPONDENTS' RETURN AND
MOTION TO DISMISS
PETITION FOR WRIT OF HABEAS CORPUS


     COME NOW the Respondents, by and through Michael T. Shelby,

United States Attorney for the Southern District of Texas, and

file this Return and Motion to Dismiss the Petition for Writ of

Habeas Corpus in this case.  The petition for writ of habeas

corpus should be dismissed because the issues presented therein

have been decided by the Fifth Circuit Court of Appeals.


STATEMENT OF THE FACTS


     The Petitioner, Laura Estella Salazar-Regino ("Salazar-

Regino") entered the United States as a nonimmigrant on May 14,

1977.  She adjusted her status to a lawful permanent resident on May 7, 1981.

On October 11, 1996, a criminal indictment was filed charging that Salazar-Regino knowingly and intentionally possessed a usable quantity of marijuana in an amount of fifty pounds or less but more than five pounds.  She was entered a plea of guilty on January 7, 1997, in the District Court, Chambers County, Texas, to the offense of possession of marijuana, a third degree felony.  Adjudication of guilt was deferred and she was placed on community supervision for a period of ten years.

The Immigration and Naturalization Service (the "Service") issued a Notice to Appear to Salazar-Regino on July 27, 1998, charging that she was removable for having been convicted of a violation of a law relating to a controlled substance pursuant to §237(a)(2)(B)(i) of the Immigration and Nationality Act ("Act"), 8 U.S.C. §1227 (a)(2)(B)(i), and for having been convicted of an aggravated felony pursuant to §237(a)(2)(A)(iii) of the Act, 8 U.S.C. §1227 (a)(2)(A)(iii).  Prior to an immigration court hearing on February 22, 1999, Salazar-Regino filed a motion to terminate proceedings based on the Board of Immigration Appeals ("Board") decision in In Re Manrique, Int. Dec. 3250 (BIA 1995).  After her testimony to establish eligibility under the Manrique requirements, the immigration judge terminated proceedings.  The Service timely filed its Notice to Appeal.

On February 14, 2002, the Board sustained the Service appeal. In its decision, the Board found that, for immigration purposes, Salazar-Regino had been convicted of a drug offense even though adjudication of guilt was deferred. The Board also found that Salazar-Regino had been convicted of an aggravated felony for a drug trafficking offense, following Fifth Circuit Court of Appeals ("Fifth Circuit") precedent. Further, the Board declined to apply the Ninth Circuit Court of Appeals ("Ninth Circuit") decision in Lujan-Armendariz v. INS, 222 F.3d 728 (9th Cir. 2000) outside the Ninth Circuit. Salazar-Regino thereafter filed the instant petition for writ of habeas corpus.

## ARGUMENT

### I. SALAZAR-REGINO HAS BEEN CONVICTED OF AN OFFENSE THAT IS A VIOLATION OF A LAW RELATING TO A CONTROLLED SUBSTANCE EVEN THOUGH, AFTER A PLEA OF GUILTY, ADJUDICATION OF GUILT WAS DEFERRED AND SHE WAS PLACED ON TEN YEARS COMMUNITY SUPERVISION.

Salazar-Regino argues that she is not removable as charged because she is not properly considered convicted under the definition set forth at §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48). Because Salazar-Regino's petition is dependant on the construction of §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), the Court should have an understanding of the history and policy concerns that determined whether an alien would be considered to be convicted for immigration purposes prior to 1996.

3

Prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3546 (September 30, 1996) ("IIRIRA"), the Act did not contain a definition of the term "conviction." Its meaning was determined on a case-by-case basis in administrative and judicial decisions. Depending upon the policies and procedures involved, an alien's guilty plea and criminal disposition might -- or might not -- constitute a "conviction" for immigration purposes.

For example, the Board had a 40-year policy that a state conviction for a crime involving moral turpitude which had been set aside or vacated for rehabilitative reasons would not count as a conviction for deportation purposes. See Matter of Ozkok, 19 I & N Dec. 546, 548-59 (BIA 1988); Matter of Ibarra-Obando, 12 I & N Dec. 576 (BIA 1966; A.G. 1967); Matter of G-, 9 I & N Dec. 159 (BIA 1960; A.G. 1961); Matter of A-F-, 8 I & N Dec. 429, 455 (BIA, A.G. 1959).[1] The Attorney General refused to extend this policy to drug convictions, however. Thus, in 1959 the Attorney General decided that an alien's drug conviction would still count for immigration purposes, regardless of whether it had been vacated, expunged, or dismissed for rehabilitative reasons under state law, because this would promote uniform application of the

---

[1]     This policy was repeatedly challenged within the agency during the 1960's, but the Board maintained its policy toward expunged or vacated state convictions involving moral turpitude because the policy  was longstanding and there was no congressional intent to the contrary. See Matter of G-, 9 I & N at 164-65.

4

immigration laws and would be consistent with Congress' strict policy against drug offenders.  Matter of A-F-, 8 I & N Dec. 429, 455 (BIA, A.G. 1959).

In 1972, the First Circuit Court of Appeals ("First Circuit"), decided not to consider a conviction that had been set aside under the Federal Youth Corrections Act ("FYCA") to be a "conviction" for immigration purposes, because the First Circuit made the policy decision that it was more important to give greater priority to Congress' criminal policy of leniency toward youthful offenders than to its immigration policy of deporting drug offenders.  Mestre Morera v. INS, 462 F.2d 1030 (1st Cir. 1972).  Two years later, in 1974, the Board also made this policy choice, deciding not to consider a drug charge that had been expunged under the FYCA to be a conviction for immigration purposes.  Matter of Zingis, 14 I & N Dec. 621 (BIA 1974).

That same year then-Solicitor General Bork urged the Board to construe the term "conviction" generously in favor of aliens, give effect to state rehabilitative statutes, and extend to state youthful and first-time drug offenders guilty of simple possession the same policy of leniency the Board had extended to federal offenders.  Matter of Andrade, 14 I & N Dec. 651, 654 (BIA 1974) (Memorandum of Solicitor General).  The Board followed this recommendation, holding that the Federal First Offender Act ("FFOA") was the equivalent of the FYCA, and that as a matter of policy a drug conviction "expunged" under the FFOA, or a state

"counterpart," would not be considered a conviction for immigration purposes. Matter of Werk, 16 I & n Dec. 234 (BIA 1977); Matter of Kaneda, 16 I & N Dec. 677 (BIA 1979); Matter of Haddad, 16 I & N Dec. 253 (BIA 1977). The Board chose to apply this new policy narrowly, however, and considered drug offenders who were given rehabilitative treatment under state statutes that were broader in scope than the federal first-offender statute to have a "conviction" for immigration purposes. Matter of Deris, 20 I & N Dec. 5 (BIA 1989).

The policy decisions were made against the backdrop of an administrative construction of "conviction" that also required the following:  (1) a judicial finding of guilt, (2) some court action removing a defendant's case from active consideration, such as a fine, sentence, or suspension of sentence, and (3) that the disposition was considered to be a conviction by the state, at least for some purpose. See Matter of L-R, 8 I & N Dec. 269 (BIA 1959). By 1988, however, the Board had concluded that its interpretation of what constituted a conviction was unsatisfactory, because it did not fully encompass conviction-deferral procedures or prejudgment probation, i.e. dispositions in which aliens formally admitted their guilt but thereafter deferred proceedings and avoided a formal conviction, through a variety of state procedures. See Matter of Ozkok, 19 I & N Dec. 546. In addition, the Board was concerned that the variety of state rehabilitative procedures and the rulings regarding

6

expungements were leading to "anomalous and unfair results" and were permitting aliens who were clearly guilty of criminal conduct, and whom Congress intended to be considered convicted, to escape the immigration consequences of their conduct. Id. at 551. The Board adopted what it hoped would be a uniform federal standard defining "conviction." Id. For formal judgments, the Board concluded that it would consider a person to be convicted if "the Court has adjudicated him guilty or has entered a formal judgment of guilt." Id.

For "deferred adjudications" -- where a formal judgment was deferred or withheld pending probation -- the Board decided that a "conviction" should exist for immigration purposes if the following requirements were met:

> (1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt;

> (2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, a work-release or study-release program, revocation or suspension of a driver's license, deprivation of non-essential activities or privileges, or community service); and

> (3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

Matter of Ozkok, 19 I & N Dec. at 551-52.

This did not lead to the uniformity of result the Board had intended. Instead, criminal aliens who pled or were found guilty of an offense and had been sentenced to probation could still escape the immigration consequences of their conduct depending on the state procedures involved. Compare Martinez-Montoya v. INS, 904 F.2d 1018, 1021 (5th Cir. 1990) (holding that Texas guilty plea, withheld conviction, and probation is not a conviction for immigration purposes), with Yanez-Popp v. INS, 998 F.2d 231 (4th Cir. 1993) (holding that Maryland guilty plea without entry of judgment, plus probation, is a conviction) and Molina v. INS, 981 F.2d 14 (1st Cir. 1992) (holding that Rhode Island nolo contendere plea plus probation is a conviction).

In the 1990s, the Board reconsidered its policy toward first-time state drug offenders whose convictions had been vacated or expunged. In Matter of Manrique, Int. Dec. 3250, 1995 WL 314732 (BIA 1995), the Board decided that it would not consider a vacated state drug offense to be a conviction for immigration purposes if (1) the alien was convicted of simple possession; (2) it was his first offense; (3) he had received no previous first-offender treatment, and (4) the court entered an order pursuant to a state rehabilitative statute under which "the alien's criminal proceedings have been deferred pending successful completion of probation or the proceedings have been or will be dismissed after probation." Id. at 12.

8

Thus, as shown above, by 1996 there was no one, uniform federal definition of conviction for immigration purposes. Instead, there were a variety of exceptions that had evolved by balancing concerns about finality, respect for state dispositions, uniformity of results, strict federal drug policies, federal rehabilitation policies for youthful offenders and first-time drug offenders -- and by attempting to take into account the distinctions between conviction-deferral or pre-judgment probation procedures and post-conviction expungement procedures.

These various exceptions caused discrepant results. Depending on the procedures and competing policies involved, an alien who admitted his guilt and was given some form of probation, and subsequently obtained a dismissal or vacatur of the charge might, or might not, be convicted for federal immigration purposes.   The problems of uneven enforcement of federal immigration laws, and of aliens escaping the consequences of their criminal conduct because of a variety of rehabilitative procedures, which the Board had sought to remedy in Ozkok, still remained.   See generally Matter of Ozkok, 19 I & N Dec. at 550 - 51.

It was in this context that Congress enacted IIRIRA, which was signed by the President on September 30, 1996.   IIRIRA added a new provision to the Act.   Section 101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), sets forth for the first time a uniform

statutory definition of the term "conviction."  See IIRIRA

§322(a) codified at §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48)

(1998).  That new definition states as follows:

> (A)  The term 'conviction' means, with respect to an
>      alien, a formal judgment of guilt of the alien
>      entered by a court or, if adjudication of guilt
>      has been withheld, where--
>
>      (i)  a judge or jury as found the alien guilty or
>           the alien has entered a plea of guilty or
>           nolo contendere or has admitted sufficient
>           facts to warrant a finding of guilt, and
>
>      (ii) the judge has ordered some form of
>           punishment, penalty, or restraint on the
>           alien's liberty to be imposed.
>
> (B)  Any reference to a term of imprisonment or a
>      sentence with respect to an offense is deemed to
>      include the period of incarceration or confinement
>      ordered by a court of law regardless of any
>      suspension of the imposition or execution of that
>      imprisonment or sentence in whole or in part.

See §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48).  The Joint

Conference Report commented on the congressional intent in

drafting this provision as follows:

> This section deliberately broadens the scope of the
> definition of "conviction" beyond that adopted by the
> Board of Immigration Appeals in Matter of Ozkok, 19 I &
> N Dec. 546.  As the Board noted in Ozkok, there exist
> in the various States a myriad of provisions for
> ameliorating the effects of a conviction.  As a result,
> aliens who have clearly been guilty of criminal
> behavior and whom Congress intended to be considered
> "convicted" have escaped the immigration consequences
> normally attendant upon a conviction.  Ozkok, while
> making it more difficult for alien criminals to escape
> such consequences, does not go far enough to address
> situations where a judgment of guilt or imposition of
> sentence is suspended, conditioned upon the alien's
> future good behavior.  For example, the third prong of
> Ozkok requires that a judgment or adjudication of guilt
> may be entered if the alien violates a term or

condition of probation, without the need for any
further proceedings regarding guilt or innocence on the
original charge.  In some States, adjudication may be
"deferred" upon a finding or confession of guilt, and a
final judgment of guilt may not be imposed if the alien
violates probation until there is an additional
proceeding regarding the alien's guilt or innocence.
In such cases, the third prong of the Ozkok definition
prevents the original finding or confession of guilt to
be considered a "conviction" for deportation purposes.

     This new provision, by removing the third prong of
Ozkok, clarifies Congressional intent that even in
cases where adjudication is "deferred," the original
finding or confession of guilt is sufficient to
establish a "conviction" for purposes of the
immigration laws.

H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 224 (1996) 1996

WL 563320 *496-97 [Leg.History](emphasis added).

     Section 101(a)(48) of the Act, 8 U.S.C. §1101(a)(48),

creates a uniform definition of conviction that is no longer

dependent upon the vagaries of state law, and that requires an

alien who has pled guilty and received a deferred adjudication

and some form of probation to be considered convicted for

immigration purposes, regardless of whether there are further

proceedings available on the issue of guilt or innocence upon his

violation of probation.  Moosa v. INS, 171 F.3d 994, 1004-06 (5th

Cir. 1999); see also Matter of Punu, Int. Dec. 3364 (BIA 1999)

(the third prong of Ozkok for determining whether a conviction

exists with regard to deferred adjudication has been eliminated

by §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48) and deferred

adjudication in Texas is a conviction for immigration purposes);

Matter of Roldan-Santoyo, Int. Dec. 3377 (BIA 1999) (an alien has

11

been convicted for immigration purposes where there is a finding
or admission of guilt and some punishment is imposed).

As shown, Salazar-Regino pled guilty in state court to
possession of marijuana and was placed on probation. Pursuant to
§101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), this properly
constitutes a conviction because there was a guilty plea and some
form of punishment or restraint on liberty. Section 101(a)(48)
of the Act, 8 U.S.C. §1101(a)(48), eliminates the prior
administrative and judicial exceptions for state deferred
adjudications, prejudgment probations, vacated or expunged
offenses, or first-time state drug offenses. The plain reading
of the statute supports this conclusion.

A.    Congress' intent is clear and unambiguous:
the plain language of the statute requires
only a formal judgment of guilt, or a plea
and some form of restraint on liberty, and
there is no exception for vacated, dismissed,
or expunged convictions or first-time drug
offenses of simple possession, and none may
be implied.

The starting point for statutory construction is the
language of the statute. See INS v. Phinpathya, 464 U.S. 183,
188 (1984); see also INS v. Cardoza-Fonseca, 480 U.S. 421. 431
(1987). The plain meaning of the words used is the paramount
indicia of congressional intent. Cardoza-Fonseca, 480 U.S. at
431. It is assumed that the legislative purpose is expressed by
the plain meaning of the words used. Phinpathya, 464 U.S. at
189.

The plain language of §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), states that "the term 'conviction' means . . . the alien has entered a plea of guilty . . . and the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." §101(a)(48)(A) of the Act, 8 U.S.C. §1101(a)(48)(A). As the Fifth Circuit has noted, the language of the statute is plain and clear. See Moosa v. INS, 171 F.3d at 1005. Under the Fifth Circuit's reading of the statute, there is no question that Salazar-Regino's disposition comes squarely within this definition, because she pled guilty to her drug offense and was given probation.

When a definition declares what a term "means" -- as opposed to what it "includes" -- it excludes any meaning that is not stated. Colautti v. Franklin, 439 U.S. 379 (1978). In addition, as the Supreme Court has made very clear, exceptions to a statutory definition of "conviction" must be expressly stated and may not be implied. See Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 111 (1983), superseded by statute as stated in United States v. Sherbondy, 865 F.2d 996 (9th Cir. 1988); Andrus v. Glover Construction Co., 446 U.S. 608 (1980).

The definition of a conviction states, inter alia, that it "means" a guilty plea and some form of imposition on liberty. §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48) (emphasis added). See Moosa v. INS, 171 F.3d at 1005. "No modifier is present, and

nothing suggest[s] any restriction on the scope of the term 'convict[ion].'" Dickerson, 460 U.S. at 111. "Nothing on the face of the statute suggests a congressional intent to limit its coverage." Id. There are no exceptions for the kinds of state dispositions that the Board previously determined would not be considered a "conviction" for reasons of policy, such as vacated or expunged state convictions, or first-time drug offenses of simple possession under federal or state law.

Since this is the case, Salazar-Regino has been "convicted" for federal immigration purposes under the plain meaning of the statute. She pled guilty to possession of marijuana and she was given ten years community supervision. It is clear that Congress intended her to be considered convicted for immigration purposes. Congress has spoken to the precise question at issue. Its intent is clear.

        B.    Congress' intent is also clear and unambiguous, because the Committee Report shows that  Congress intended to "broade[n]" the definition of "conviction," eliminate the effects of ameliorating statutes, make guilt not rehabilitation  the dispositive factor, and prevent aliens who are guilty of criminal conduct from escaping the immigration consequences of their crimes.

A clear statement of legislative purpose in a committee report is powerful evidence of Congress' intent and should be given effect. See Cardoza-Fonseca, 480 U.S. 428; Mastro Plastics Corp. v. NLRB, 350 U.S. 270 (1956); Church of the Holy Trinity v. United States, 143 U.S. 457 (1892).

Congress explicitly stated in the Committee Report that the purpose of adding §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), was to "**deliberately broade[n]**" the preexisting definition of a conviction set forth in Ozkok.  See H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 224 (1996) (emphasis added).  This shows that Congress was dissatisfied with the preexisting interpretation of what constituted a conviction, and intended to expand it to include more kinds of dispositions than previously covered -- thus clearly encompassing Salazar-Regino's first-time state drug offense, which previously would not have qualified as a conviction under Matter of Manrique.

The Committee Report shows that Congress clearly intended the dispositive factor for determining whether an alien has been convicted for immigration purposes to be whether he is **guilty of criminal conduct** -- not the type of disposition he received or whether he is eligible for rehabilitative treatment of some type. Thus, in the Committee Report Congress states:

> As a result [of ameliorating provisions], aliens who have clearly been guilty of criminal behavior and whom Congress intended to be considered "convicted" have escaped the immigration consequences normally attendant upon a conviction.

H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 224 (1996).  The Committee Report also states that Congress wanted to stop treatment "that **prevents the original finding or confession of guilt to be considered a 'conviction' for deportation purposes**"

15

and that Congress was seeking **to "clarif[y] [its] intent that . . . the original finding or confession of guilt is sufficient to establish a 'conviction' for purposes of the immigration laws."** Id. (emphasis added).[2]

   The Committee Report demonstrates a clear and unambiguous intent on Congress' part to make the type of disposition that Salazar-Regino received a conviction for immigration purposes. It states that Congress wants to ensure that an alien who pleads guilty -- as Salazar-Regino did -- cannot escape the immigration consequences of her criminal conduct. Most importantly, it rejects the policies of leniency, rehabilitation, and deference to differing laws that led the Board and the courts to adopt the preexisting state exceptions to the definition of a conviction. Accordingly, the Committee Report  -- like the plain language of the statute -- makes clear that Congress intended Salazar-Regino to be "convicted" for immigration purposes because of her guilty plea and probation.

   C.  Congress' intent is clear and unambiguous: other related provisions of the Act and their legislative history show that Congress has now implemented a tough new immigration policy toward criminal aliens that rejects leniency and rehabilitation in favor of removal.

---

[2]  These latter two statements were made by Congress addressing, by way of example, "deferred adjudications," or the types of state dispositions that deferred or withheld judgment upon probation but then required some further proceeding on guilt or innocence upon a violation of probation.

It is well settled that in determining the meaning of a
statute, all related parts of the statute should be construed
together.  See, e.g., Sanford v. Commissioner, IRS, 308 U.S. 39
(1939).  Each provision that pertains to the same subject must be
construed in pari materia with other sections on the same
subject, and this rule has the greatest force where statutes were
enacted at the same time.  United States v. Steward, 311 U.S. 60
(1940); Erlenbaugh v. United States, 452 U.S. 967 (1972);  2B
Singer, Sutherland Statutory Construction §51.03 at 140 (5th ed.
1992).

Construing §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), in
pari materia with other provisions enacted in IIRIRA, it is clear
that the Board's construction in the present case reflects a new,
tougher policy on Congress' part toward criminal aliens, which
does not want them to be treated leniently.  Section 101(a)(48)
of the Act, 8 U.S.C. §1101(a)(48), was one of several amendments
in IIRIRA that were designed to implement this policy.  In
addition to enacting the section, Congress also enacted a
provision that expands the number of crimes that render an alien
deportable for commission of an "aggravated felony.  See
§101(a)(43) of the Act, 8 U.S.C. §1101(a)(43) (Supp. IV 1998).
It created new custody rules mandating the detention of criminal
aliens pending their proceedings.  See §236(c) of the Act, 8
U.S.C. §1226(c) (Supp. IV 1998).  It withdrew discretionary

relief for criminal aliens.  See §242A of the Act, 8 U.S.C.

§1229a (Supp. IV 1998).  And, Congress eliminated judicial review

for several kinds of criminal aliens.  See §242(a)(2)(C) of the

Act, 8 U.S.C. §1229(a)(2)(C).

Indeed, the legislative history of the bills that eventually

became IIRIRA are replete with concerns about recidivism.  It was

in this context that Congress enacted IIRIRA in 1996 and the

definition of "conviction" in §101(a)(48) of the Act, 8 U.S.C.

§1101(a)(48).  Congress' concerns about the unacceptably high

rate of recidivism of criminal aliens, and the threat they pose

to public safety shows a clear intent to reach all aliens - like

Salazar-Regino - who are guilty of criminal conduct and to not

afford them any leniency, especially by giving effect to

rehabilitative procedures or policies that would permit them to

avoid removal.  Section101(a)(48) of the Act, 8 U.S.C.

§1101(a)(48), implements that intent.

### II. SALAZAR-REGINO HAS BEEN CONVICTED OF AN AGGRAVATED FELONY AND IS INELIGIBLE FOR RELIEF.

Salazar-Regino argues that she has not been convicted of an

aggravated felony because her crime was simple possession of a

controlled substance and not a drug trafficking crime.  She bases

her position on the Board's holding in Matter of L-G-, 21 I&N

Dec. 89 (BIA 1995) and Matter of K-V-D-, Int. Dec. 3422 (BIA

1999).  Salazar-Regino contends that the Fifth Circuit's position

18

in U.S. v. Hernandez-Avalos, 251 F.3d 505 (5th Cir. 2001), upon which the Board relied in deciding her case, was dicta and, therefore, not controlling.  She believes that the Board should have relied on its prior holding in K-V-D-, in deciding her case. Salazar-Regino fails to consider that, prior to K-V-D-, the Fifth Circuit held that a crime that violated the Controlled Substances Act and is a felony under either state or federal law is an aggravated felony, albeit in a sentencing guidelines context. U.S. v. Hinojosa-Lopez, 130 F.3d 691 (5th Cir. 1997).

In Matter of L-G-, the Board held that the federal definition of "felony" within the meaning of 18 U.S.C. §924(c) (1994) applied in determining whether a crime was an aggravated felony.  Matter of L-G- at 94.  Further, the Board found that for immigration purposes, a state drug crime would qualify as a "drug trafficking crime" if it were punishable as a felony under the Controlled Substances Act (21 U.S.C. §801, et seq.).  Finally, the Board declared its disagreement with the Second Circuit Court of Appeals decision in Jenkins v. INS, 32 F.3d 11 (2d Cir. 1994) (a state conviction for a drug offense which is a felony under state law, but a misdemeanor under federal law is a conviction classified as an aggravated felony) and declined to apply the decision in cases arising outside the Second Circuit.  Matter of L-G- was decided in 1995 - prior to the enactment of IIRIRA.

The term "aggravated felony" was first added to the Act by Sec. 7342 of the Anti-Drug Abuse Act of 1988, Pub. L. 100-690, 102

Stat. 4181.  The term was first defined within the federal sentencing guidelines.  The types of crimes with immigration consequences have expanded over the years to its present definition. §101(a)(43) of the Act, 8 U.S.C. §1101(a)(43). Included in the definition of "aggravated felony" is "illicit trafficking in a controlled substance (as described in section 102 of the Controlled Substances Act) including a drug trafficking crime (as defined in section 924(c) of title 18, United States Code)."  §101(a)(43)(B) of the Act, 8 U.S.C. §1101(a)(43)(B).

In December 1997, the Fifth Circuit, in addressing the issue for the first time, found that a Texas felony conviction for possession of marijuana to be an "aggravated felony" as that term was defined within the sentencing guidelines.  U.S. v. Hinojosa-Lopez, 130 F.3d 691 (5th Cir. 1997). The United States Code defines a "drug trafficking crime" as "any felony **punishable** under the Controlled Substances Act (21 U.S.C. §801 et seq.) ... ."  18 U.S.C. 924(c)(2) (emphasis added). The Controlled Substances Act defines a "felony" as "any Federal or **State offense** classified by applicable Federal or State law as a felony."  21 U.S.C. §802(13) (emphasis added).  Further, the Controlled Substances Act defines "felony drug offense" as "an **offense** that **is punishable** by imprisonment for more than 1 year under any law of the United States or **of a State** ... ."  21 U.S.C. §802(44) (emphasis added); see generally, U.S. v. Sandle, 123 F.3d 809, 811-812 (5th Cir.

20

1997) (applying 21 U.S.C. §802(44) to a Texas possession of cocaine offense, for which the individual received deferred adjudication, and finding that a prior Texas state conviction was properly considered a prior felony drug offense sufficient to trigger the enhancement provisions of the federal Sentencing Guidelines).

In interpreting 18 U.S.C. §924(c)(2), the Fifth Circuit in Hinojosa-Lopez found that this provision "defines a 'drug trafficking crime' as 'encompassing *two separate* elements: (1) that the offense be punishable under the Controlled Substances Act (or one of the other two statutes defined); and (2) that the offense be a felony.'" Hinojosa-Lopez at 694 quoting U.S. v. Restrepo-Aguilar, 74 F.3d 361, 364 (1st Cir. 1996). The Fifth Circuit further explained that "a state drug offense is properly deemed a 'felony' within the meaning of 18 U.S.C. §924(c) as incorporated by application of note 7 to U.S.S.G. §2L1.2, if the offense is classified as a felony under the law of the relevant state, even if the same offense would be punishable only as a misdemeanor under federal law." Id.

Salazar-Regino was convicted under the Texas Controlled Substances Act §481.121 for possession of marijuana. She was charged and convicted for intentionally and knowingly possessing a usable quantity of marijuana in an amount of fifty pounds or less but more than five pounds. This offense is a third degree felony. In the State of Texas, a third degree felony is punishable by a

term of imprisonment of not more than ten years or less than two years. *Tex. Penal Code Ann.* §12.34 (Vernon 1998). The fact that adjudication of guilty was deferred and that the respondent received community supervision and not a term of imprisonment is irrelevant. The offense Salazar-Regino was convicted of is a **felony** which is **punishable** for a term of more than one year and is a violation of the Controlled Substances Act. Therefore, the definition of "aggravated felony" applies to this case and Salazar-Regino has been convicted of a crime classified as an aggravated felony.

In December 1999, the Board ignored the Fifth Circuit holding in Hinojosa-Lopez, finding that the decision defined the term "aggravated felony" in a sentencing guideline context and the Board was free to interpret that term differently in an immigration context. Matter of K-V-D-, Int. Dec. 3422 (BIA 1999). The Board then went on to hold that a Texas felony conviction for simple possession of a controlled substance, which is a misdemeanor under federal law, is not a conviction of an aggravated felony within the meaning of §101(a)(43)(B) of the Act, 8 U.S.C. §1101(a)(43)(B). Thus, it affirmed its prior decision in Matter of L-G-.

The Fifth Circuit revisited the issue of aggravated felony in May 2001. U.S. v. Hernandez-Avalos, 251 F.3d 505 (5th Cir. 2001). First, the Fifth Circuit affirmed its earlier holding in Hinojosa-Lopez that a state drug conviction is a "drug trafficking crime"

22

and, therefore, an "aggravated felony" if the offense is punishable under the Controlled Substances Act and if the offense is a felony under state law. The Hernandez-Avalos Court then went on to address some of the same concerns expressed by Salazar-Regino - the lack of uniform application of the law, both within the Circuit and throughout the United States.

Like Hernandez-Avalos, Salazar-Regino suggests that it is fundamentally unfair to apply the strict interpretation of "aggravated felony" as set out in Hinojosa-Lopez in some cases and the more lenient Board precedent to other cases. She contends that since she was found by the Board of having been convicted of an aggravated felony, she was not afforded the same opportunities as an alien whose removal proceedings were conducted at an earlier time and followed then-existing Board precedent. The Fifth Circuit clearly rejected that contention finding no reason "to hold that it is fundamentally unfair to treat Hernandez [or Salazar-Regino] as an aggravated felon because he should have the benefit of an agency's erroneous interpretation of applicable law." Hernandez-Avalos at 509.

Finally the Fifth Circuit found no validity in interpreting 18 U.S.C. §924(c) "differently based on this distinction between sentencing and immigration cases; it is, after all, the same words of the same phrase from the same statute that is being interpreted in each instance." Id.

> We agree that the plain language of the statutes "indicate[s] that Congress made a

23

> deliberate policy decision to include as an
> 'aggravated felony' a drug crime that is a
> felony under state law but only a misdemeanor
> under the [Controlled Substances Act]," [U.S.
> v.] Briones-Mata, 116 F.3d [308] at 310, and
> that the lack of a uniform substantive test
> for determining which drug offenses qualify as
> "aggravated felonies" "is the consequence of a
> deliberate policy choice by Congress" that the
> BIA and the courts cannot disregard. [U.S.
> v.] Restrepo-Aguilar, 74 F.3d [361] at 366.
> We are therefore unpersuaded by the BIA's and
> Second Circuit's approach to interpreting the
> identical statutory term differently depending
> upon whether the case involves sentencing or
> immigration.

Hernandez-Avalos at 510.

Salazar-Regino's claim that applying the Board's decision in Matter of Roldan and the Fifth Circuit's decision in Hernandez-Avalos to her case deprives her of procedural due process involving "fair notice" is suspect. Salazar-Regino's conviction was entered in January 1997, barely three months after the enactment of IIRIRA. It is absurd to believe that Salazar-Regino considered the immigration consequences of her actions prior to engaging in her criminal activity. Likewise, if Salazar-Regino had truly considered the immigration consequences as strategy in her criminal proceedings, she would have been alerted to the sweeping statutory changes brought about by IIRIRA and would have been cautious in relying on decisions rendered prior to its enactment. Hinojosa-Lopez was decided in December 1997 and should have been further warning that the law in this area was unstable and that a real

24

possibility existed that Salazar-Regino could be removed as a result of her conviction.

"The United States has always been a nation of immigrants; it is one of our greatest strengths. But aliens arriving at our shores must understand that residency in the United States is a privilege, not a right. ... For those aliens ... who engage in ... criminal acts during their stay here, this country will not offer its embrace." Attorney General John Ashcroft, May 9, 2002, decision to reverse the Board decision that blocked the deportation of a woman convicted of manslaughter in the death of an infant. Having no **right** to remain in this country, Salazar-Regino should have been aware of the possibility that her **privilege** to reside here legally was in jeopardy at the time she was arrested for her drug offense. To believe otherwise is unconscionable.

Until the Board has rendered its decision, there is no administratively final decision. As an ongoing application, the alien runs the risk that, during the pendency of the appeal, the law may change, perhaps in an unfavorable way. The law in this area is always evolving and what may be the law today may not be the law tomorrow. A case decided according to Board precedent yesterday may be decided differently today based on changes in the law, either statutorily or through court decisions. Salazar-Regino has been convicted of an offense defined by the Controlled Substances Act. The crime for which she was convicted - possession

of marijuana in an amount of between five and fifty pounds - is a felony in the State of Texas.  In the Fifth Circuit, this amounts to a "drug trafficking crime" and, therefore, an aggravated felony.

### III. THE RULING ON THE NINTH CIRCUIT COURT IN LUJAN-ARMENDARIZ v. INS SHOULD NOT BE APPLIED IN THIS CASE AS IT HAS NO EFFECT ON SALAZAR-REGINO'S CONVICTION.

In <u>Lujan-Armandariz v INS</u>, 222 F.3d 728 (9th Cir. 2000), the Ninth Circuit consolidated the cases of Mauro Roldan-Santoyo[3] and Lujan-Armendariz to determine whether the definition of "conviction" enacted in §101(a)(48)(A) of the Act, 8 U.S.C. §1101(a)(48)(A), repealed the Federal First Time Offender Act[4], and whether such treatment should be extended to the FFOA's state counterparts.  The first-time drug possession convictions of Roldan and Lujan had been set aside pursuant to state rehabilitative statutes.  Finding that their convictions satisfied the requirements of the FFOA, the Ninth Circuit

_____

[3] Roldan's appeal to the Board resulted in <u>Matter of Roldan</u>, Int. Dec. 3377 (BIA 1999).

[4] The FFOA applies to first-time federal drug offenders guilty of simple possession, who have the charges against them dismissed after they plead guilty and serve their term of probation.  The FFOA provides that after such a charge is dismissed, it "shall not be considered a conviction for the purpose of disqualification or disability imposed by law upon conviction of a crime, or for any purpose."  18 U.S.C. §3607(b).  Further, the person shall be restored, "in the contemplation of the law to the status he occupied before such arrest or institution of criminal proceedings." <u>Id.</u>, §3607(c).

26

concluded that the convictions of Roldan and Lujan were not "convictions" for immigration purposes and they rejected the interpretation of §101(a)(48)(A) of the Act, 8 U.S.C. §1101(a)(48)(A) adopted by the Board in Matter of Roldan, Int. Dec. 3377.

In reaching this conclusion, the Ninth Circuit decided that the Board had, in effect, wrongly construed the definition of "conviction" to be an implied repealer of the FFOA, when it was in fact a "minor exception" to that definition. Id. at 744-45. The panel then concluded that since the FFOA was an exception to the definition of "conviction," it would offend equal protection under the rule established by it in Garberding v. INS, 30 F.3d 1187 (9th Cir. 1994) not to extend FFOA treatment to comparable state offenders like Lujan and Roldan. Accordingly, the panel held Lujan and Roldan could not be treated as having a "conviction" for immigration purposes. Lujan, 222 F.3d at 744-45, 749.[5]

The Ninth Circuit's decision in Lujan conflicts with the plain language of §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), which, as shown and found by the Fifth Circuit in Moosa v. INS, 171 F.3d at 1005, is clear and unambiguous and permits no exceptions for rehabilitative state statutes. It should be noted

---

[5] It bears mentioning that in Garberding, the Ninth Circuit held that the FFOA need only be given effect to aliens who received lenient treatment under state programs. Here, because Congress has expressly barred the use of deferred adjudication, Salazar-Region's treatment should not be given effect.

that even the Lujan majority noted that its decision did not effect that the conviction definition has on state expungements under state rehabilitation laws in general. Lujan, 222 F.3d at 742.

The analysis applied by the panel in Lujan reached the issue of whether the conviction definition repeals the First Offender Act in whole or in part. The Court concluded that it does not and that the FFOA trumps the clear language of §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48). Lujan, 222 F.3d at 742. However, the conclusion is contrary to the longstanding rule of statutory construction that a general statute will not govern if a specific statute covers the case. Resolution Trust Corp v Seale, 13 F.3d 850, 854 (5th Cir. 1994) citing Green v Bock Laundry Mach. Co., 490 U.S. 504, 524 (1989); Morton v Mancari, 417 U.S. 535, 550-551 (1974). Applying these principles sub judice, §101(a)(48)(A) of the Act, 8 U.S.C. §1101(a)(48)(A), which specifically deals with the effects of rehabilitative expungements for immigration purposes, takes precedence over the FFOA.

To the extent that it has addressed the issue, the Fifth Circuit has agreed with the Board in finding that the definition of "conviction" encompasses Texas deferred adjudications. See Moosa v INS, 171 F.3d 994, 1005 (holding that Texas deferred adjudication was a "conviction" for purposes of determining an alien's eligibility for permanent residency pursuant to § 245A of the Act, 8 U.S.C. §1255a); Garnica-Vasquez v Reno, 210 F.3d 558

(5th Cir. 2000)(a habeas case of a petitioner with a deferred adjudication of guilty for indecency with a child in which the Court cited <u>Moosa</u> and noted that a deferred adjudication is a conviction for immigration purposes).

Additionally, two other courts of appeals have construed §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48) differently than the <u>Lujan</u> majority as to the clarity and meaning of the statute's language as applied to rehabilitative expungements. See <u>Herrera-Inirio v INS</u>, 208 F.3d 299 (1st Cir. 2000)(holding expunged crime of domestic violence is still a conviction for immigration purposes); <u>Griffiths v INS</u>, 243 F.3d 45 (1st Cir. 2001)(First Circuit defers to Board's interpretation of "conviction" where petitioner was subject to a "guilty filed" disposition as a result of a firearm violation under Massachusetts law) <u>United States v Campbell</u>, 167 F.3d 94 (2d Cir. 1999)(Texas drug conviction vacated upon completion of probation is a "conviction" within the meaning of new statute as incorporated by federal sentencing guidelines).

As argued, §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), makes "guilt" the dispositive factor in whether there is a "conviction" for immigration purposes - not what type of rehabilitative treatment a criminal received, and Congress intended to prevent aliens who were clearly guilty of criminal conduct from using a variety of rehabilitative procedures to escape the immigration consequences of their crimes.

Finally, the court in <u>Lujan</u> misunderstands the prior extension of federal first offender treatment to state offenders. In <u>Carr v. INS</u>, 86 F.3d 949, 951-52 (9th Cir, 1996), affirming that this extension had no effect for state firearms offenders, the Ninth Circuit repeatedly described <u>the agency's extension</u> of FFOA treatment to state offenders as a "policy," "practice," or "approach.". In addition, in <u>Paredes-Urrestarazu v. INS</u>, 36 F.3d 801, 814-15 (9th Cir. 1994), the Ninth Circuit also repeatedly described <u>the agency's</u> extension of FFOA treatment to state offenders as a "policy" or "a long-standing practice." Accordingly, the Ninth Circuit has clearly acknowledged that the extension of FFOA treatment derived out of Board policy and not a constitutional mandate.

Given that the extension of FFOA treatment resulted of Board policy, it is well-established that the Board may elect to proceed upon a different course. <u>Rust v. Sullivan</u>, 500 U.S. 173, 186-87 (1991) ("An agency is not required to 'establish rules of conduct to last forever'"). As the Supreme Court has acknowledged:

> The fact that the agency has from time to time changed its interpretation of the term . . . does not . . . lead us to conclude that no deference should be accorded the agency's interpretation of the statute. . . . On the contrary, the agency, . . . must consider varying interpretations and the wisdom of its policy on a continuing basis.

<u>Chevron</u>, 467 U.S. at 863-64. An agency need only justify its decision to change policy by providing a "reasoned analysis."

Motor Vehicle Manufacturers Association v. State Farm Mutual
Automobile Insurance, 463 U.S. 29, 42 (1983); Davila-Bardales v.
INS, 27 F.3d 1, 5(1st Cir. 1994).

With the Board was free to reconsider the wisdom of its
interpretation on a continuing basis, the Board was justified in
taking occasion to re-evaluate its policy regarding state
expungements of convictions for at least two reasons.  First,
Congress, in enacting §101(a)(48) of the Act, 8 U.S.C.
§1101(a)(48), provided a uniform definition of a "conviction" – a
definition which had previously been provided only by the Board's
interpretation.  Second, it was appropriate for the Board to
interpret the definition of a "conviction" and its policy
regarding expungements in light of the decisions of the Fifth
Circuit regarding the role of equal protection in the expungement
context.  As such, this Court should follow the Board and find
that under §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48),
Salazar-Regino stands convicted for immigration purposes.  The
plain language of the statute provides that Salazar-Regino is
removable by reason of having committed criminal offenses covered
by §237(a)(2)(A)(iii) of the Act, 8 U.S.C. §1227(a)(2)(A)(iii),
and §237(a)(2)(B)(i) of the Act, 8 U.S.C. §1227(a)(2)(B)(i).

It bears noting that Salazar-Regino was convicted of having
between five and fifty pounds of marijuana in her possession.
She was convicted in Chambers County, Texas, a county outside
Houston, Texas, but resides in the Rio Grande Valley of south

31

Texas.   The circumstances of her arrest and conviction are
unknown.

Unlike the federal statutes, Texas statutes do not provide
for possession with intent to deliver - an offender is either
charged with possession or delivery regardless of the amount
involved.   However, based solely on the amount involved, drug
trafficking can be inferred.   See e.g., Nunez-Payan v. INS, 811
F.2d 264, 267, rehrng denied 815 F.2d 384, 385 (5th Cir. 1987);
Matter of Rico, 16 I&N Dec. 181, 186 (BIA 1977); Matter of R-H-,
7 I&N Dec. 675, 676 (BIA 1958).   The Board has held that a state
drug offense is an aggravated felony under state law if it is a
felony under state law and has a nexus to the unlawful trading,
dealing, or selling of a controlled substance to be considered
illicit trafficking as commonly defined.   Matter of Davis, 20 I&N
Dec. 536 (BIA 1992).   Construed as a drug trafficking crime,
Salazar-Regino would not have been afforded FFOA treatment.   She
is not being treated differently because she was convicted of
possession of marijuana in the State of Texas.

Salazar-Regino's position that just because the Ninth
Circuit reached a result that was favorable to the aliens in
Lujan-Armendariz, she should be afforded the same consideration
regardless of the fact that she falls within the jurisdiction of
the Fifth Circuit is also unreasonable.   Such a broad statement
has been rejected by both the Eleventh Circuit Court of Appeals
("Eleventh Circuit") and the Eighth Circuit Court of Appeals

("Eighth Circuit").  Fernandez-Bernal v. Attorney General, 257

F.3d 1304 (11th Cir. 2001); Vasquez-Velezmoro v. INS, 281 F.3d

693 (8th Cir. 2002).

The Eleventh Circuit in Fernandez-Bernal found that it was

not a violation of equal protection to treat an alien convicted

under a state rehabilitative statute differently than an alien

convicted under FFOA if the term of probation was different.

"[T]reating aliens differently based on the nature of the

sentence they receive" does not violate equal protection.

Fernandez-Bernal at 1317.  "[N]othing requires that aliens whose

sentences would not have been expunged under the FFOA be given

better treatment under immigration laws merely because they

received their sentences and expungements under state law."  Id.

at 1317, n.12.

Echoing the Eleventh Circuit's findings, the Eighth Circuit

found that although a state defendant and a defendant under FFOA

may be "similarly situated (in that the intent of the judge was

to provide them with the opportunity to have their convictions

expunged), we still see a rational basis for treating differently

state and federal convictions that are expunged."  Vasquez-

Velezmoro at 698.  "There are conceivable states of facts to

explain treating differently aliens with state expunged

convictions and aliens with FFOA expunged convictions."  Id.

The term of Salazar-Regino's probation was ten years -

significantly longer than the one-year-or-less sentence of

probation that defendants need to be eligible for FFOA relief. Since Salazar-Regino's sentence is different, treating her differently here is not arbitrary or unreasonable.

## CONCLUSION

Salazar-Regino has been "convicted" of a criminal offense as that term is defined by the Act and interpreted by the Board and the Fifth Circuit. Additionally, Salazar-Regino has been convicted of an "aggravated felony" as that term is defined by the Act and interpreted by the Fifth Circuit. For the foregoing reasons, the Court should dismiss the petition for review.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney
Southern District of Texas

LISA M. PUTNAM
Special Assistant U.S. Attorney
P.O. Box 1711
Harlingen, Texas 78551
Tel:  (956) 389-7051
Georgia Bar No. 590315
May _10_, 2002          Federal Bar No. 23937

34

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Respondents' Return and Motion to Dismiss the Petition for Writ of Habeas Corpus was mailed via first class mail, postage prepaid to:

> Lisa Brodyaga, Esquire
> Refugio Del Rio Grande
> 17891 Landrum Park Rd.
> San Benito, TX  78586

on this 10th day of May, 2002.

LISA M. PUTNAM
Special Assistant United States Attorney

35