# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
FILED

MAY 3 0 2002

Michael N. Milby
Clerk of Court

LAURA ESTELLA SALAZAR-REGINO,　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　C.A.  B-02-045
　　　　　　　　　　　　　　　　)
E.M. TROMINSKI, et al.　　　　 )
_____)

## PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

## TABLE OF CONTENTS

I.  ISSUES ADDRESSED ....................................... 2

II.  ARGUMENT ............................................. 2

A.  AS APPLIED HEREIN, IT WOULD VIOLATE BOTH DUE PROCESS AND EQUAL PROTECTION TO CONCLUDE THAT MS. SALAZAR IS SUBJECT TO REMOVAL, AND INELIGIBLE FOR RELIEF, AND IT WAS THEREFORE INCUMBENT UPON THE BIA TO SEEK AN ALTERNATIVE INTERPRETATION OF 8 U.S.C. §1101(a)(48); ONE WHICH DOES NOT RENDER IT CONSTITUTIONALLY INFIRM ................. 3

1.  UNDER THE LAW AS INTERPRETED WHEN SHE PLED GUILTY IN EXCHANGE FOR DEFERRED ADJUDICATION, THIS DISPOSITION CARRIED NO IMMIGRATION CONSEQUENCES, AND IT VIOLATES SUBSTANTIVE DUE PROCESS TO APPLY A NEW INTERPRETATION UNDER WHICH REMOVAL IS A RETROACTIVE, AND MANDATORY, CONSEQUENCE OF SUCH A DISPOSITION ................. 4

2.  SUCH RETROACTIVE APPLICATION ALSO OFFENDS PROCEDURAL DUE PROCESS, BECAUSE IT DEPRIVED MS SALAZAR OF "FAIR NOTICE" OF THE MAGNITUDE OF THE PENALTY THAT COULD BE IMPOSED AS A RESULT OF HER PLEA TO THE CRIMINAL CHARGES ............. 10

a. There are limits on an agency's use of adjudication to announce new standards, where people have relied on the prior standards .................... 10

b.  The Constitutional mandate of "fair notice" also precludes the application of the new definition to Ms. Salazar ............................... 12

3.  APPLICATION OF THESE NEW INTERPRETATIONS TO MS. SALAZAR ALSO OFFENDS EQUAL PROTECTION, IN VARIOUS WAYS .................................. 16

a.  Prosecuting authority .................. 16

b.  Timing of proceedings ................. 17

c.  Location of proceedings ............... 17

B. EVEN UNDER *U.S. v. HERNANDEZ-AVALOS*, AN ALTERNATE INTERPRETATION IS POSSIBLE, SINCE TEXAS LAW REQUIRES THAT A DEFENDANT CONVICTED OF A FELONY BE SENTENCED TO A SPECIFIC PERIOD OF INCARCERATION, AND NO SUCH PERIOD OF INCARCERATION IS IMPOSED WITH DEFERRED ADJUDICATION ...   18

III.   CONCLUSION ...........................................   20

CERTIFICATE OF SERVICE ...................................   21

## TABLE OF AUTHORITIES

### CASES

*Accardi v. Shaughnessy*,
     347 U.S. 260 (1954)  . . . . . . . . . . . . . . . . 11, 15

*Arce v. Walker*,
     139 F.3d 329 (2nd Cir. 1998) . . . . . . . . . . . . . 12

*BMW of North America v. Gore*,
     517 U.S. 559 (1996)  . . . . . . . . . . . . . . . . 13-15

*Bouie v. City of Columbia*,
     378 U.S. 347 (1964)  . . . . . . . . . . . . . . . . 13, 14

*Bradley v. School Bd. of City of Richmond*,
     416 U.S. 696 (1974)  . . . . . . . . . . . . . . . . . . 15

*Bridges v. Wixon*, 326 U.S.
     326 U.S. 135 (1945)  . . . . . . . . . . . . . . . . . 4, 12

*Cantu-Deldagillo v. Trominski*,
     C.A. B-02-114 (S.D.Tx) pending . . . . . . . . . . . . 14

*Francis v. INS*,
     532 F.2d 268 (2nd Cir. 1976) . . . . . . . . . . . . . 10

*Garberding v. INS*,
     30 F.3d 1187 (9th Cir.1994) . . . . . . . . . . . . . . 9

*Gerbier v. Holmes*,
     280 F.3d. 297 (3rd Cir. 2002)
     . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18

*Griffon v. USDHHS,*
    802 F.2d 146 (5th Cir. 1986)  . . . . . . . . . . . . .  15

*Hamdan v. INS,*
    98 F.3d 183 (5th Cir. 1996)  . . . . . . . . . . . . .  8, 17

*Hoang v. Comfort,*
    282 F.3d 1247 (10th Cir. 2002)  . . . . . . . . . . .  1, 7

*INS v. Cardoza-Fonseca,*
    94 L.Ed2d 434 (1987) . . . . . . . . . . . . . . . .  2, 18

*INS v. St. Cyr,*
    121 S.Ct. 2271 (2001)  . . . . . . . . . . .  1, 11, 12, 15

*Jideonwo v. INS,*
    224 F.3d 692 (7th Cir 2000)  . . . . . . . . . . .  12, 15

*Kaiser Aluminum & Chemical Corp. v. Bonjorno,*
    494 U.S. 827 (1990)  . . . . . . . . . . . . . . . . .  10

*Kim v. Ziglar,*
    276 F.3d 523 (9th Cir. 2002)  . . . . . . . . . . . .  1, 7

*Knuck v. Wainwright,*
    759 F.2d 856 (11th Cir. 1985)  . . . . . . . . . . . .  16

*Landgraf v. USI Film Prods.,*
    511 U.S. 244 (1994)  . . . . . . . . . . . . .  11, 15

*Landon v. Plasencia,*
    459 U.S. 21 (1982) . . . . . . . . . . . . . . . .  4, 6

*Lankford v. Idaho,*
    500 U.S. 110 (1991)  . . . . . . . . . . . . . . . .  13

*Logan v. Zimmerman Brush,*
    455 U.S. 422 (1982)  . . . . . . . . . . . . . . . .  17

*Lujan-Armendariz v. INS,*
    222 F.3d 728 (9th Cir. 2000)  . . . . . . . . . . .  9, 16, 18

*M.L.B. v. S.L.J.,*
    117 S.Ct. 555 (1996)  . . . . . . . . . . . . . . .  7

iii

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . 6

*Miller v. Florida*,
    482 U.S. 423 (1987) . . . . . . . . . . . . . . . . . 13

*Moore v. City of East Cleveland*,
    431 U.S. 494 (1977) . . . . . . . . . . . . . . . 4, 5

*NLRB v. Bell Aerospace Co.*,
    416 U.S. 267 (1974) . . . . . . . . . . . . . . . . . 11

*Paredes- Urrestarazu v. INS*,
    36 F.3d 801 (9th Cir. 1994) . . . . . . . . . . . . 9

*Patel v. Zemski*,
    275 F.3d 299 (3rd Cir. 2001) . . . . . . . . . . 1, 7

*Pension Benefit Guaranty Corp. v. Gray*,
    467 U.S. 717 (1984) . . . . . . . . . . . . . . . . . 9

*Reno v. American-Arab Anti Discrimination Committee*,
    525 U.S. 471 (1999) . . . . . . . . . . . . . . . . . 12

*Reno v. Flores*,
    507 U.S. 292 (1993) . . . . . . . . . . . . . . . . . 7

*Ruangswang v. INS*,
    591 F.2d 39 (9th Cir.1978) . . . . . . . . . . . . . 11

*SEC v. Chenery Corp.,* 3
    32 U.S. 194 (1947) . . . . . . . . . . . . . . . . . 11

*Shaffer v. Heitner*,
    433 U.S. 186 (1977) . . . . . . . . . . . . . . 13, 14

*Stanley v. Illinois*,
    405 U.S. 645 (1972) . . . . . . . 4, 5*Troxel v. Granville*,
    120 S.Ct. 2054 (2000) . . . . . . . . . . . . . . . 7

*U.S. v. Hernandez-Avalos*,
    251 F.3d 505 (5th Cir. 2001) . . . . . . . 2, 3, 10, 17-19

*U.S. v. Moosa*,
    171 F.3d 994 (5th Cir. 1999) . . . . . . . . . . . . . . 18

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) . . . . . . . . . . . . . . . . . . 6, 7

*Webster v. Reproductive Health Services*,
    492 U.S. 490 (1989) . . . . . . . . . . . . . . . . . 2, 18

*Zadvydas v. Davis*,
    121 S.Ct. 2491 (2001) . . . . . . . . . . . . . . . 1, 2, 7


## STATUTES

8 U.S.C. §1101(a)(48)(A) . . . . . . . . . . . . . . 2, 3, 5, 8

8 U.S.C. §1182(c)
    "§212(c)" . . . . . . . . . . . . . . . . . . . . . 5, 10

8 U.S.C. §1229b(a) . . . . . . . . . . . . . . . . . . . . 5

8 U.S.C. §§1101(a)(43)(B) . . . . . . . . . . . . . . . . . 2

Federal First Offender Act,
    18 U.S.C. §3607(a) . . . . . . . . . . . . . . 3, 9, 16

Texas Code of Criminal Procedure,
    Article 42.12, Section 5(a) . . . . . . . . . . . . . . 8

Texas Penal Code,
    §§13.32 - 13.35 . . . . . . . . . . . . . . . . . . . 20


## ADMINISTRATIVE DECISIONS

*Matter of K-V-D-*,
    Int. Dec. 3422 (BIA 1999) . . . . . . . . . . . 8, 18, 19

*Matter of L-G-*,
    21 I&N Dec. 89 (BIA 1995) . . . . . . . . . . 8, 14, 18

*Matter of Manrique*,
    21 I&N Dec. 58 (BIA 1995) . . . . . . . 3, 8, 14, 15, 18

v

*Matter of Ozkok,*
     19 I&N Dec. 546 (BIA 1988) . . . . . . . . . . . . . . . 8, 14

*Matter of Roldan,*
     Int. Dec. No. 3377 (BIA 1999) . . . . . . 2, 3, 10, 17, 18

*Matter of Silva,*
     16 I&N Dec. 26 (BIA 1976) . . . . . . . . . . . . . . . 10


## OTHER AUTHORITIES

Nancy Morawetz,
     "Rethinking Retroactive Deportation Laws and the Due
     Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998
   . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
FILED

MAY 3 0 2002

Michael N. Milby
Clerk of Court

LAURA ESTELLA SALAZAR-REGINO,  )
                               )
v.                             )        C.A.   B-02-045
                               )
E.M. TROMINSKI, et al.         )
_____)

### PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

Petitioner, through the undersigned, respectfully files the instant
opposition to Respondent's Motion to Dismiss, (herein cited as
(INS:___)), and would address the constitutional issues raised
herein, most of which were not considered in Respondents' Return
and Motion to Dismiss. [1]  Said constitutional arguments derive in
large part from two recent Supreme Court cases, to wit, *INS v. St.
Cyr,* 121 S.Ct. 2271 (2001), and *Zadvydas v. Davis,* 121 S.Ct. 2491
(2001), and several lower court cases applying the retroactivity
and Substantive Due Process principles articulated therein in other
contexts relating to immigrants. *See, e.g., Hoang v. Comfort,* 282
F.3d 1247 (10th Cir. 2002); *Kim v. Ziglar,* 276 F.3d 523 (9th Cir.
2002), and *Patel v. Zemski,* 275 F.3d 299 (3rd Cir. 2001).

These arguments find additional support in older lines of Supreme
Court cases, setting limits on the use of adjudication for the
purpose of announcing new rules of conduct by administrative
agencies, and the procedural Due Process right to "fair notice" of
the scope which may be imposed for misconduct, and in more recent
cases, such as *Gerbier v. Holmes,* 280 F.3d. 297 (3rd Cir. 2002).

---

[1] While Respondents discuss the Federal First Offender Act,
("FFOA"), they do not address any of the other Constitutional
issues raised in Ms. Salazar's petition, including the other Equal
Protection claims, based on timing, and location of the
proceedings, (Counts 2(b) and 2(c)), the Substantive Due Process
issue, (Count 3), and Procedural Due Process questions, (Count 4).

## I.  ISSUES ADDRESSED

A.  IT WOULD VIOLATE BOTH DUE PROCESS AND EQUAL PROTECTION TO CONCLUDE THAT PETITIONER IS BOTH SUBJECT TO REMOVAL, AND INELIGIBLE FOR ANY FORM OF DISCRETIONARY RELIEF, AND IT IS THEREFORE INCUMBENT ON THE COURT TO ADOPT ANY REASONABLE INTERPRETATION OF THE STATUTE WHICH DOES NOT RENDER IT CONSTITUTIONALLY INFIRM AS APPLIED.

    1.  WHEN MS. SALAZAR PLED GUILTY TO THE MARIJUANA CHARGE, IN EXCHANGE FOR DEFERRED ADJUDICATION, THIS DISPOSITION CARRIED NO IMMIGRATION CONSEQUENCES AT ALL, AND IT VIOLATES SUBSTANTIVE DUE PROCESS TO RETROACTIVELY APPLY NEW INTERPRETATIONS OF THE LAW, UNDER WHICH DEPORTATION BECOMES A MANDATORY CONSEQUENCE OF HER PLEA.

    2.  IF APPLIED TO RENDER MS. SALAZAR SUBJECT TO MANDATORY REMOVAL, 8 U.S.C. §§1101(a)(48)(A) AND (a)(43)(B) WOULD ALSO VIOLATE PROCEDURAL DUE PROCESS.

    3.  IT WOULD ALSO VIOLATE EQUAL PROTECTION TO APPLY THESE PROVISIONS IN THIS MANNER TO MS. SALAZAR.

B.  AN ALTERNATIVE CONSTRUCTION IS FAIRLY POSSIBLE UNDER TEXAS LAW.

## II.  ARGUMENT

While the BIA cannot rule upon the constitutionality of the statute it administers, the existence of serious constitutional problems mandates that it seek a construction of the statute which would avoid them. *See, Webster v. Reproductive Health Services*, 492 U.S. 490,562 (1989) (where fairly possible, statutes must be construed to avoid serious constitutional problems); *INS v. Cardoza-Fonseca,* 94 L.Ed2d 434,459 (1987) (reaffirming "the long-standing principle of construing any lingering ambiguities in deportation statutes in favor of the alien."). *See also, Zadvydas, v. Underdown, supra,* reading a "reasonable time" limitation into the statute authorizing detention of aliens who could not be promptly deported.  The BIA failed to follow this mandate in the case at bar. Applying 8 U.S.C. §§1101(a)(48)(A) and (a)(43)(B), as interpreted in *Matter of Roldan*, Int. Dec. No. 3377 (BIA 1999) and *U.S. v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir. 2001) raises grave constitutional concerns. And, it is urged, an alternate construction is fairly possible.

2

**A. AS APPLIED HEREIN, IT WOULD VIOLATE BOTH DUE PROCESS AND EQUAL PROTECTION TO CONCLUDE THAT MS. SALAZAR IS SUBJECT TO REMOVAL, AND INELIGIBLE FOR DISCRETIONARY RELIEF, AND IT WAS THEREFORE INCUMBENT UPON THE BIA TO SEEK AN ALTERNATIVE INTERPRETATION OF 8 U.S.C. §1101(a)(48); ONE WHICH DOES NOT RENDER IT CONSTITUTIONALLY INFIRM.**

Ms. Salazar would first note the internal inconsistency and illogic of determining whether a conviction exists by looking to federal, rather than state law, and then looking to state law to determine whether that conviction was for a felony, but doing so without considering state requirements for a felony conviction. This, in essence, is the result of applying both *Matter of Roldan* and *U.S. v. Hernandez-Avalos* herein. These problems are magnified where, as here, the Petitioner is a lawful permanent resident, ("LPR"), and where these cases are applied to actions taken prior to their issuance, and in reliance on contrary interpretations of the law.

When Ms. Salazar negotiated her plea agreement, it carried no immigration consequences at all, and she relied on this fact in deciding how to proceed. *See, Matter of Manrique,* 21 I&N Dec. 58 (BIA 1995), holding that such a disposition would not be considered to be a conviction for immigration purposes. Even though the statutory definition of "conviction" was amended by IIRIRA, on September 30, 1996, most attorneys believed that this would not affect the vitality of *Manrique,* which was based on policy considerations, informed by Equal Protections concerns vis-a-vis the Federal First Offender Act. [2] Therefore, the immigration bar, and criminal defense attorneys, considered it to still be good law, even after the enactment of IIRIRA. Not coincidentally, so did Immigration Judge David Ayala, who, on February 22, 1999, terminated proceedings on the basis of *Matter of Manrique.*

---

[2]    *Manrique,* like the Federal First Offender Act, ("FFOA"), was not limited to matters which had already been vacated, as implied at (INS:8), but covered such dispositions at all stages of the criminal proceedings, from plea to vacatur.

3

**1.  UNDER THE LAW AS INTERPRETED WHEN SHE AGREED TO PLEAD
GUILTY TO THE MARIJUANA CHARGE IN EXCHANGE FOR DEFERRED
ADJUDICATION, THIS DISPOSITION CARRIED NO IMMIGRATION
CONSEQUENCES, AND IT VIOLATES SUBSTANTIVE DUE PROCESS TO
APPLY RETROACTIVELY A NEW INTERPRETATION UNDER WHICH
REMOVAL IS A MANDATORY CONSEQUENCE OF SUCH A DISPOSITION.**

As a lawful permanent resident, Ms. Salazar has a fundamental
liberty interest in being able to live and work in the United
States, and in remaining here with her family. *See, Landon v.
Plasencia,* 459 U.S. 21,34 (1982), citing *Bridges v. Wixon,* 326 U.S.
326 U.S. 135,154 (1945); *Moore v. City of East Cleveland,* 431 U.S.
494,499 (1977), and *Stanley v. Illinois,* 405 U.S. 645,651 (1972):

> Plasencia's interest here is, without question, a weighty
> one.  She stands to lose the right "to stay and live and
> work in this land of freedom," ...  Further, she may lose
> the right to rejoin her immediate family, a right that
> ranks high among the interests of the individual. ...

*Moore* and *Stanley* are both fundamental rights cases, involving
family relationships. *Stanley* struck down a conclusive presumption
similar to that involved herein, and *Moore* simply concluded that
the interest advanced by the State was insufficient to justify the
particular intrusion into the family unit. As an LPR, Ms. Salazar
enjoys the same Due Process rights, to develop and enjoy intimate
family relationships in the United States.

In *Stanley,* the Court addressed the state's ability to interfere
with these relationships by establishing a "conclusive presumption"
that certain categories of individuals, to wit, unwed fathers, were
not worthy of the privilege of being custodians of their children.
The Court reasoned as follows, 405 U.S. at 649 (emphasis added):

> ... Is a presumption that distinguishes and burdens all
> unwed fathers constitutionally repugnant? **We conclude
> that, as a matter of due process of law, Stanley was
> entitled to a hearing on his fitness as a parent before**

4

**his children were taken from him** and that, by denying him a hearing and extending it to all other parents whose custody of their children is challenged, the State denied Stanley the equal protection of the laws guaranteed by the Fourteenth Amendment.

A similar question was raised in *Moore v. City of East Cleveland, supra*. There, the issue was whether the State had gone too far in regulating family relationships, by defining the characteristics of an "acceptable" family, *id.* at 499 (internal citations omitted):

When a city undertakes such intrusive regulation of the family,.. the usual judicial deference to the legislature is inappropriate. "This Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." ... have consistently acknowledged a "private realm of family life which the state cannot enter." ... Of course, the family is not beyond regulation. ... But when the government intrudes on choices concerning family living arrangements, this Court must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation. ...

Both forms of analysis are pertinent herein. Ms. Salazar asserts that the combination of provisions enacted by IIRIRA, 8 U.S.C. §1101(a)(48)(A), together with the repeal of §212(c), which was replaced by 8 U.S.C. §1229b(a), containing an absolute prohibition on granting discretionary relief to anyone convicted of an "aggravated felony," (plus the overly expansive definition of what now constitutes such "aggravated felonies"), creates an unconstitutional "conclusive presumption" that all LPRs who have been convicted of any offense in that list are unworthy of being able to stay with their families in the United States, even where the State has deemed it appropriate to grant rehabilitative treatment to a first time offender. Similarly, by failing to permit any showing of countervailing equities, these provisions are unjustifiable. Thus, it is submitted, these provisions are not sufficiently narrowly tailored to meet a compelling state interest.

5

In *Landon v. Placencia,* the Court further noted as follows, *id.*:

> The government's interest in efficient administration of
> the immigration laws at the border also is weighty.
> Further, it must weigh heavily in the balance that
> control over matters of immigration is a sovereign
> prerogative, largely within the control of the executive
> and the legislature.

The Court resolved the seeming tension between these principles as
follows, *id.*, at 34-35:

> The role of the judiciary is limited to determining
> whether the procedures meet the essential standard of
> fairness under the Due Process Clause and does not extend
> to imposing procedures that merely displace congressional
> choices of policy.

The Court then applied the balancing test of *Mathews v. Eldridge,*
424 U.S. 319,334-335 (1976), and concluded that the exclusion
procedures were not *per se* constitutionally inadequate, but that
there was a question as to whether or the procedures actually
received had been adequate, and remanded for further proceedings.
In other words, the Court did *not* find that Congress' plenary
control over immigration diminished the fundamental right involved.
To the contrary, the Court analyzed the case as one involving
Procedural Due Process, to which INS conceded she was entitled.
There was no claim of any Substantive Due Process violation.

Nonetheless, the existence of this fundamental right, which, it
must be emphasized, is enjoyed only by those who have a *right* to
reside in this country, (i.e., by lawful permanent residents),
triggers a "compelling state interest" analysis in determining
whether a given abridgement passes Substantive Due Process muster.
*Washington v. Glucksberg,* 521 U.S. 702,721 (1997):

> As we stated recently in [*City of Boerne v.] Flores,* the
> Fourteenth Amendment "forbids the government to infringe
> ... 'fundamental' liberty interests *at all,* no matter

6

what process is provided, unless the infringement is
narrowly tailored to serve a compelling state interest."

A statute may violate Substantive Due Process either on its face,
or, (as is the case herein), as applied in a particular situation.
See, Troxel v. Granville, 120 S.Ct. 2054 (2000) (As applied,
Washington statute violated substantive due process rights of
mother). See also, Washington v. Glucksberg, supra at 720 (The
Fourteenth Amendment's Due Process Clause has a substantive
component that "provides heightened protection against government
interference with certain fundamental rights and liberty
interests," including parents' fundamental right to make decisions
concerning the care, custody, and control of their children);
M.L.B. v. S.L.J., 117 S.Ct. 555,557 (1996) ("The interest of
parents in their relationship with their children is sufficiently
fundamental to come within the finite class of liberty interests
protected by the Fourteenth Amendment").

This analysis is underscored by the recent decision of the Supreme
Court in Zadvydas v. Davis, supra.    Rather than a fundamental
right, Zadvydas involved a liberty interest, to wit, the indefinite
detention of aliens under final deportation orders which could not
be effectuated in a reasonable period of time. But by applying
Substantive Due Process analysis to this issue, the Court
reaffirmed the continued vitality of that doctrine, as applied to
lawful permanent residents. See also, Patel v. Zemski, Hoang v.
Comfort, and Kim v. Ziglar, applying the same analysis to the
mandatory detention of LPRs convicted of certain offenses. [3]

Applying Substantive Due Process analysis to the case at bar, it is

_____

[3] Reno v. Flores, 507 U.S. 292 (1993), found that a regulation
regarding detained juvenile aliens did not violate substantive due
process, while noting, id. at 304, that "the child's fundamental
rights must not be impaired."

7

respectfully urged that §1101(a)(48)(A) is not narrowly tailored to serve a compelling state interest, and that as applied herein, it violates Substantive Due Process. Ms. Salazar has resided in the United States since 1977, when she was six years old. She has been a lawful permanent resident since 1981: over twenty years. In June of 1996, Ms. Salazar was charged with (simple) possession of between five and fifty pounds of marijuana. Pursuant to a plea bargain, she pled guilty to the offense, and on January 7, 1997, was placed on probation, without adjudication of guilt, pursuant to Article 42.12, Section 5(a), Texas Code of Criminal Procedure.

Ms. Salazar urges that no compelling state interest is served by a statute, or combination of statutes, which mandate the deportation of an LPR, no matter her equities, for the sole reason that she pled guilty to the simple possession of a controlled substance, at a time when (and in reliance on that fact that) such a plea carried no immigration consequences, [4] and most particularly, where the sentencing Judge considered the circumstances to warrant giving her a second chance by applying a rehabilitative statute, and granting deferred adjudication. This analysis can also be supported by the legislative history, showing that in deciding to legislatively overrule *Matter of Ozkok*, Congress did not consider the impact on LPRs such as Ms. Salazar. To be narrowly tailored, a statute

---

[4] Not only was *Manrique* in effect at the time of her plea, but under *Matter of L-G-*, 21 I&N Dec. 89 (BIA 1995), even if the deferred adjudication were held to be a conviction, it would not have been considered to be an "aggravated felony," and she would still have been eligible for cancellation of removal. *See also, Matter of K-V-D-*, Int. Dec. 3422 (BIA 1999).

Moreover, the application of *Manrique* was independent of the specific facts of the case. *See,* (INS:31-32), where Respondents attempt to "retry" Ms. Salazar's offense. Rather, it utilized the categorical approach, based on the elements of the offense. This is the approach generally followed by the Fifth Circuit as well. *See, Hamdan v. INS,* 98 F.3d 183 (5th Cir. 1996).

involving deportation of an LPR must allow for the consideration of
factors beyond the fact that the person has committed the offense
of possession of marijuana. [5] In enacting the FFOA, Congress made
a policy judgment that it is in the public interest to
rehabilitate such persons. As the Ninth Circuit concluded in *Lujan-Armendariz v. INS,* 222 F.3d 728 (9th Cir. 2000) there is nothing in
the legislative history of IIRIRA to show that Congress had changed
its collective mind with respect to this important issue.

While the convictions in *Lujan-Armendariz* had been vacated, as INS
notes, (INS:26), this was not dispositive.  Under the FFOA, [6] the
proceedings are not considered to be a conviction for any purpose,
at any time.  Moreover, *Lujan* was not about the "clarity and
meaning of the statute's language as applied to rehabilitative
expungements." (INS:29).  Rather, it concluded that IIRIRA did not
amend the FFOA, and that the Equal Protection conclusions reached
in *Garberding v. INS*, 30 F.3d 1187 (9th Cir.1994), and *Paredes-Urrestarazu v. INS*, 36 F.3d 801 (9th Cir. 1994), still applied. And
while extending this consideration to persons processed under state
law was, on the part of the BIA, a "'policy' or 'a long-standing
practice,'" (INS:30), it is simply not true that the Court
therefore acknowledged that the "extension of FFOA treatment
derived out of Board policy and not a constitutional mandate." *Id.*.

---

[5]     Moreover, absent specific Congressional justification
therefor, retroactive application violates Due Process. *Pension
Benefit Guaranty Corp. v. Gray*, 467 U.S. 717,729-30 (1984). Here,
there was no such specific justification.

[6]     18 U.S.C. §3607(b) provides, in part (emphasis added):

A *disposition under subsection* (a), or a conviction that
is the subject of an expungement order under subsection
(c), *shall not be considered a conviction* for the purpose
of a disqualification or a disability imposed by law upon
conviction of a crime, or *for any other purpose.*

9

This was the "policy" of the **BIA,** which cannot adjudge the constitutionality of the statute it administers. [7] But the rulings from the Ninth Circuit, when that "policy" was changed, were based squarely on the Constitutional mandate of Equal Protection. [8]

> **2. SUCH RETROACTIVE APPLICATION ALSO OFFENDS PROCEDURAL DUE PROCESS, BECAUSE IT DEPRIVED PETITIONER OF "FAIR NOTICE" OF THE MAGNITUDE OF THE PENALTY THAT MIGHT BE IMPOSED AS A RESULT OF HER PLEA TO THE CRIMINAL CHARGES.**

The same result is reached through two other lines of Supreme Court cases, involving the limits the use of adjudication by administrative agencies to announce new standards of conduct, and the constitutional mandate of "fair notice" before penalties can be applied, even in the context of civil cases. The "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal." *Kaiser Aluminum & Chemical Corp.* v. *Bonjorno,* 494 U.S. 827, 855 (1990) (Scalia, J., concurring).

> **a. There are limits on the use of adjudication to announce new standards, particularly where people may have relied on the prior standards.**

To apply *Matter of Roldan* and *U.S. v. Hernandez-Avalos* to Ms. Salazar retroactively converts a disposition which, at the time of her plea bargain, carried no immigration consequences at all, into

---

[7] The BIA uses "policy" as a stand-in for the constitutional conclusions it cannot directly articulate. For example, in *Matter of Silva,* 16 I&N Dec. 26 (BIA 1976), the BIA applied nationwide the mandate of *Francis v. INS,* 532 F.2d 268 (2nd Cir. 1976), holding that there was no rational basis for discriminating between those groups of residents who had departed the U.S. and returned while inadmissible, and those who had made no such departure, and extending §212(c) relief to LPRs in deportation proceedings.

[8] The Fifth Circuit has not yet considered this issue. The expungement cases to which INS refers, (INS:31), do not involve state rehabilitative statutes for first-time drug offenders.

one which requires mandatory deportation. Administrative agencies may use adjudication to "announc(e) and (apply) a new standard of conduct," *SEC v. Chenery Corp.*, 332 U.S. 194,203 (1947). And, as a general rule, under *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 290-95 (1974), adjudication can be used "to announce new principles applicable to the specific parties. . .even if the principles involve a change from past policies."

However, a change which does more than refine an existing standard may be found to be arbitrary or capricious if an affected party has detrimentally relied on the old standard. *See NLRB v. Bell Aerospace*, *supra* at 294-95; *Ruangswang v. INS*, 591 F.2d 39, 44-45 (9th Cir.1978). A change in interpretation made through "adjudication might also be inappropriate where 'some new liability' results from 'past actions which were taken in good-faith reliance on Board pronouncements.'" *Ruangswang v INS*, *supra* at 44 (quoting *NLRB v. Bell Aerospace Co.*, *supra*). [9]

The limitations on adjudication to announce new standards of conduct echo the familiar presumption against retroactivity recently affirmed by the Supreme Court in *INS v. St. Cyr*, *supra*. Retroactive application of a new rule should be informed and guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994). *See also, Accardi v. Shaughnessy*, 347 U.S. 260, 266-68 (1954). It is now beyond dispute that "elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly and that settled expectations should not be lightly

---

[9] Respondents seek *Chevron* deference for its policy change, (INS:30-31). However, such deference only applies where the issue is one of a statutory void, left to be filled by the agency. It has no bearing on whether or not a new policy is constitutional.

11

disrupted." *INS v St. Cyr, supra* at 316. *See also Jideonwo v. INS,* 224 F.3d 692, 696-97 (7th Cir 2000).

> **b.    The Constitutional Mandate of Fair Notice Also Precludes Application Of The New Definition Herein.**

Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty." *See, Reno v. American-Arab Anti Discrimination Committee,* 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result:

> As this Court has long recognized, "[t]hat deportation is a penalty - at times a most serious one - cannot be doubted." *Bridges,* 326 U.S., at 154, 65 S.Ct. 1443; see also *ibid.* (Deportation places "the liberty of an individual ... at stake.... Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom.")

Deportation then is an additional penalty retroactively attached to the "criminal offense," through changed administrative and judicial interpretations thereof. This occurs even though, under state law, there is no conviction, and never will be one, if the Petitioner successfully completes her probation. Thus, **as applied herein**, §1101(a)(48)(A) is unconstitutional. It makes qualitative changes in the penalty imposed, in a wholly unexpected manner. *See,* Nancy Morawetz, "Rethinking Retroactive Deportation Laws and the Due Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998. *See also, Arce v. Walker,* 139 F.3d 329,333-34 (2nd Cir. 1998):

> [T]he Due Process Clause protects against restraints or conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see id.* at 479 n. 4, 115 S.Ct. at 2297 n. 4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences." (citation

and internal quotation marks omitted)); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual"); *Washington v. Harper,* 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178 (1990) (holding that inmate has a liberty interest under the Due Process Clause to refuse the involuntary administration of psychotropic drugs).

These protections exist even though deportation is a civil penalty, rather than criminal punishment, is involved.  As held in *BMW of North America v. Gore,* 517 U.S. 559, 574 (1996):

Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose. FN22

FN22. See *Miller v. Florida,* 482 U.S. 423 ... (1987) (*Ex Post Facto* Clause violated by retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia,* 378 U.S. 347... (1964) (retroactive application of new construction of statute violated due process); *id.,* at 350-355, 84 S.Ct., at 1701-1703 (citing cases); *Lankford v. Idaho,* 500 U.S. 110... (1991) (due process violated because defendant and his counsel did not have adequate notice that judge might impose death sentence).
   The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against "judgments without notice" afforded by the Due Process Clause, *Shaffer v. Heitner,* 433 U.S. 186, 217... (1977) (STEVENS, J., concurring in judgment), is implicated by civil penalties

For LPRs such as Ms. Salazar, deportation is unquestionably a "civil penalt[y]" imposed as a result of her criminal "conviction." It therefore violates Due Process as a retroactive application of new construction of a statute, as in *Bouie v. City of Columbia,*

13

*supra*, and because it imposes a "civil penalt[y]" without prior notice, as in *Shaffer v. Heitner, supra*. And, as in *BNW of North America v. Gore, supra*, it confounds the "[e]lementary notions of fairness enshrined in this Court's constitutional jurisprudence" which "dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose." Here, Ms. Salazar had absolutely no notice that deportation would become a mandatory consequence of her plea, regardless of her rehabilitation, family ties, lengthy residence in the U.S., or other equities.

Indeed, at that time, deferred adjudication carried no immigration consequences at all: not because it was not considered to be a "conviction" for immigration purposes, but because of the policy considerations that substitute for an Equal Protection holding by the Board. In other words, *Manrique* did not depend on whether the element of "finality" had been satisfied, under *Matter of Ozkok,* 19 I&N Dec. 546 (BIA 1988). Therefore, Ms. Salazar had no reason to believe that the new definition of "conviction" enacted by IIRIRA, which was designed to abrogate *Ozkok,* would affect her case. [10]

Similarly, under *Matter of L-G-, supra,* the question of whether a drug offense was an aggravated felony was determined by analogy to federal law. Under *L-G-*, her offense would not have been considered an aggravated felony. [11] So even if she had been on notice that

---

[10] *See also, Jordan v. DeGeorge*,    341 U.S. 223,231 (1951) (statute relating to deportation would be tested under "void for vagueness" doctrine, notwithstanding that statute was not criminal statute, in view of grave nature of deportation).

[11] *See, e.g., Cantu-Deldagillo v. Trominski,* C.A. B-02-114, Exhibit B, where, in 1998, the BIA held that an equivalent deferred adjudication was a "conviction," under *Matter of Punu,* but, citing *Matter of L-G-*, was not an "aggravated felony," and that Mr. Cantu

14

IIRIRA might overrule *Manrique*, Ms. Salazar had no reason to believe that she would not be eligible for cancellation of removal.

As noted in *BMW of North America v. Gore, supra,* not all new interpretations of law can be given retroactive effect and still comport with Due Process. This is particularly true where, as here, retroactive application of the new interpretation would work serious injustice. *See also, Jideonwo v. INS, supra:* [12]

> The Supreme Court has held that applying a law retroactively such that it results in "manifest injustice" violates the Due Process Clause. *See Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 716 ... (1974). Manifest injustice may occur where a new law changes existing rights or imposes unanticipated obligations on a party without providing appropriate notice. *See id.* at 720,... *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 ... (1994) ("The Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation."). Retrospective changes in INS procedure have been found to violate the due process rights of affected aliens. For example, in *Accardi v. Shaughnessy*, the Supreme Court held that retroactively changing a procedure for granting relief from deportation from one of discretion to one of predetermined results violated the Due Process Clause where it took away a procedure to which the alien-petitioner previously had a right prescribed by statute. 347 U.S. 260 ... (1954) ...

In fact, Accardi is on all fours with the case at bar. See *also, Griffon v. USDHHS*, 802 F.2d 146 (5th Cir. 1986) (agency cannot construe statute such that civil fines may be imposed for conduct which predated statute).

_____

would still be eligible for cancellation of removal.

[12] Notably, *Jideonwo* was cited with approval by the Supreme Court in *INS v. St. Cyr, supra*, 121 S.Ct.at 2292.

15

Similarly, converting the effect of Ms. Salazar' "guilty" plea into automatic grounds for removal has an *ex post facto* effect, even though it results from a change in the **interpretation** of a statute, and not from an amendment to the statute itself. *See, Knuck v. Wainwright,* 759 F.2d 856,859 (11th Cir. 1985):

> In *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981),... the Supreme Court held that two critical elements must be present for a criminal or penal law to be ex post facto: the statute must be retrospective, and it must be disadvantageous to the offender. **The first element is met because Knuck's offense occurred in 1975 while the change in interpretation of the law did not occur until 1979.** ... The Court in *Weaver* observed that "a law need not impair a 'vested right' to violate the *ex post facto* prohibition." *Id.* "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice...." *Id.* at 30, 101 S.Ct. at 965.

Having found an *ex post facto* violation, the Court did not reach the claim that the change in the interpretation also violated Due Process. *Id.*. However, this holding also supports Ms. Salazar' claim that the retroactive application of a new **interpretation** of a statute can, and in her case does, violate Due Process.

### 3.   APPLICATION OF THESE NEW INTERPRETATIONS TO MS. SALAZAR ALSO OFFENDS EQUAL PROTECTION, IN VARIOUS WAYS.

#### a.   PROSECUTING AUTHORITY

Had she been prosecuted in federal, rather than state court, Ms. Salazar would have been eligible for FFOA treatment, which is not considered to be a conviction for any purpose. 18 U.S.C. §3607(a). Ms. Salazar therefore asserts that, for the reasons set forth in *Lujan-Armendariz, supra,* it violates Equal Protection to determine whether a given disposition of criminal charges for simple possession of a controlled substance renders an immigrant subject

16

to deportation solely on the basis of whether the immigrant was
processed in state, or federal, court.  Again, this determination
is made through a categorical approach, analyzing the elements of
her state offense, not the specific facts. *Hamdan, supra.*

### b.  TIMING OF PROCEEDINGS

She also asserts that it violates Equal Protection for the results
to be based solely on the timing of the proceedings.  An unknown,
but not insignificant, number of otherwise similarly situated LPRs,
(LPRs granted deferred adjudication for an offense involving simple
possession of a controlled substance), whose cases were heard after
*Roldan,* and before *Hernandez-Avalos,* were considered eligible for
cancellation of removal, and were granted said relief.  Ironically,
Ms. Salazar is in a worse position now than she would have been if
the Immigration Judge had not terminated proceedings.  Had her
case been heard only a few weeks later, after March 3, 1999, (when
the BIA issued *Matter of Roldan*), Judge Ayala would have found her
to be subject to removal, but eligible for cancellation of removal.
In all probability, proceedings would have been completed before
May 11, 2001, (when *Hernandez-Avalos* was decided), and she would
have almost certainly earned relief in the exercise of discretion.

It violates Equal Protection for the difference between remaining
in the U.S. as an LPR, and being removed, and permanently barred
from returning lawfully, to be based solely on the timing of the
proceedings. *Cf., Logan v. Zimmerman Brush,* 455 U.S. 422 (1982)
(finding Due Process, and per concurring opinion, Equal Protection,
violations where statute terminated claims not receiving timely
hearings). It is particularly ironic because she would have been in
a much more advantageous position if Judge Ayala had found her
subject to deportation, and had not terminated  proceedings.

### c.  LOCATION OF PROCEEDINGS

Had Ms. Salazar been placed in proceedings within the Ninth, rather

than the Fifth Circuit, this violation of Equal Protection would have protected her from removal. *See, Lujan-Armendariz, supra.*

Furthermore, if she had been placed in proceedings in the Third Circuit, she would still be considered eligible for relief. *See, Gerbier v. Holmes,* 280 F.3d. 297 (3rd Cir. 2002) (state felony conviction for the offense of simple possession of a controlled substance is **not** an aggravated felony for immigration purposes).

It also violates Equal Protection where the results to vary so dramatically based on the location of the proceedings. Indeed, it was precisely this problem which led the BIA to decidde in *Matter of L-G-,* and *Matter of K-V-D-, supra,* to utilize a federal standard in determining whether an offense was an aggravated felony, rather than looking to the vagaries of state law.

Under cases *Webster,* and *Cardoza-Fonseca,* the BIA, and this Court, are bound to adopt any reasonable alternative construction. Ms. Salazar urges that two interpretations exist which avoid these constitutional concerns. First, the Board could have concluded that the new definition of "conviction" was not intended to overrule *Matter of Manrique,* and that the policies underlying that decision have not changed. Second, there is a more narrow exception, based on the fact that Texas does not consider Ms. Salazar to have been convicted of anything, much less, of a felony.

**B.    EVEN UNDER *HERNANDEZ-AVALOS*, AN ALTERNATE INTERPRETATION IS POSSIBLE, SINCE TEXAS LAW REQUIRES THAT A DEFENDANT CONVICTED OF A FELONY BE SENTENCED TO A SPECIFIC PERIOD OF INCARCERATION, AND NO SUCH PERIOD OF INCARCERATION IS IMPOSED WITH DEFERRED ADJUDICATION**

In this regard, Ms. Salazar urges that deferred adjudication cannot be considered to be an aggravated felony, even under *Matter of Roldan, supra, U.S. v. Moosa,* 171 F.3d 994 (5th Cir. 1999), and

18

*Hernandez-Avalos.* The criticism of *K-V-D-* therein is *dicta*, [13] and is therefore not binding. And to the extent that *Hernandez-Avalos* is binding, it requires that the Board consult Texas law, to determine whether Ms. Salazar was convicted of a felony, and therefore, of an aggravated felony.

Under Texas law, Ms. Salazar has not been convicted of a felony.

---

[13]    *See, id.* at 509 (footnote in original) (emphasis added):

However, **if we were reviewing Hernandez's removal order** on direct appeal, **and if the issue of statutory interpretation were properly preserved for review**, we would hold that the BIA's interpretation of section 924(c) is plainly incorrect and that Hernandez was an aggravated felon. We see no reason why the procedural posture of this case requires us to hold that it was fundamentally unfair to treat Hernandez as an aggravated felon because he should have the benefit of an agency's erroneous interpretation of applicable law. [FN3]

FN3. Because the question presented by this appeal relates only to the fundamental fairness of the proceeding, we need not consider Hernandez's argument that we must defer to the BIA's interpretation of these general criminal statutes. *Cf. Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842-43 & n. 9, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (citations omitted)("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.... The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").

Such "if we were reviewing" and "if the issue of statutory construction were properly preserved" are classic indicia of *dicta*. Similarly, the Court's acknowledgment that it did not consider the possibility of deference further shows that its criticism of *K-V-D-* was *dicta*, and that said decision continues to be binding herein.

19

Apart from the truism that she is not considered to have been convicted at all, under Texas law, anyone convicted of a felony must be sentenced to jail time, although that sentence may be suspended, and the person placed on probation. *See,* Texas Penal Code, §§13.32 - 13.35. Therefore, anyone who is not given a specific sentence, regardless of any suspensions, cannot under Texas law be considered to have been convicted of a felony. Since deferred adjudication involves no specific sentence of incarceration, Ms. Salazar cannot be considered to have been convicted of a felony under Texas law.

An alternate construction would, as noted above, involve selective application of state or federal law, simply to impose the "worst of both worlds" on an immigrant. This in and of itself would be so arbitrary as to offend Procedural, if not Substantive Due Process.

### III. CONCLUSION

Although Respondents' pleading was captioned as a return and motion to dismiss, no jurisdictional grounds, or other bases for dismissal, were alleged. In essence, Respondents simply argue that there Ms. Salazar did not assert any valid constitutional claims, although they neglect to even discuss the majority of the counts alleged in her petition. Therefore, it is urged that the motion to dismiss be denied, and that the Court consider Ms. Salazar's claims for what they are: a challenge to the constitutionality of the retroactive application of new interpretations of the law to a person who has relied, to her detriment, on the law as it stood at the time she negotiated her plea to the underlying criminal charges, in exchange for a grant of deferred adjudication.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
REFUGIO DEL RIO GRANDE

17891 Landrum Park Road
San Benito, Texas 78586
(956) 421-3226
Fed. ID.  1178
Texas Bar 03052800

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, with proposed Order,
was mailed, first-class postage prepaid, to Lisa Putnam, SAUSA,
P.O. Box 1711, Harlingen, TX 78551, on May 30, 2002.