# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

MAR 2 6 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| LAURA ESTELLA SALAZAR-REGINO,<br>Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. B-02-45 |
| E.M. TROMINSKI,<br>INS DISTRICT DIRECTOR, ET AL.<br>Defendant. | §<br>§<br>§<br>§ | |
| | | |
| TEODULO CANTU-DELGADILLO,<br>Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. B-02-114 |
| E.M. TROMINSKI,<br>INS DISTRICT DIRECTOR, ET AL.<br>Defendant. | §<br>§<br>§<br>§ | |
| | | |
| DANIEL CARRIZALOS-PEREZ,<br>Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. B-02-136 |
| AARON CABRERA,<br>INS ACTING DISTRICT DIRECTOR, ET AL.<br>Defendant. | §<br>§<br>§<br>§ | |
| | | |
| MANUEL SANDOVAL-HERRERA,<br>Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. B-02-138 |
| AARON CABRERA,<br>INS ACTING DISTRICT DIRECTOR, ET AL.<br>Defendant. | §<br>§<br>§<br>§ | |

1

RAUL HERNANDEZ-PANTOJA,                §
Plaintiff,                             §
                                       §
v.                                     §    CIVIL ACTION NO. B-02-197
                                       §
JOHN ASHCROFT, ATTORNEY GENERAL        §
OF THE UNITED STATES, ET AL.           §
Defendant.                             §


JOSE MARTIN OVIEDO-SIFUENTES,          §
Plaintiff,                             §
                                       §
v.                                     §    CIVIL ACTION NO. B-02-198
                                       §
JOHN ASHCROFT, ATTORNEY GENERAL        §
OF THE UNITED STATES, ET AL.           §
Defendant.                             §


CESAR LUCIO,                           §
Plaintiff,                             §
                                       §
v.                                     §    CIVIL ACTION NO. B-02-225
                                       §
JOHN ASHCROFT, ATTORNEY GENERAL        §
OF THE UNITED STATES, ET AL.           §
Defendant.                             §


PRAXEDIS RODRIGUEZ-CASTRO,             §
Plaintiff,                             §
                                       §
v.                                     §    CIVIL ACTION NO. B-02-228
                                       §
JOHN ASHCROFT, ATTORNEY GENERAL        §
OF THE UNITED STATES, ET AL.           §
Defendant.                             §

NOHEMI RANGEL-RIVERA,               §
Plaintiff,                          §
                                    §
v.                                  §         CIVIL ACTION NO. B-03-002
                                    §
JOHN ASHCROFT, ATTORNEY GENERAL     §
OF THE UNITED STATES, ET AL.        §
Defendant.                          §

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In the interest of judicial economy, all of the above styled causes of action will be

consolidated into one Report and Recommendation thanks to their similar nature.

### BACKGROUND

#### B-02-045 – *Salazar-Regino*

Laura Estella Salazar-Regino has resided in the United States since 1977, when she was

six years old, and has been a lawful permanent resident ("LPR"), since 1981. Her entire family

resides lawfully in the United States, including her LPR husband and four minor United States

citizen children.

On January 7, 1997, Salazar-Regino pleaded guilty to simple possession of marijuana, in

exchange for a grant of deferred adjudication, pursuant to Article 42.12, Section 5(a) of the

Texas Code of Criminal Procedure. The Court accepted the plea bargain, withheld adjudication

of guilt, and placed her on probation for a period of ten years. Salazar-Regino has an excellent

work history, and, apart from the incident leading to the instant proceedings, a clean record.

At the time of her plea, the disposition brought her under the policy exception articulated

in *Matter of Manrique*,[1] which was based on an analogy to the Federal First Offender Act

_____

[1] Matter of Manrique, 21 I&N Dec. 58 (BIA 1995).

("FFOA").[2] Therefore, at the time of her offense she was not deemed deportable. Furthermore, at that time, simple possession of marijuana was not considered to be an aggravated felony, so even if she had been placed in proceedings, she would have been eligible for cancellation of removal, under 8 U.S.C. Section 1229b(a).[3]

Upon information and belief, Ms. Salazar asserts that a significant number of LPRs who were otherwise similarly situated, in that on or after October 1, 1996, they pleaded guilty to offenses involving simple possession of controlled substances, but whose guilt was adjudicated, and who therefore did not fall within the policy exception of *Matter of Manrique*, were placed in removal proceedings in this judicial district on or after April 1, 1997, and were granted cancellation of removal by the Respondents.

On December 4, 1997, the Fifth Circuit Court of Appeals decided *United States v. Hinojosa-Lopez*,[4] which held, at least for purposes of the Sentencing Guidelines, a state felony for simple drug possession constituted an "aggravated felony." About eight months later, on August 10, 1998, Respondents issued a Notice to Appear, alleging that Salazar-Regino was deportable for having been convicted both of a controlled substance, and of an aggravated felony. At her hearing on January 20, 1999, Salazar-Regino denied that she had been "convicted" of the offense, and denied both charges of deportability. The immigration judge concluded that *Matter*

---

[2] See 18 U.S.C. § 3607.

[3] See Matter of L-G, 21 I&N Dec. 89 (BIA 1995). See also Matter of K-V-D, Interim Decision 3422 (BIA 1999).

[4] United States v. Hinojosa-Lopez, 130 F.3d 691 (5th Cir. 1997).

4

*of Manrique* had not been superceded by the new Congressional definition of "conviction,"[5] and

terminated proceedings. The INS, however, appealed.

While INS' appeal was pending, there were several significant developments in the law.

First, on August 18, 1998, the Board of Immigration Appeals ("BIA") issued *Matter of Punu*,[6]

which held that a deferred adjudication disposition constituted a "conviction" for purposes of

immigration law. Then, on March 3, 1999, the BIA decided *Matter of Roldan*,[7] which held that

*Matter of Manrique* had been superceded by 8 U.S.C. Section 1101(a)(48)(A).[8] Next, on

December 10, 1999, the BIA issued *Matter of K-V-D*,[9] which reaffirmed *Matter of L-G*, and held

that, notwithstanding *Hinojosa-Lopez*, a state felony conviction for simple possession of a

controlled substance would not be construed as an aggravated felony for immigration purposes.

Then, on May 11, 2001, the Fifth Circuit decided *United States v. Hernandez-Avalos*,[10] which, in

strongly worded dicta, disapproved of *Matter of K-V-D*. Although the pertinent language in

*Hernandez-Avalos* appears to be dicta, the Board of Immigration Appeals ("BIA") has followed

the case's conclusion, but only for cases arising within this judicial circuit. And finally, on

---

[5] See 8 U.S.C. § 1101(a)(48)(A). The new definition of conviction was enacted on September 30, 1996, with the passing of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA").

[6] Matter of Punu, Interim Decision 3364 (BIA 1998).

[7] Matter of Roldan, Interim Decision 3377 (BIA 1999).

[8] Petitioner notes that Matter of Roldan was disapproved of in Lujan-Armendariz v. INS, on the grounds that it deprives immigrants such as Ms. Salazar of Equal Protection of the laws, since under the FFOA they would not be considered "convicted" if they had received equivalent rehabilitative treatment in federal, rather than state, court.

[9] Matter of K-V-D, supra note 3.

[10] United States v. Hernandez-Avalos, 251 F.3d 505 (5th Cir. 2001).

5

February 8, 2002, the Third Circuit concluded that a state felony conviction for the offense of simple possession of a controlled substance is not an aggravated felony for immigration purposes.[11]

Petitioner alleges that a number of otherwise similarly situated LPRs (LPRs granted deferred adjudication for an offense involving simple possession of a controlled substance), whose cases were heard after *Roldan*, and before *Hernandez-Avalos*, were considered eligible for cancellation of removal, and were granted said relief by Respondents.

On February 14, 2002, the BIA granted the INS' appeal, and in a precedent decision, *Matter of Salazar*,[12] ordered Salazar-Regino's removal on both charges. The BIA declined therein to follow *Lujan-Armendariz* outside of the Ninth Circuit, and held that, in light of *Hernandez-Avalos*, it would not apply *Matter of K-V-D* in the Fifth Circuit. Under this decision, Salazar-Regino is ineligible for any form of relief under the immigration laws, and removal would lead to her being separated from her family.

Under *Matter of Salazar*, otherwise similarly situated LPRs whose cases arose out of the Ninth Circuit are not considered to be subject to removal. LPRs whose cases arose anywhere except the Fifth Circuit continue to be eligible for relief from removal, in the form of cancellation of removal.[13]

### *B-02-114 – Cantu-Delgadillo*

---

[11] See Germier v. Holmes, 280 F.3d 297, 318 (3d Cir. 2002).

[12] Matter of Salazar, Interim Decision 3462 (BIA 2002).

[13] 8 U.S.C. § 1229b(a).

Teodulo Cantu-Delgadillo is a native of Mexico, and has been a lawful permanent resident since July 5, 1978, when he was eight years old. Cantu-Delgadillo is married to a United States citizen and has two United States citizen children. He has absolutely no family in Mexico. On November 27, 1996, Cantu-Delgadillo was granted deferred adjudication for the offense of possession of marijuana. At that time, said disposition did not render him subject to deportation.[14] Although the statutory definition of "conviction" was changed with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) on September 30, 1996, Petitioner argues that most immigration attorneys were unaware that someone like Cantu-Delgadillo could be eligible for deportation. Petitioner argues that the law was in doubt due to the fact that the *Manrique* decision was based on policy considerations, not on the definition of conviction. In fact, Petitioner stated that his criminal defense attorney told him in late 1996 that his deferred adjudication disposition would not effect his immigration status.

Nonehtheless, Cantu-Delgadillo was placed in deportation proceedings, and ordered deported by an immigration judge on February 25, 1997. Cantu-Delgadillo's prior attorney appealed the case to the BIA. By decision dated December 29, 1998, the BIA noted that it had recently held that the deferred adjudication disposition was now considered to be a conviction, under *Matter of Punu*.[15] In the 1998 decision, the Board concluded that Cantu-Delgadillo was ineligible for Section 212(c) relief, due to Section 440(d) of The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). However, the BIA also noted that his marijuana offense would not be considered an "aggravated felony," and that he would therefore be eligible for

---

[14] See Matter of Manrique, supra note 1.

[15] See Matter of Punu, supra note 6..

7

cancellation of removal, under 8 U.S.C. Section 1229b(a). Consequently, the Board administratively closed the proceedings, pending promulgation of an anticipated regulation, which allowed the deportation proceedings to be terminated. Removal proceedings initiated so that Cantu-Delgadillo could request cancellation of removal.

However, on March 29, 2001, at the request of the INS, the Board reopened proceedings, and reinstated Cantu-Delgadillo's appeal. On August 31, 2001, the BIA dismissed that appeal, and ordered Cantu-Delgadillo's deportation. The Board's decision was based on the Fifth Circuit's decision in *United States v. Hernandez-Avalos*.[16] There was some confusion as to if and when the Board's decision was sent to counsel for Cantu-Delgadillo. Petitioner first learned of the decision in May 2002, when he was notified that he should be surrendered to INS in Houston for deportation on May 29, 2002. Arrangements were made for Cantu-Delgadillo to surrender in Harlingen, Texas, since he and his counsel are residents of the Rio Grande Valley. Once he had been surrendered, his counsel filed the instant habeas action.

### B-02-136 – *Carrizalos-Perez*

Daniel Carrizales-Perez is a native of Mexico, and entered the United States as a lawful permanent resident on or about December 21, 1983. Carrizales-Perez has resided in the United States continuously since he entered the country. Other than his father, whose whereabouts are unknown, Carrizales-Perez's entire family is lawfully in the United States. Petitioner has a steady history of employment and is currently purchasing the family home.

On or about June 10, 1997, pursuant to a plea bargain, Carrizales-Perez pleaded guilty to the offense of simple possession of marijuana in Brooks County, Texas. Adjudication of guilt

---

[16] United States v. Hernandez-Avalos, supra note 10.

was deferred, and he was placed on probation.  At that time, this disposition did not render him subject to removal.[17]

Although IIRIRA, which enacted Section 101(a)(48)(A), had converted most deferred adjudications into convictions, *Manrique* was not based on a lack of finality in the criminal proceedings, but rather on an analogy to the Federal First Offender Act (FFOA), which precluded that there was a "conviction" in such cases.  Therefore, Petitioner states that no reason existed for Carrizales-Perez to believe that *Manrique* would be abrogated, and that he would be considered "convicted" of the offense.  Petitioner argues that even if Carrizales-Perez should have foreseen this change in BIA policy, his disposition still ensured his eligibility for discretionary relief in the form of cancellation of removal.[18]

In resolving his criminal case, Carrizales-Perez relied on the fact that his disposition carried no adverse immigration consequences, and that once he fulfilled the conditions of his probation, the charges would be dismissed.  Petitioner claims that if he had known, or even suspected, that his disposition would later be interpreted as causing mandatory deportation with no possibility of relief, or even the possibility of ever returning to the United States legally, he would have fought the charges.  INS also understood at that time that this disposition did not render Carrizales-Perez removable, as seen by the fact that removal proceedings were not instituted until after the issuance of *Matter of Roldan*,[19] in which the BIA concluded that the

---

[17] See Matter of Manrique, supra note 1.

[18] See Matter of L-G, supra note 3; Matter of K-V-D, supra note 3.

[19] Matter of Roldan, supra note 7.

policy exception adopted in *Manrique* had been superceded by Section 101(a)(48)(A) of the Act, which redefined "conviction" for immigration purposes.[20]

However, on May 4, 2000, a Notice to Appear was issued for Carrizales-Perez. It alleged, and Petitioner conceded, the above facts relating to nationality and entry. It also alleged that he had been "convicted" of possession of marijuana. Removability was charged under both Section 237(a)(2)(B)(i), for conviction of an offense relating to a controlled substance, and Section 237(a)(2)(A)(iii) for conviction of an aggravated felony, to wit, a drug trafficking offense.

Carrizales-Perez initially contested removability, but was dissuaded by the ruling of the immigration judge that, if there had been no other controlled substance offense, the Court would find that he had not been convicted of an aggravated felony, and that he was eligible for cancellation of removal. As the judge stated at the hearing on December 15, 2000:

> [I]f he's only been convicted of one offense, possession of a controlled substance, the Court will find that's not an aggravated felony....The offense is possession of a controlled substance. If that's the only offense that he had – dealing with a controlled substance – there's no question that the case is not an aggravated felony, and there's no question that he would be eligible for cancellation of removal.[21]

---

[20] Roldan was reversed in the Ninth Circuit by Lujan-Armendariz v. INS and Roldan-Santoya v. INS, 222 F.3d 728 (9th Cir. 2000). The BIA declined to apply that decision nationwide in Matter of Salazar, supra note 12, which is also under review and being addressed in this Report and Recommendation.

[21] Immigration Transcript at 7, 8.

INS acknowledged that there was no indication of any other controlled substance violation, and withdrew the aggravated felony charge.[22] The Judge then adjured counsel for Carrizales-Perez to plead to the allegations and the remaining charge, and promised "a date for the filing of the application for relief."[23] Based on these assurances, Petitioner admitted that he had been "convicted" of the marijuana offense, and conceded removability under the controlled substance charge. The immigration court scheduled an appearance to file the application, and June 8, 2001, was the date set for the hearing on the merits of that application. On June 8, 2001, Carrizales-Perez appeared ready to proceed. However, based on the recent decision of the Fifth Circuit in *United States v. Hernandez-Avalos*,[24] the judge allowed INS to "reinstate" the aggravated felony charge and found that it had been sustained. Therefore, the judge found that Carrizales-Perez was ineligible for relief, and ordered his removal from the United States.

In *Hernandez-Avalos*, the Fifth Circuit held that for purposes of the Sentencing Guidelines, whether an offense was a felony (and therefore an aggravated felony), would be determined by whether the person was considered to have been convicted of a felony under state law. The Court also criticized *Matter of K-V-D*, and reaffirmed *Matter of L-G*, under which this question was resolved by analogy to federal law. The criticism of *K-V-D* was very strongly worded dicta.[25]

_____

[22] Immigration Transcript at 8, 9.

[23] Immigration Transcript at 9.

[24] United States v. Hernandez-Avalos, supra note 10.

[25] See Hernandez-Avalos, 251 F.3d at 509. [I]f we were reviewing Hernandez's removal order on direct appeal, and if the issue of statutory interpretation were properly preserved for review, we would hold that the BIA's interpretation of section 924(c) is plainly incorrect and that  Hernandez

Moreover, *Hernandez-Avalos* did not, as the immigration judge indicated, hold that all convictions for simple possession of a controlled substance would be treated as felonies. Rather, the decision held that state law would be determinative. The retroactive application of the principles enunciated in *Hernandez-Avalos*, the Petitioner argues, raise reliance issues, similar to those which the Supreme Court characterized in *INS v. St. Cyr*,[26] as creating serious constitutional problems.

Carrizales-Perez filed a timely appeal from the immigration judge's decision, and the appeal was dismissed by the BIA on June 7, 2002. The Board rejected Carrizales-Perez's statutory arguments, and noted that it was without jurisdiction to consider his constitutional claims.

Petitioner asserts that a significant number of long-term LPRs who were otherwise similarly situated, in that on or after October 1, 1996, they pleaded guilty to offenses involving simple possession of a controlled substance, but whose guilt was adjudicated, and who therefore did not fall within the policy exception of *Matter of Manrique* were placed in removal proceedings in this judicial district on or after April 1, 1997, and were granted cancellation of removal by Respondents prior to the issuance of *United States v. Hernandez-Avalos*.

### B-02-138 – *Sandoval-Herrera*

Manuel Sandoval-Herrera is under an administratively final order of removal, and is a native of Mexico. He entered the United States as an LPR on or about July 25, 1988, and has

---

was an aggravated felon. Id.

[26] INS v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271 (2001).

12

resided here continuously since that date. Sandoval-Herrera's entire family is lawfully in the United States, and Petitioner has a history of steady employment.

On or about November 7, 1996, Sandoval-Herrera pleaded guilty to the offense of simple possession of cocaine in Cameron County, Texas. The offense was committed on June 22, 1996. He was placed on probation, and at the time, the offense was not considered to be an aggravated felony. Therefore, he was eligible for relief from removal under *Matter of L-G.*[27] In resolving the criminal case, Petitioner contends that he relied on the fact that this disposition permitted him to seek relief from deportation. Had he known, or even suspected, that it would later be interpreted as causing mandatory removal, with no possibility of relief, he asserts that he would have fought the charges.

A Notice to Appear was issued on July 14, 1997. It alleged, and Sandoval-Herrera conceded, the above facts relating to nationality and entry. It also alleged that he had been "convicted" of possession of a controlled substance, to wit, cocaine. Removability was charged under 8 U.S.C. Section 1227(a)(2)(B)(i), for conviction of an offense relating to a controlled substance. Sandoval-Herrera urged that he was not subject to removal, in accordance with *Matter of Manrique,*[28] and, in the alternative, requested an opportunity to seek relief in the form of cancellation of removal, under 8 U.S.C. Section 1229b(a).

While his case was pending before the immigration judge, the Fifth Circuit issued *United States v. Hinojosa-Lopez.*[29] Due to the fact that possession of any amount of cocaine is a felony

---

[27] Matter of L-G, supra note 3.

[28] See Matter of Manrique, supra note 1.

[29] See Hinojosa-Lopez, supra note 4.

in Texas, the immigration judge concluded that *Matter of L-G* was invalid and that Sandoval-Herrera was ineligible for release. Therefore, on January 15, 1999, the judge ordered that he be removed to Mexico. Sandoval-Herrera filed a timely appeal to the BIA. Shortly thereafter, the BIA issued *Matter of K-V-D*,[30] concluding that the term "aggravated felony" could have different meanings within the context of immigration law and the sentencing guidelines, and essentially reaffirmed *Matter of L-G*.[31] Under this decision, Sandoval-Herrera was still eligible for cancellation of removal. However, the Board did not immediately adjudicate his appeal. Rather, it remained pending until April of 2002.

While Sandoval-Herrera's appeal was pending at the BIA, the Fifth Circuit issued *United States v. Hernandez-Avalos*,[32] which reaffirmed *United States v. Hinojosa-Lopez*.[33] The Court also criticized *Matter of K-V-D*, under which the question of whether a crime was to be considered an aggravated felony was resolved by analogy to federal law. The criticism of *K-V-D* was dicta, and Sandoval-Herrera asserts that the retroactive application of *Hernandez-Avalos* raises reliance issues of a constitutional dimension, similar to those characterized in *INS v. St. Cyr*.[34] Nonetheless, the BIA dismissed Sandoval-Herrera's appeal on April 3, 2002, and ordered his removal to Mexico.

---

[30] See Matter of K-V-D, supra note 9.

[31] See Matter of L-G, supra note 3.

[32] See Hernandez-Avalos, supra note 10.

[33] See Hinojosa-Lopez, supra note 4.

[34] See St. Cyr, supra note 26.

14

As in the related cases, Petitioner asserts that a significant number of long-term LPRs who were otherwise similarly situated, in that on or after October 1, 1996, they pleaded guilty to offenses involving simple possession of a controlled substance and were placed in removal proceedings in this judicial district on or after April 1, 1997, were granted cancellation of removal by Respondents prior to the issuance of *United States v. Hernandez-Avalos*. Petitioner also maintains that given his lengthy residence in the United States, his strong family ties, steady employment history, and other equities, it is highly likely that he would have earned cancellation of removal had he received the opportunity to apply for said form of relief.

### B-02-197 – Hernandez-Pantoja

Raul Hernandez-Pantoja became an LPR of the United States on December 1, 1990. Hernandez-Pantoja has one United States citizen son. On February 11, 1988, Hernandez-Pantoja was given seven years probation, and ordered to pay a $500.00 fine in Harris County after entering a plea of guilty to unauthorized use of a motor vehicle. Almost ten years later, in Nueces County, Hernandez-Pantoja was sentenced to seven years community supervision for possession of marijuana. The INS subsequently initiated removal proceedings and charged Hernandez-Pantoja with being inadmissible and therefore removable from the United States pursuant to 8 U.S.C. Section 1227(a)(2)(B)(i), specifically, an alien who has been convicted of an offense relating to a controlled substance.

On April 10, 2001, an immigration judge found Hernandez-Pantoja removable as alleged in the notice to appear and ineligible for relief from removal. The immigration judge denied Hernandez-Pantoja's application for relief pursuant to 8 U.S.C. Section 1229(b)(3) after he found that Hernandez-Pantoja's conviction for unauthorized use of a motor vehicle was a conviction

that qualified as an aggravated felony.[35] The immigration judge never made any findings as to the effect of Hernandez-Pantoja's conviction for possession of marijuana, which was a ground of removability alleged in the notice to appear. Hernandez-Pantoja reserved his right to appeal the decision of the immigration judge, and timely filed a notice of appeal before the BIA.

Hernandez-Pantoja argued before the BIA that his conviction for unauthorized use of a motor vehicle could only be considered an aggravated felony through retroactive application of the amended definition of the term, found at 8 U.S.C. Section 1101(a)(43)(G). He further asserted that BIA precedent decisions clearly established that unauthorized use of a motor vehicle under the Texas Penal Code is not an aggravated felony.

The Immigration Act of 1990, the controlling immigration statute on the date of Hernandez-Pantoja's conviction, does not include unauthorized use of a vehicle as an aggravated felony, and imposes temporal limitations on the definition. Had Hernandez-Pantoja been placed in proceedings any time prior to 1997, his conviction would not have been considered an aggravated felony. Due to the fact that unauthorized use of a vehicle is not considered a crime involving moral turpitude, Hernandez-Pantoja would not have been rendered deportable as a result of his conviction in 1988.[36]

Hernandez-Pantoja urged the BIA to remand his matter to the immigration judge in order to permit him to apply for relief pursuant to 8 U.S.C. Section 1229(b). On June 21, 2002, the BIA dismissed Hernandez-Pantoja's appeal, yet found that his conviction for unauthorized use of a motor vehicle was not an aggravated felony. Nevertheless, the BIA concurred with the result

---

[35] See 8 U.S.C. § 1229(b)(3).

[36] See Matter of M, 2 I&N 686 (BIA 1946).

16

reached by the immigration judge. The BIA concluded that Hernandez-Pantoja was ineligible for relief from removal due to his conviction for possession of marijuana, pursuant to *Matter of Salazar*. Petitioner claims that the BIA decision in his case violates substantive Due Process guarantees of "fair notice," and therefore the BIA's decision should be vacated.

Hernandez-Pantoja argues that the BIA's ruling is fundamentally unfair because when Hernandez-Pantoja applied for Cancellation of Removal, the BIA had not yet held that possession of marijuana was an aggravated felony. The immigration judge erroneously concluded that Hernandez-Pantoja's conviction for unauthorized use of a vehicle was an aggravated felony, which rendered him ineligible for cancellation. Therefore, Petitioner argues, he was denied an opportunity to apply for relief for which he was eligible under the state of the law on the date he requested that relief. By the time the BIA found that unauthorized use of a vehicle was not an aggravated felony, the BIA had already ruled that possession of marijuana was an aggravated felony in *Matter of Salazar*, and the Fifth Circuit had reached its decision in *Hernandez-Avalos*.

### B-02-198 - Oviedo-Sifuentes

Jose Oviedo-Sifuentes is a native and citizen of Mexico. He entered the United States as an LPR on or about November 23, 1994, and has resided in the United States since that date. His father and two minor children are United States citizens, and his mother and seven siblings are all LPRs. He has a history of steady employment, and supports his dependents.

On July 13, 1999, pursuant to a plea bargain, Oviedo-Sifuentes pleaded guilty in Refugio County, Texas, to the offense of simple possession of less than one gram of cocaine, which had been found in the vehicle which he was driving. Adjudication of guilt was deferred and he was

17

placed on probation for two years.[37]  Although IIRIRA, which enacted Section 1101(a)(48)(A), essentially removed the element of finality from the definition of conviction; Petitioner argues that *Matter of Manrique* was not based on a lack of finality of the criminal proceedings, but an analogy to the FFOA, which precluded a finding that there was a "conviction" in such cases.

On July 13, 1999, a Notice to Appear was also issued for Oviedo-Sifuentes.  It alleged, and Oviedo-Sifuentes conceded, the above facts relating to nationality and entry.  It also alleged, and he denied, that he had been "convicted" of possession of cocaine.  However, the immigration judge found that all allegations, including the charge, had been established, and ordered Oviedo-Sifuentes' removal to Mexico.  Petitioner filed a timely appeal to the BIA.

Oviedo-Sifuentes argued to the BIA that he fell within the policy exception carved out by *Matter of Manrique*,[38] and that proceedings should be terminated, notwithstanding *Matter of Roldan*,[39] wherein the Board concluded that the policy exception adopted in *Manrique* had been superceded by 8 U.S.C. Section 1101(a)(48)(A), which redefined "conviction" for immigration purposes.[40]  Said decision was disapproved by the Ninth Circuit in *Lujan-Armendariz v. INS* and *Roldan-Santoyo v. INS*,[41] on the grounds that it deprives residents such as Oviedo-Sifuentes of the Equal Protection of the laws.

---

[37] Deferred adjudication was previously not considered to be a conviction.  See Martinez-Montoya v. INS, 904 F.2d 1018 (5th Cir. 1990); see also Matter of Ozkok, 19 I&N Dec. 546 (BIA 1988).  Further, under Matter of Manrique, supra note 1, deferred adjudication for the offense of simple possession of a controlled substance was not considered to render one subject to deportation.

[38] See Matter of Manrique, supra note 1.

[39] See Matter of Roldan, supra note 7.

[40] Id.

[41] Lujan-Armendariz v. INS and Roldan-Santoyo v. INS, 222 F.3d 728 (9th Cir. 2000).

18

On December 17, 2001, the presiding judge in Oviedo-Sifuentes' criminal case entered an order which stated the following:

> It is therefore hereby ORDERED, ADJUDGED AND DECREED that this cause be and is hereby DISMISSED, and that Jose M. Oviedo be DISCHARGED from deferred adjudication, and that Jose M. Oviedo is hereby released from all penalties and disabilities resulting from the deferred adjudication in this case.[42]

In *Hernandez-Avalos*,[43] the Fifth Circuit held for purposes of the sentencing guidelines that whether an offense would be considered a felony (and therefore an aggravated felony), would be determined by whether the person was considered to have been convicted of a felony under state law. The Court also criticized *Matter of K-V-D*,[44] and essentially reaffirmed *Matter of L-G*,[45] under which this question was resolved by analogy to federal law. However, the strongly worded criticism of *Matter of K-V-D* in *Hernandez-Avalos* was clearly dicta. Moreover, *Hernandez-Avalos* did not hold that all convictions for simple possession of a controlled substance would be treated as felonies. Rather, the decision held that state law would be determinative. However, under state law, Oviedo-Sifuentes' deferred adjudication does not constitute a conviction. He urges that it contravenes Due Process and Equal Protection to conclude that state law should be followed in determining whether an offense is a felony, and therefore, "illicit trafficking in a controlled substance," (within the meaning of 8 U.S.C. Section

---

[42] See Plaintiff's Exhibit C.

[43] See Hernandez-Avalos, supra note 10.

[44] Matter of K-V-D, supra note 3.

[45] Matter of L-G, supra note 3.

19

1101(a)(B)) but that state law not be followed in determining whether deferred adjudication constitutes a conviction for immigration purposes.

Nonetheless, Oviedo-Sifuentes' appeal was dismissed by the BIA on September 4, 2002. There is no way to determine whether the Board gave consideration to Oviedo-Sifuentes' arguments on appeal because it simply noted that it was affirming "the results of the decision below."[46]

### B-02-225 – Lucio

Petitioner Cesar Lucio is an LPR who has resided continuously in the United States since 1980. He became a lawful temporary resident on September 3, 1987, and an LPR on March 12, 1990. Currently, Petitioner Lucio resides in Rio Hondo, Texas.

On October 16, 1999, Lucio was charged with simple possession of marijuana. He pleaded guilty to the offense on January 3, 2000. His punishment was a fine and ten years of probation. A Notice to Appear was issued on January 3, 2000. It asserted removability under 8 U.S.C. Section 1227(a)(2)(B)(i), for having been convicted of an offense relating to a controlled substance. Lucio conceded removability and sought relief in the form of cancellation of removal, under 8 U.S.C. Section 1229b(a).

On March 7, 2000, an immigration judge in Los Fresnos, Texas, found that Lucio had not been convicted of an aggravated felony and that he was statutorily eligible for cancellation of removal. However, the immigration judge denied relief in the exercise of discretion, largely on the grounds that Mr. Lucio's wife had not yet achieved LPR status.[47] Lucio filed a timely appeal

---

[46] Plaintiff's Exhibit A.

[47] See Plaintiff's Exhibit B.

to the BIA. A few weeks later, Lucio's wife became a lawful permanent resident, and his prior counsel advised the Board of that fact in conjunction with his brief on appeal.

The appeal remained pending at the BIA until October 24, 2002, when a single member of the BIA affirmed, without opinion, the "results of the decision below," which therefore became "the final agency determination."[48] Insofar as the Board summarily affirmed the decision of the immigration judge, citing 8 C.F.R. Section 3.1(a)(7), it is impossible to ascertain the exact reasoning of the Board. However, there was a change in the interpretation of the law affecting Lucio's eligibility for such relief between the time of the immigration judge's decision, and the BIA's summary affirmance thereof.[49] Petitioner argues that even if the change in *Hernandez-Avalos* was the basis for the BIA's summary affirmance of the denial of Lucio's application for removal, said disposition was error.

Lucio argues that subsequent amendments to the United States Sentencing Guidelines have shown that the Fifth Circuit erred in its interpretation of 18 U.S.C. Section 924(c) in *Hernandez-Avalos* and that said case is no longer viable either in the immigration or Sentencing Guideline context. The definition of "aggravated felony," applicable herein is 8 U.S.C. Section 1101(a)(43)(B), incorporates the following offenses: "(B) illicit trafficking in a controlled substance (as defined in Section 102 of the Controlled Substances Act [21 U.S.C. Section 802], including a drug trafficking crime (as defined in Section 924(c) of Title 18, United States Code)."[50] Petitioner notes that the basis of this definition is "illicit trafficking in a controlled

---

[48] Plaintiff's Exhibit A.

[49] See Hernandez-Avalos, supra note 10.

[50] 8 U.S.C. § 1101(a)(43)(B).

21

substance." Further, Lucio argues the assertion that a simple possession offense can be a drug

"trafficking" crime is not only counterintuitive, but is contradicted by previous BIA precedent.

Petitioner cites to the BIA decision in *Matter of Davis*, in which the court observed that "the

offense of simple possession would appear to be one example of a drug related offense not

amounting to the common definition of 'illicit trafficking.'"[51]

Petitioner further asserts that the plain language, as well as the intent of Section

1101(a)(43)(B) was to cover offenses containing an element related to *trafficking* in drugs, not

simple possession.[52]  Petitioner cites to *Matter of L-G*[53] and *Matter of K-V-D*[54] for the proposition

that the BIA gave effect to the plain meaning, and furthered the important policy of national

uniformity of the immigration laws, by construing Section 1101(a)(43)(B) as limited to offenses

which would be felonies under federal law.  These decisions, argues the Petitioner, had the effect

of excluding simple possession offenses of all controlled substances except crack cocaine from

falling under the statute.

Lucio further posits that *Hernandez-Avalos* was a sentencing guideline case, and that six

months after the Fifth Circuit decision was handed down, the Guidelines were amended to give

effect to the plain meaning of the language.  Specifically, the Guidelines were changed in order

---

[51] <u>Matter of Davis</u>, 20 I&N Dec. 536, 541 (BIA 1990).

[52] <u>See</u> <u>e.g.</u> <u>Gerbier</u>, <u>supra</u> note 11.

[53] <u>See</u> <u>Matter of L-G</u>, <u>supra</u> note 3.

[54] <u>See</u> <u>Matter of K-V-D</u>, <u>supra</u> note 3.

to give effect to the plain meaning of the language by making it explicit that a "drug trafficking crime" had to include a trafficking component.[55]

Petitioner notes that a few weeks after the Sentencing Guidelines were amended, the new provision was interpreted by Senior District Judge Justice in *United States v. Sanchez*.[56]  In that case, Judge Justice applied the rule of lenity,[57] and concluded that offenses involving simple possession of a controlled substance were not "aggravated felonies" within the meaning of the amended Sentencing Guidelines.  Judge Justice, in light of the dicta in *Hernandez-Avalos*, postulated that interpreting simple possession offenses as "aggravated felonies" should not be tolerated.

Petitioner contends that there should be more unity between the federal law and immigration laws.  Further, Lucio acknowledges that the essential premise of the pertinent dicta in *Hernandez-Avalos* is that an offense which is considered to be an "aggravated felony" for the purposes of the Sentencing Guidelines should also be an "aggravated felony" for immigration purposes.  However, Lucio argues that the converse should also be true.  18 U.S.C. Section 924(c) relates to the possession and use of firearms during the commission of "drug trafficking" offenses, and crimes of violence.  In that context, Lucio notes, it may make sense to include

---

[55] U.S.S.G. § 2L1.2(b)(1)(C,D), comment.  The definition as adopted on November 1, 2001, reads, in relevant part, as follows: "Drug trafficking offense" means an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance ... or the possession of a controlled substance ... with intent to manufacture, import, export, distribute, or dispense." Id.

[56] United States v. Sanchez, 179 F.Supp.2d 689 (W.D. Tex. 2001).

[57] Due to the serious consequences that come about from deportation, particularly in the context of lawful permanent residents, the rule of lenity has also been applied to the construction of deportation statutes. See e.g. INS v. Cardozo-Fonseca, 94 L.Ed2d 434, 459 (1987)(reaffirming "the long standing principle of construing any lingering ambiguities in deportation statutes in favor of the alien").

simple possession of drugs since someone who, for example, brandishes a weapon at a police officer who is trying to arrest him or her for "simple possession" should be treated in a like manner as someone who did the same during the sale of a small quantity of drugs to an undercover agent.  However, Lucio debates the Sentencing Commission exercised a degree of common sense with respect to the importation of this definition into the immigration context, and specifically excluded offenses (which by definition are not committed with the aid of a firearm) from the definition of "drug trafficking" crimes for purposes of 8 U.S.C. Section 1326.

Consequently, Lucio asserts, the new definition of simple possession, as defined by the Sentencing Guidelines, should be applied to immigration cases as well.  Petitioner argues that the injustice of a contrary interpretation is apparent not only in cases such as the one at bar, where an LPR accepted a plea of bargain at a time when such a disposition did not bar his eligibility for cancellation of removal, but also in instances where an LPR is convicted of simple possession of small amounts of cocaine.  In Texas, simple possession of any "visible and measurable" amount of cocaine, no matter how trivial, is a felony.[58]

Petitioner further reasons if the dicta in *Hernandez-Avalos* were to be given effect, LPRs such as Lucio would be considered ineligible for any form of relief from deportation, no matter their equities, because their offenses are "aggravated felonies."  But, if they returned unlawfully after deportation, the same offenses would not be considered "aggravated felonies" for purposes of sentencing for unlawful re-entry under 8 U.S.C. Section 1326.

---

[58] See TEX. HEALTH & SAFETY CODE §§ 481.102(3)(D) and 481.115(d).  See also Kemp v. State, 861 S.W.2d 44 (Tex. App.– Houston [14th Dist.] 1993) (ruling that "specks" of white powder in a bag weighing .5 milligrams was sufficient to sustain a conviction).

Petitioner also claims that serious constitutional violations are evident in this case. Specifically, Lucio argues that there is a violation of the Equal Protection Clause,[59] the constitutional right to procedural Due Process,[60] and substantive Due Process[61] in that his case involves an overbroad statute which interferes with protected family interests by means of a "conclusive presumption" that no non-citizen, regardless of his family ties and the minimal nature of his offense, is worthy of remaining in the United States.

Lucio cites *INS v. St. Cyr*[62] and *Zavydas v. Davis*[63] as cases which stand for the proposition that serious constitutional doubts should mitigate in favor of finding a statutory

---

[59] In the Ninth Circuit, deferred adjudication is not considered to be a conviction, and such persons would not even be subject to removal. See Lujan-Armendariz v. INS, supra note 39. In both the Second and Third Circuits, a conviction for simple possession of a controlled substance is not considered to be an aggravated felony. See Aguirre v. INS, 79 F.3d 142 (2d Cir. 1999); Gerbier v. Holmes, supra note 11.

[60] Although Petitioner acknowledges that deportation is a civil, rather than a criminal penalty; Petitioner points out that even in the context of civil cases, there are certain protections against the retroactive application of unexpected punishment. See e.g. BMW v. Gore, 517 U.S. 559, 574 (1996), in which the Supreme Court ruled "[e]lementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose." Id.

[61] Petitioner relies on cases such as Zavydas v. Davis, 533 U.S. 678 (2001); Hoang v. Comfort, 282 F.3d 1247 (10th Cir. 2002), Kim v. Ziglar, 276 F.3d 523 (9th Cir. 2002), and Patel v. Zemski, 275 F.3d 299 (3d Cir. 2001) as cases which applied retroactivity and substantive due process principles in other contexts relating to immigrants. See also Matter of Salazar-Regino, 23 I&N Dec. 223, 238 (BIA 2002) (Rosenberg, L., dissenting); Landon v. Plasencia, 459 U.S. 21, 34 (1982) (citing Bridges v. Wixon, 326 U.S. 135, 154 (1945) for the proposition that the right to rejoin immediate family ranks high among the interests of an individual); Moore v. City of East Cleveland, 431 U.S. 494, 499 (1977); and Stanley v. Illinois, 405 U.S. 645, 651 (1972). Moore and Stanley are fundamental rights cases involving family relationships. Stanley struck down a conclusive presumption and Moore simply concluded that the interest advanced by the state was insufficient to justify the particular intrusion into the family unit. As an LPR, Lucio correctly asserts that he enjoys the same substantive Due Process rights as citizens to develop and enjoy intimate family relationships in the United States.

[62] INS v. St. Cyr, supra note 26.

[63] Zavydas, supra note 61.

25

interpretation which would avoid reaching the constitutional concerns, even if one is required to

"stretch" the statutory language in order to do so.  Lucio further asserts, however, that such a

statutory interpretation is clear in this case; as is the means of distinguishing *Hernandez-Avalos*.

Petitioner reiterates that a BIA decision in 1990,[64] and amendments to the Sentencing Guidelines

in 2001,[65] have found that simple possession of a controlled substance is not a drug trafficking

crime for the purposes of 18 U.S.C. Section 924(c).  Therefore, Lucio reasons, simple possession

of a controlled substance should not be considered a drug trafficking crime under 8 U.S.C.

Section 1101(a)(43)(B).

### *B-02-228 – Rodriguez-Castro*

Praxedis Rodriguez-Castro has resided in the United States, and has been an LPR since

1956, when he was five years old.  His entire family resides lawfully in the United States,

including his wife and five United States citizen children.  He has an excellent work history, and

numerous other equities.

In 1984, Rodriguez-Castro was convicted of simple possession of marijuana, and in 1999,

he was convicted of simple possession of between one and four grams of cocaine.  On January

27, 2000, a Notice to Appear was issued and he was placed in removal proceedings based on the

cocaine conviction.

At the time of his cocaine conviction, Petitioner's eligibility for cancellation of removal,

under 8 U.S.C. Section 1229b(a), depended on whether the second offense would have been

---

[64] Matter of Davis, supra note 51.

[65] See supra note 55.

considered a felony under federal law.[66]  Rodriguez-Castro argued before an immigration judge that, had the offense been prosecuted in federal court, it would have been treated as a misdemeanor.  There was no trafficking involved, the marijuana conviction had occurred more than fifteen years previously, and he had few other "criminal history" points.  Therefore, the sentence he would have received would have been less than one year.  He also demonstrated that under similar circumstances, involving two convictions, the BIA had held that the person was eligible for relief.

On information and belief, Rodriguez-Castro asserts that a significant number of long-term LPRs who were otherwise similarly situated, in that on or after October 1, 1996, they were convicted of offenses involving simple possession of controlled substances, were granted cancellation of removal by Respondents.  However, while Rodriguez-Castro's case was pending, there were significant developments in the law.  On May 11, 2001, the Fifth Circuit decided *United States v. Hernandez-Avalos*,[67] which in strongly worded dicta disapproved of *Matter of K–V–D*.  Although the pertinent language in *Hernandez-Avalos* was dicta, the Board has followed its conclusion, but only for cases arising within the Fifth Circuit.  In a related case, on February 8, 2002, the Third Circuit concluded in *Germier v. Holmes*,[68] that, absent a trafficking element, a felony conviction for the offense of possession of a controlled substance is not an aggravated felony for immigration purposes.

---

[66] See Matter of L-G, supra note 3.

[67] See Hernandez-Avalos, supra note 10.

[68] See Gerbier, supra note 11.

On the basis of *Hernandez-Avalos*, the immigration judge ordered Rodriguez-Castro's removal on October 19, 2001.[69]  A timely appeal was filed, raising a number of statutory and constitutional issues.  However, in November 2002, the BIA affirmed, without opinion, "the results of the decision below," rendering it "the final agency decision," under 8 C.F.R. Section 3.1(e)(4).  Petitioner asserts that the failure of the BIA to address the issues raised by Rodriguez-Castro on appeal denied him Due Process in that there was no meaningful review.

### B-03-002 – Rangel-Rivera

Nohemi Rangel-Rivera has resided in the United States since 1984, when she was approximately fourteen years old.  Rangel-Rivera has been an LPR since 1985, and her entire family resides in the United States (including her three minor United States citizen children).  She has an excellent work history, and, apart from the incident leading to the instant proceedings, a clean record.

On March 9, 1999, pursuant to a previously negotiated plea bargain, Rangel pleaded no contest to simple possession of marijuana in exchange for a grant of deferred adjudication, pursuant to Article 42.12, Section 5(a) of the Texas Code of Criminal Procedure.[70]

Petitioner asserts that at the time of her arrest, simple possession of marijuana was not considered to be an aggravated felony, and that even if she were deportable, she would have been eligible for cancellation of removal under Section 1229b(a).[71]  However, on March 17, 1999,

---

[69] Plaintiff's Exhibit B.

[70] TEX. CRIM. PROC. CODE art. 42.12, § 5(a).

[71] See Matter of L-G, supra note 3.  See also Matter of K-V-D, supra note 3.

Respondents issued a Notice to Appear, alleging that Rangel-Rivera was deportable for having been convicted of an offense relating to a controlled substance.

Petitioner claims that she relied on *Matter of L-G* in conceding deportability. Rangel-Rivera requested cancellation of removal, which was granted by Immigration Judge Howard Achtsam on May 11, 1999. INS appealed the decision to the BIA. While the appeal was pending, there were several significant developments in the law. Although she was not aware of it until much later, on March 3, 1999, the BIA decided *Matter of Roldan*,[72] which held that *Matter of Manrique* had been superceded by 8 U.S.C. Section 1101(a)(48)(A).[73] Next, on December 10, 1999, the BIA issued *Matter of K-V-D*,[74] which reaffirmed *Matter of L-G*, and held that, notwithstanding *Hinojosa-Lopez*, a state felony conviction for simple possession of a controlled substance would not be construed as an aggravated felony for immigration purposes. Then, on May 11, 2001, the Fifth Circuit decided *United States v. Hernandez-Avalos*,[75] which, in strongly worded dicta, disapproved of *Matter of K-V-D*. Although the pertinent language in *Hernandez-Avalos* appears to be dicta, the Board of Immigration Appeals ("BIA") has followed the case's conclusion, but only for cases arising within this judicial circuit. And on February 14, 2002, the BIA issued *Matter of Salazar*[76] which, in light of *Hernandez-Avalos*, declined to follow Ninth Circuit precedent outside of the Ninth Circuit. Essentially, the Board ruled that it would not

---

[72] Matter of Roldan, supra note 7.

[73] See supra note 8.

[74] Matter of K-V-D, supra note 3.

[75] United States v. Hernandez-Avalos, supra note 10.

[76] Matter of Salazar, supra note 12.

apply *Matter of K-V-D* in the Fifth Circuit. Under the Board's decision in *Matter of Salazar*, Rangel-Rivera is ineligible for any form of statutory relief, and if she is removed, will permanently be separated from her family in the United States.

INS' appeal remained pending at the BIA until December 19, 2002, when the BIA granted INS' appeal on the grounds that under the subsequent case law described above, Rangel-Rivera was no longer statutorily eligible for relief. On information and belief, Petitioner maintains that a number of otherwise similarly situated LPRs, (i.e. LPRs granted deferred adjudication for an offense involving simple possession of a controlled substance) that had cases which were fully adjudicated before *Hernandez-Avalos*, were granted statutory relief by Respondents.

Petitioner Rangel-Rivera points out that otherwise similarly situated LPRs whose cases arose in the Ninth Circuit are not considered subject to removal, and those whose cases arose in the Second or Third Circuits continue to be eligible for relief from removal, in the form of cancellation of removal under 8 U.S.C. Section 1229b(a).[77]

Petitioner argues that her lengthy residence in the United States, which commenced at an early age, along with her strong family ties, employment history, and otherwise clean record combine to make her a strong candidate for relief. She further states that when Immigration Judge Achtsam grants relief, he is virtually never reversed on appeal. Therefore, Rangel-Rivera speculates, due to the length of time INS' appeal was pending, it is highly likely that had the BIA adjudicated INS' appeal on the merits it would have been dismissed, and the proceedings would have been terminated.

---

[77] See Gerbier, supra note 11. See also United States v. Pornes-Garcia, 171 F.3d 142 (2d Cir. 1999).

**ALLEGATIONS**

The following allegations have been made by at least one of the above-mentioned

Petitioners:

    1)    <u>STATUTORY CONSTRUCTION</u>

        (a)    <u>Aggravated Felony</u> – Petitioners argue that the Board erred as a

matter of law in its conclusion that *United States v. Hernandez-*

*Avalos* controls the resolution of the question of whether a deferred

adjudication disposition constitutes an aggravated felony.

Petitioners further assert that the language in the *Hernandez-Avalos*

decision that disapproved of *Matter of K-V-D* was clearly dicta.  To

the contrary, Petitioners assert that the BIA correctly decided

*Matter of K-V-D* and that it erred in not applying that case to the

Petitioners herein.

        (b)    *Matter of Roldan* – Petitioners urge that, as a question of law,

*Matter of Roldan* was incorrectly decided.  Further, Petitioners

assert that (new) 8 U.S.C. Section 1101(a)(48)(A) was not intended

to, and did not, legislatively overrule *Matter of Manrique*.

    2)    <u>EQUAL PROTECTION</u>

        (a)    <u>Federal First Offender Act</u> – Petitioners assert, for the reasons set

forth in the Ninth Circuit opinion of *Lujan-Armendariz*, that it

violates Equal Protection for a determination of whether a given

disposition of criminal charges for simple possession of a

31

controlled substance renders an immigrant subject to deportation to be based solely on whether the immigrant was processed in state or federal court.

(b)    Differing Results in Different Jurisdictions – Petitioners assert, given the national character of immigration law, that it violates Equal Protection for the results of their cases to depend solely on the federal jurisdiction in which it arose. For example, Petitioner Salazar-Regino notes that had she been placed in removal proceedings within the Ninth, rather than the Fifth Circuit, she would not be subject to removal at all. Additionally, she notes that had she been placed in such proceedings in any other jurisdiction other than the Fifth, she would have qualified for cancellation of removal. Said form of relief, Petitioners assert, would have been earned in the exercise of discretion.

(c)    Differing Results Based on Timing of the Proceedings – Petitioners assert that had their cases been heard between March 3, 1999, and May 11, 2001 (after the BIA issued *Matter of Roldan* and before the Fifth Circuit decided *Hernandez-Avalos*), they would have been subject to removal, but eligible for cancellation of removal, and would have most probably earned such relief in the exercise of discretion. Petitioners argue that it violates Equal Protection for the difference between remaining in the United States as an LPR,

32

and being removed, and thus permanently barred from returning lawfully, to be based solely on the timing of the proceedings.

3)    SUBSTANTIVE DUE PROCESS

As permanent residents, Petitioners assert that they have a fundamental liberty interest in being able to live and work in the United States, and in remaining here with their families.[78] Petitioners assert that the combination of provisions enacted by IIRIRA,[79] together with the repeal of Section 212(c) of the Act, and its replacement with 8 U.S.C Section 1229b(a), which contains an absolute prohibition on granting discretionary relief to anyone convicted of an "aggravated felony," and the overly expansive definition of what constitutes such "aggravated felonies," represents an unconstitutional "conclusive presumption." In other words, the definition conclusively presumes that all LPRs who have been convicted of any offense in the list are unworthy of being able to stay with their families in the United States, even where the State has deemed it appropriate to grant rehabilitative treatment to a first time offender. Similarly, Petitioners argue that by failing to permit any showing of countervailing equities, these provisions are unjustifiable, as they are not sufficiently narrowly tailored to meet a compelling state interest.

4)    PROCEDURAL DUE PROCESS

---

[78] See supra note 61.

[79] 8 U.S.C. § 1101(a)(48)(A).

Petitioners also assert that the decision of the Board in their cases deprive them of Procedural Due Process, as seen by another series of Supreme Court cases involving "fair notice." To apply *Matter of Roldan* and *United States v. Hernandez-Avalos* to the Petitioners retroactively, Petitioners argue, converts a disposition which, at the time of the adjudication of guilt, carried little to no immigration consequences, into one which requires mandatory deportation. Although not "punishment" for a criminal offense, Petitioners correctly point out that deportation has long been recognized as a "penalty."[80] Deportation then becomes an additional penalty, according to Petitioners, when it is retroactively attached to the "criminal offense," not by any amendment to the statute, but by virtue of changed administrative and judicial interpretations thereof.

5)    INTERNATIONAL LAW AND TREATY OBLIGATIONS

Petitioners argue that the their deportation orders violate international law, and treaty obligations between the United States and Mexico, but do not specifically point to any international laws or treaties.

Respondents have filed motions in all of the above-styled cases claiming that the district court does not have jurisdiction to hear these cases. Specifically, Respondents claim that the

---

[80] See Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 497-98 (1999) (quoting Bridges v. Wixon, 326 U.S. 135, 154 (1945)). Justice Ginsberg, concurring in Part I and the result wrote the following: "As this Court has long recognized, '[t]hat deportation is a penalty – at times a most serious one – can not be doubted.'" Id.

34

Petitioners may not challenge removability in habeas corpus because the court of appeals must first address the issues raised in their petitions for review.

## ANALYSIS

Dealing first with the Respondent's jurisdictional motion, this Court finds that the district court is not precluded from hearing the petitions in this case. This Court retains habeas jurisdiction under Section 2241 after AEDPA. Although Respondents have taken issue with said type of action in light of 8 U.S.C. Section 1252(a)(2)(C), no post-*St.Cyr* case in any circuit holds that habeas review of constitutional claims was impermissible because such claims could have been, but were not raised on direct review (in the circuit court). Petitioners must raise substantial constitutional issues in order for this Court to exercise jurisdiction.[81]  In these cases, all of Petitioners, at the very least, have raised substantial constitutional issues in their habeas petitions, and this Court will consider said petitions on the merits.

As to Petitioners' substantive claims for relief, this Court reserves judgment on Claims One through Three as well as Claim Five. However, the Court notes that Supreme Court and Fifth Circuit precedence seemingly has foreclosed all of these claims. This Court will only address Claim Four, which is one in which they are entitled to relief.

Specifically, this Court finds that Petitioners are entitled to relief because they did not receive fair and proper notice. In other words, Petitioners were unaware that their past acts would be penalized in the present, thus, their procedural Due Process rights were violated by the

---

[81] See Balogun v. Ashcroft, 270 F.3d 274, 278 n. 11 (5th Cir. 2001).  See also Nehme v. INS, 252 F.3d 415, 420 (5th Cir. 2001); Lara-Ruiz v. INS, 241 F.3d 934, 939 (7th Cir. 2001).

Board's actions in their cases. All named Petitioners should have their cases remanded to the BIA, and should be given the opportunity to apply for cancellation of removal.

The Board's past decisions have deprived the Petitioners of procedural Due Process as seen by Supreme Court cases involving "fair notice." To apply *Hernandez-Avalos* to these Petitioners retroactively essentially converts a disposition which, at the time they entered into pleas, carried little to no immigration consequences into one that mandates deportation. Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty."[82]

Deportation thus becomes an additional penalty, retroactively attached to the "criminal offense," not by any amendment to the statute, but by virtue of changed administrative and judicial interpretations thereof. This occurs, even though for about half of the Petitioners[83] under state law there is no conviction, and never will be one, if they successfully complete deferred adjudication. However, even though the other half received probation,[84] they also did not receive "fair notice," due to the fact that relief was still available to them in the form of cancellation of removal when their convictions were entered.

---

[82] See <u>Reno</u>, 471 U.S. at 497-98.

[83] Petitioners Salazar-Regino, Cantu-Delgadillo, Oviedo-Sifuentes, and Rangel-Rivera received deferred adjudication.

[84] Petitioners Sandoval-Herrera, Carrizales-Perez, Hernandez-Pantoja, Lucio, and Rodriguez-Castro received probation.

Petitioners mandatory deportation is unlawful because it retroactively makes qualitative changes in the penalty imposed in a wholly unexpected manner.[85] As espoused by the Second Circuit in *Arce v. Walker*:[86] "the Due Process Clause protects against restraints or conditions of confinement that 'exceed[] the sentence in ... an unexpected manner.'"[87] Due Process protections exist even though deportation is a civil penalty in which criminal punishment is not involved. As the Supreme Court has held in *BMW of North America v. Gore*, "[e]lementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty a State may impose."[88]

The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against judgments without notice afforded by the Due Process Clause is implicated by civil penalties. In these cases, for lawful permanent residents, there can be no question that deportation is a civil penalty imposed as a result of their criminal convictions for simple possession of narcotics. It therefore violates Due Process to deport these Petitioners

---

[85] See Nancy Morawetz, Rethinking Retrocative Deportation Laws and the Due Process Clause, 73 NYU Law Rev. 97 (1998).

[86] Arce v. Walker, 139 F.3d 329 (2d Cir. 1998).

[87] See id. at 333-34 (quoting Sandlin v. Conner, 515 U.S. 472, 484 (1995)). See also Sandlin, 515 U.S. at 479 n. 4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences"). See e.g. Vitek v. Jones, 445 U.S. 480, 493 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual"); Washington v. Harper, 494 U.S. 210, 221-22 (1990) (ruling that an inmate has a liberty interest under the Due Process Clause to refuse the involuntary administration of psychotropic drugs).

[88] See Gore, 517 U.S. at 574 n. 22.

37

due to a retroactive application of a new construction of a statute[89] because it imposes a severe

civil penalty without prior notice.[90]  As stated in *BMW of North America v. Gore*, it confounds

the "elementary notions of fairness enshrined in [the Supreme Court's] constitutional

jurisprudence" which "dictate that a person receive fair notice not only of the conduct that will

subject him to punishment but also of the severity of the penalty that a State may impose."[91]

Simple possession of controlled substances appears to now be treated *uniformly* as an

aggravated felony for immigration purposes in the Fifth Circuit.[92]  In other words, if any of the

above-named Petitioners would have pleaded guilty after the Fifth Circuit's decision in

*Hernandez-Avalos*, there is little or no doubt that they would be deemed guilty of an aggravated

felony and thus be subject to removal with no form of relief available.  However, as some of the

Petitioners testified, at the time of their dispositions, the law regarding possession of controlled

substances and whether they were to be considered aggravated felonies was very much in doubt.

In fact, it is hard for this Court to believe that each one of the named Petitioners would have

pleaded guilty to their simple possession charges if they knew that mandatory deportation would

commence thereafter, especially given their extensive family and employment ties to the United

States.  There was obviously a great deal of confusion amongst the criminal bar as to whether

---

[89] See Bouie v. City of Columbia, 378 U.S. 347, 358 (1964).  The *Bouie* Court ruled if a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be applied retroactively.  Id.

[90] See Shaffer v. Heitner, 433 U.S. 186, 217 (1977).

[91] See Gore, supra note 60 at 574.

[92] See Hernandez-Avalos, supra note 10 (holding that state law would be determinative as to the question of whether an offense would be treated as felony, and thus an aggravated felony).

*Matter of K-V-D* or *Hinojosa-Lopez* was controlling in the immigration context on the question of whether felony (simple) possession of controlled substances constituted an aggravated felony for immigration purposes. Counsel for the Service claims that the Petitioners were on fair notice by the mere fact that they were here as a gratuity, in that "they don't have a right to be here" and it is "a privilege for them to live in the United States."[93] Therefore, they are on notice, reasons the Service, when the United States entitles them to live here, in that "they need to comply with the laws."[94] However, even the INS was unsure about the state of the law prior to *Hernandez-Avalos*, as evidenced by the Service's admission that various immigration judge's were applying the principles of IIRIRA in different ways.[95] The Service itself continued operating in many jurisdictions the exact same way it had prior to the passage of IIRIRA, and did not consider simple possession as an offense that led to mandatory deportation.

The implications of this Report and Recommendations are limited, in that it only affects legal permanent residents, in this judicial circuit, convicted of simple possession charges before the Fifth Circuit's decision in *Hernandez-Avalos* and after IIRIRA took effect. This Court finds that this is the only logical solution to the problem confronting these Petitioners and the INS, especially considering the tumultuousness state of the law at the time Petitioners were found guilty of simple possession. The attorney for the Petitioners proffered to the Court that most if not all of her clients had not been informed prior to their plea that there would be immigration

---

[93] See Evidentiary Hearing Transcript at 132.

[94] Id.

[95] See Evidentiary Hearing Transcript at 140.

consequences.[96] It is a violation of an LPR's procedural due process rights for the INS to come back years later, when the law is on more solid ground, and remove these individuals. Before *Hernandez-Avalos*, legal permanent residents similar to those applying for a writ of habeas corpus in this case were at least given the opportunity to apply for cancellation of removal even though they were convicted of offenses which led to possible deportation. In fact, as counsel for both sides pointed out, prior to *Hernandez-Avalos*, immigration judges, in their own discretion, regularly granted cancellation of removal in cases similar to the ones at bar.

## RECOMMENDATION

This Court recommends that these Petitioners be entitled to reopen their cases in the BIA, in accordance with the final order of the district judge in this case. This Court recommends granting the writs based on a procedural due process violation, in that these Petitioners were not given "fair notice" that they would face mandatory deportation with no possibility of relief when they entered their guilty pleas to simple possession of controlled substances years ago.

A party's failure to file written objections to the proposed findings, conclusion, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon the grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusion accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

[96] See Evidentiary Hearing Transcript at 112. Further, criminal defense attorneys are not considered "ineffective" if they fail to disclose that deportation is a possible consequence of their guilty plea. See *United States v. Banda*, 1 F.3d 354, 355 (5th Cir. 1993).

a failure to object.[97]

DONE at Brownsville, Texas this ___26___ day of March, 2003.


Felix Recio
United States Magistrate Judge

---

[97] See Douglass v. United States Automobile Association, 79 F.3d 1415, 1417 (5th Cir. 1996).