35

United States District Court
Southern District of Texas
FILED

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

MAY 0 6 2003

Michael N. Milby
Clerk of Court

LAURA ESTELLA SALAZAR-REGINO,  )
                               )
v.                             )      C.A.  B-02-045
                               )
E.M. TROMINSKI, et al.         )
_____)


PETITIONER'S OPPOSITION TO MOTION TO TRANSFER

Laura Estela Salazar-Regino, ("Ms. Salazar"), hereby opposes Respondents' motion that her case be transferred to the Fifth Circuit without this Court having reached a decision on the merits.

I.  THIS COURT HAS JURISDICTION OVER THE INSTANT ACTION.

In *Flores-Garza v. Ashcroft*, ___ F.3d ___ (5th Cir. 2003), 2003 U.S. App. LEXIS 8389, the Court concluded, as it had in *Lerma de Garcia v. INS*, 141 F.3d 215 (5th Cir.1998), that the jurisdiction-stripping provisions of IIRIRA, (here, 8 U.S.C. §1252(a)(2)(C)), are absolute with respect to cases within their scope, and preclude consideration even of the constitutional questions raised therein.

Ms. Salazar contends that *Flores-Garza* controls her case. While it is true that the Fifth Circuit has jurisdiction to determine its jurisdiction, the only issue that Court could consider on direct review is whether deferred adjudication constitutes a "conviction" for immigration purposes. On finding that it did, the Court would have to dismiss the instant petition for lack of jurisdiction.

There is no question but that, when her petition for habeas corpus was filed, Ms. Salazar stood "convicted" within the meaning of

*Matter of Roldan*, 22 I&N Dec. 512 (1999), and *Moosa v. INS*, 171 F.3d 994 (5th Cir. 1999), of an offense relating to a controlled substance. Her statutory claim was raised only as a suggested escape from a constitutional swamp, much as in *Zadvydas v. Davis*, 533 U.S. 678 (2001), where the Supreme Court read the term "reasonable" into a detention statute in order to avoid constitutional problems. Nor could the Fifth Circuit delve into the constitutional issues, without first determining that she did not fall under 8 U.S.C. §1252(a)(2)(C). Under those circumstances, Ms. Salazar urges that there would have been no basis for a statutory challenge, and therefore, under *Flores-Garza*, no jurisdiction in the Fifth Circuit to hear her case.

Alternatively, to the extent that *Flores-Garza* did not completely close the door on constitutional challenges which would render an immigrant not subject to removal, such a procedure is foreclosed by the reasoning of *Lerma de Garcia*, and *Max-George v. Reno*, 205 F.3d 194 (5th Cir. 2000). To adopt it, the Court would have to repudiate its finding in *Max-George* that the statutory language creating the jurisdictional bar in the permanent rule cases, (8 U.S.C. §1252(a)(2)(C)), was even **stronger** than that examined in *Lerma de Garcia*. In *Max-George*, the Fifth Circuit concluded that the language of §1252(a)(2)(C) was so strong and so clear that it even repealed habeas jurisdiction. Although that conclusion was overturned in *St. Cyr*, the underlying analysis of the strength of that language has not changed. Under the Fifth Circuit's reasoning in *Max-George*, after it determines that a case falls within §1252(a)(2)(C), there is nothing left which that Court can do.

In fact, it would have to find that the language of §1252(a)(2)(C) to be *weaker* than that examined in *Lerma de Garcia*, before the Court could find that the bar did not preclude consideration of

2

issues that could be addressed in habeas corpus, beyond those which could result in a finding that it had jurisdiction. *See also, Cano-Miranda v. Ashcroft,* 262 F.3d 477 (5th Cir. 2001) (court erred in dismissing a §2241 petition complaining of denial of due process in removal proceedings for want of jurisdiction).

Nor would the scope of review at the Fifth Circuit be co-extensive with that of habeas. [2] Since resolution of some claims requires evidentiary proceedings, [3] and 8 U.S.C. §1252(a)(1) prohibits the Fifth Circuit from remanding for this purpose under 28 U.S.C. §2347(c), [4] it must be presumed that, to the extent that it considered the issue, Congress intended that if an immigrant could not seek statutory review of an order, claims arising in removal proceedings which could only be resolved with extrinsic evidence could be addressed in habeas corpus. [5]

Similarly, that Court could not have reached her claim that it violates Equal Protection where she is ineligible for relief simply

---

[2] *See, Swain v. Pressley,* 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus").

[3] For example, the testimony regarding the circumstances of the offense, and her decision to accept deferred adjudication, with no awareness that there might be immigration consequences to the plea. This is pertinent to her claim that there was no "fair notice" not only that it might be considered grounds for possible deportation, but would entail mandatory deportation.

[4] *See, Garcia v. Boldin,* 691 F.2d 1172, 1182 (5th Cir. 1982) (where alien alleges Due Process violations which are extrinsic to the record, the Court may remand the case to the agency for further inquiry and findings under 28 U.S.C. §2347(c)).

[5] *See, Turner v. Johnson,* 106 F.3d 1178, 1183 (5th Cir. 1997) ("A federal habeas court must allow discovery and an evidentiary hearing only where a factual dispute, if resolved in the petitioner's favor, would entitle him to relief...").

because her case arose in the Fifth Circuit, whereas had removal proceedings been conducted in the Ninth Circuit, she would not be considered subject to removal, under *Lujan-Aremdaris v. INS*, 222 F.3d 728 (9th Cir. 2000), and if they are arisen in the Second or Third Circuits, she would have been eligible for cancellation of removal. *See, Gerbier v. Holmes*, 280 F.3d. 297 (3rd Cir. 2002), and *Pornes-Garcia v. INS*, 171 F.3d 142 (2nd Cir. 1999).

Alternatively, since this Court has habeas jurisdiction to hear those issues which could not under any theory be reached in direct review by the Fifth Circuit, (e.g., consideration of her claim that, even if subject to removal, she should be permitted to apply for cancellation of removal, and/or §212(c) relief), it can also hear all other claims through its supplemental jurisdiction, 28 U.S.C. §1367. This is particularly appropriate to avoid splitting the case into two pieces: one part to be heard initially by the Fifth Circuit, and the other, by this Court. And in the further alternative, given the confusion over the issue of jurisdiction, it is clear that there was no "deliberate by-pass" of Fifth Circuit review within the meaning of *U.S. ex rel Marcello v. INS*, 634 F.2d 964,970 (5th Cir. 1981), cited with approval in *INS v. St Cyr*, 533 U.S. 289,310 (2001), and Ms. Salazar may therefore seek habeas review under 28 U.S.C. §2241.

INS cites a number of pre-*St. Cyr* cases, including *Requena-Rodriguez v. Pasquarell*, 190 F.3d 299 (5th Cir. 1999), as standing for the proposition that habeas review could be utilized, (in a transitional case), if, and only if, statutory review was unavailable. This overlooks not only the fact that the Supreme Court has held, unequivocally, that habeas corpus lives, but also the uncontested fact that the Fifth Circuit could not have considered some of her claims, particularly those involving relief. At best, transfer could resolve some of the issues, and, if they

4

were decided adversely to her, the case would have to be returned to this Court, to decide the remainder. Ironically, one of the issues raised in *Requena* was an Equal Protection claim. The Fifth Circuit held that this claim could be heard in habeas corpus.

INS also cites *Castro-Cortez v. INS,* 239 F.3d 1037,1046 (9th Cir. 2001), as evidence that:

> In the Ninth Circuit, transfer has already been used in immigration cases like Salazar-Regino, where the court of appeals is the proper forum for review of the legal challenges to a removal order than an alien seeks to raise, but he filed for review in the wrong forum, by filing a habeas petition in district court during the time period permitted for filing for direct review in the court of appeals.

*Castro-Cortez* involved a constitutional challenge to reinstatement, not the type of issues involved herein. Moreover, it was decided January 23, 2001, before the issuance of *St. Cyr*, *supra*. Further, the Ninth Circuit has recently issued a decision, *Cedano-Vierra v. Ashcroft,* No. 01-70622 (9th Cir. 2003), 2003 U.S.App.LEXIS 5779, holding that 8 U.S.C. §1252(a)(2)(C) deprives the Court of all jurisdiction over cases within its scope, and that any remaining review must be in Habeas Corpus.

Indeed, because Ms. Salazar filed her habeas within the thirty day time frame for filing a petition for review, this Court could, as INS urges, transfer it to the Fifth Circuit. However, on transfer, the Fifth Circuit could not consider all of her claims. So transfer would accomplish little more than delay. It would entail an additional year or so while the case went to the Fifth Circuit, was denied for lack of jurisdiction, and was then returned to this Court to do what Ms. Salazar is asking the Court to do now: make a determination on the merits.

## II. HABEAS REVIEW CAN REACH *ALL* THE ISSUES RAISED HEREIN

In *St Cyr, supra* at 310, the Court held that the 1961 Immigration Act did not affect the availability of habeas corpus review of deportation orders under 28 U.S.C. §2241. *St. Cyr* also held that IIRIRA did not affect habeas corpus. Therefore, this Court has full habeas jurisdiction. It can, for example, receive evidence, to the extent necessary to resolve Ms. Salazar's claims. *Turner v. Johnson, supra*. As discussed in *Heikkila v. Barber*, 345 U.S. 229 (1953), prior to the 1952 Immigration Act, Congress had removed federal jurisdiction to review *any* deportation order, to the fullest extent permissible under the Constitution. Habeas corpus provided the only relief available during that period. So the scope of habeas review now cannot be more restrictive than it was during the Heikkila period, and encompasses "Due Process" in the broadest sense of that phrase. For example, in *Kwock Jan Fat v. White*, 253 U.S. 454 (1920), decided during the Heikkila period, the Court remanded an exclusion case for a habeas hearing, and gave the following summary of the scope of such habeas review, *id.* at 457-8:

> It is fully settled that the decision by the Secretary of Labor, of such a question as we have here, is final, and conclusive upon the courts, unless it be shown that the proceedings were 'manifestly unfair,' were 'such as to prevent a fair investigation,' or show 'manifest abuse' of the discretion committed to the executive officers by the statute, Low Wah Suey v. Backus, supra, or that 'their authority was not fairly exercised, that is, consistently with the fundamental principles of justice embraced within the conception of due process of law,' Tang Tun v. Edsell, Chinese Inspector, 223 U. S. 673, 681, 682, 32 Sup. Ct. 359, 363 (56 L. Ed. 606). The decision must be after a hearing in good faith, however summary, Chin Yow v. United States, 208 U. S. 8, 12, 28 Sup. Ct. 201, 52 L. Ed. 369, and it must find adequate support in the evidence, Zakonaite v. Wolf, 226 U. S. 272, 274, 33 Sup. Ct. 31, 57 L. Ed. 218.

Ms. Salazar urges that it would be both "manifestly unfair," and

inconsistent "with the fundamental principles of justice embraced within the conception of due process of law," to deport her, where, at the time she entered her plea, it carried no immigration consequences at all. It would be even more "manifestly unfair" for her to be penalized because the Immigration Judge concurred that *Matter of Manrique* had not been superceded by the new definition of "conviction," and that her plea did not render her subject to deportation, and terminated removal proceedings. The ironic result of this action was that the case was delayed so long that, with the issuance of *U.S. v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir. 2001) Ms. Salazar also lost the right to seek discretionary relief.

These are issues the Fifth Circuit could not consider on transfer. They can, however, be addressed on a direct appeal from whatever disposition is reached in this Court. And even assuming, *arguendo*, that the Fifth Circuit were to conclude that it could have heard some of the issues presented herein in direct review, during any appeal from a determination made by this Court, the Fifth Circuit could still construe those issues as having reached the Court by means of a transfer. This would enable the entire case to be heard under one umbrella, rather than being broken into pieces.

It is therefore respectfully urged that Respondents' motion to transfer be denied, and that this Court decide Ms. Salazar's habeas petition on the merits.

Respectfully Submitted,

*[signature: Lisa S. Brodyaga]*

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)

Thelma O. Garcia, Attorney
301 E. Madison
Harlingen, TX 78550
(956) 425-3701
(956) 428-3731 (fax)

```
Fed. ID.  1178
Texas Bar 03052800
```

**CERTIFICATE OF SERVICE**

I certify that copies of the foregoing and proposed Order were personally delivered to the office of Lisa Putnam, SAUSA, 1709 Zoy St, Harlingen, Texas, on May 6, 2003.

_____