37

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 1 2 2003

Michael N. Milby
Clerk of Court

LAURA ESTELLA SALAZAR-REGINO,          )
                                       )
v.                                     )     C.A.  B-02-045
                                       )
E.M. TROMINSKI, et al.                 )
_____)

PETITIONER'S RESPONSE TO RESPONDENTS' OBJECTIONS TO THE
REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

TABLE OF CONTENTS

I.   THIS COURT HAS JURISDICTION OVER THE INSTANT ACTION ...     1

     1.  INS' POSITION WOULD REQUIRE THIS COURT TO SPLIT MS.
     SALAZAR'S CASE:  WITH SOME ASPECTS TO BE HEARD INITIALLY
     BY THE FIFTH CIRCUIT, AND SOME IN HABEAS CORPUS .......     2

     2.  WHERE SOME CLAIMS CAN ONLY BE HEARD IN HABEAS CORPUS,
     THIS COURT CAN HEAR THE ENTIRE CASE, EVEN IF THE FIFTH
     CIRCUIT MIGHT HAVE ENTERTAINED SOME PORTION OF IT THROUGH
     A PETITION FOR REVIEW ................................     6

II.  HABEAS REVIEW CAN REACH ALL THE ISSUES RAISED HEREIN ..     8

III.  THE FACTUAL FINDINGS OF THE MAGISTRATE ARE FULLY
      SUPPORTED BY THE RECORD HEREIN ......................    10

IV.  THE  MAGISTRATE  CORRECTLY CONCLUDED THAT IT VIOLATES
     PRINCIPLES OF "FAIR NOTICE" TO APPLY *HERNANDEZ-AVALOS*
     TO MS. SALAZAR ......................................    12

V.   THIS COURT MAY REVIEW FOR DUE PROCESS VIOLATIONS, EVEN
     WHERE THE UNDERLYING RELIEF SOUGHT IS DISCRETIONARY ....    17

# TABLE OF AUTHORITIES

## CASES

*Alexiou v. McGrath,*
    101 F. Supp. 421 (D.D.C. 1951) . . . . . . . . . . . . . 16

*Cano-Miranda v. Ashcroft,*
    262 F.3d 477 (5th Cir. 2001) . . . . . . . . . . . . 2, 19

*Demore v. Kim,*
    __ U.S. __ (2003), 2003 U.S. LEXIS 3428 . . . . . . . . . 17

*Flores-Garza v. Ashcroft,*
    __ F.3d __ (5th Cir. 2003), 2003 U.S. App. LEXIS 8389   1, 2

*Gabriel v. Johnson,*
    29 F.2d 347 (1st Cir. 1928) . . . . . . . . . . . . . . 16

*Garcia v. Boldin,*
    691 F.2d 1172 (5th Cir. 1982) . . . . . . . . . . . . 6, 9

*Gonzalez-Martinez v. Landon,*
    203 F.2d 196 (9th Cir.),
    cert. denied, 345 U.S. 998 (1953) . . . . . . . . . . . 16

*Goonsuwan v. Ashcroft,*
    252 F.3d 383 (5th Cir. 2001) . . . . . . . . . . . . . 10

*Hee Fuk Yuen v. White,*
    273 F. 10 (9th Cir.);
    cert. denied, 257 U.S. 639 (1921) . . . . . . . . . . . 16

*Heikkila v. Barber,*
    345 U.S. 229 (1953) . . . . . . . . . . . 8, 10, 14, 15

*INS v. St. Cyr,*
    533 U.S. 289 (2001) . . . . . . . . . 4, 7-10, 13, 15-18

*INS v. Ventura,*
    123 S.Ct. 353 (2002) . . . . . . . . . . . . . . . . . 9

*INS v. Yueh-Shaio Yang,*
    519 U.S. 26 (1996) . . . . . . . . . . . . . . . 13, 14

*Kwock Jan Fat v. White,*
    253 U.S. 454 (1920) . . . . . . . . . . . . . . . . . . . . . 8

*Lerma de Garcia v. INS,*
    141 F.3d 215 (5th Cir.1998) . . . . . . . . . . . . . . 1-4

*Lindsey v. Washington,*
    301 U.S. 397 (1937) . . . . . . . . . . . . . . . . . . . . 14

*Mastrapasqua v. Shaughnessy,*
    180 F.2d 999 (2d Cir. 1950) . . . . . . . . . . . . . . . . 16

*Max-George v. Reno,*
    205 F.3d 194 (5th Cir. 2000) . . . . . . . . . . . . . . 2-4

*Mohammed v. Ashcroft,*
    261 F.3d 1244 (11th Cir. 2001) . . . . . . . . . . . . . 14

*Moosa v. INS,*
    171 F.3d 994 (5th Cir. 1999) . . . . . . . . . . . . . . . 1

*Nguyen v. INS,*
    117 F.3d 206 (5th Cir.1997) . . . . . . . . . . . . . . . . 2

*Requena-Rodriguez v. Pasquarell,*
    190 F.3d 299 (5th Cir.1999) . . . . . . . . . . . . . . 3, 9

*Reyna-Montoya v. Cabrera,*
    C.A. B-02-144 (S.D.Tx) . . . . . . . . . . . . . . . . . . . 5

*Stone ex rel. Colonna v. Tillinghast,*
    32 F.2d 447 (1st Cir. 1929) . . . . . . . . . . . . . . . . 16

*Swain v. Pressley,*
    430 U.S. 372 (1977) . . . . . . . . . . . . . . . . . . . . . 6

*Turner v. Johnson,*
    106 F.3d 1178 (5th Cir. 1997) . . . . . . . . . . . . 6, 11

*U.S. ex rel Marcello v. INS,*
    634 F.2d 964 (5th Cir. 1981) . . . . . . . . . . . . 7, 10

*U.S. ex rel. Accardi v. Shaughnessy,*
347 U.S. 260 (1954) . . . . . . . . . . 8, 9, 15, 16, 19

*U.S. ex rel. Berman v. Curran,*
13 F.2d 96 (3d Cir. 1926) . . . . . . . . . 16

*U.S. ex rel. De Sousa v. Day,*
22 F.2d 472 (2d Cir. 1927) . . . . . . . . . 16

*U.S. ex rel. Exarchou v. Murff,*
265 F.2d 504 (2d Cir. 1959) . . . . . . . . . 16

*U.S. ex rel. Hadrosek v. Shaughnessy,*
101 F. Supp. 432 (S.D.N.Y. 1951) . . . . . . . . . 16

*U.S. ex rel. Hintopoulos v. Shaughnessy,*
353 U.S. 72 (1957) . . . . . . . . . . 15

*U.S. ex rel. McKenzie v. Savoretti,*
200 F.2d 546 (5th Cir. 1952) . . . . . . . . . 16

*U.S. ex rel. Picicci v. District Director,*
181 F.2d 304 (2d Cir. 1950) . . . . . . . . . 16

*U.S. v. Encarcacion-Galvez,*
964 F.2d 402 (5th Cir. 1992) . . . . . . . . . 17

*U.S. v. Hernandez-Avalos,*
251 F.3d 505 (5th Cir. 2001) . . . . . . . 5, 12, 17, 18

*U.S. v. Lopez-Ortiz,*
313 F.3d 225 (5th Cir. 2002) . . . . . . . . . 17-19

*U.S. v. Palacios-Martinez,*
845 F.2d 89 (5th Cir. 1988) . . . . . . . . . 17

*U.S. v. Pornes-Garcia,*
171 F.3d 142 (2nd Cir. 1999) . . . . . . . . . 18

*Warden, Lewisburg Penitentiary v. Marrero,*
417 U.S. 653 (1974) . . . . . . . . . . 14

-iv-

*Webster* v. *Doe*,
    486 U.S. 592 (1988) . . . . . . . . . . . . . . . . . . 17

*Zadvydas* v. *Davis*,
    533 U.S. 678 (2001) . . . . . . . . . . . . . . . . . . 2

*Zakonaite* v. *Wolf*,
    226 U. S. 272 (1912) . . . . . . . . . . . . . . . . 8, 9

**STATUTES**

8 U.S.C. §1105a(c) (1996) . . . . . . . . . . . . . . . . 10

8 U.S.C. §1182(c) ("§212(c)") . . . . . . . . . . . . 13, 19

8 U.S.C. §1226(c) . . . . . . . . . . . . . . . . . . . . 17

8 U.S.C. §1226(e) . . . . . . . . . . . . . . . . . . . . 17

8 U.S.C. §1227(a)(2)(B) . . . . . . . . . . . . . . . . . . 1

8 U.S.C. §1229b(a) . . . . . . . . . . . . . . . . . . . . 5

8 U.S.C. §1252(a)(1) . . . . . . . . . . . . . . . . . 6, 9

8 U.S.C. §1252(a)(2)(C) . . . . . . . . . . . . . . . . 1-4

8 U.S.C. §1252(b)(4)(A) . . . . . . . . . . . . . . . . . . 9

8 U.S.C. §1252(b)(4)(B) . . . . . . . . . . . . . . . . . . 9

8 U.S.C. §1252(b)(4)(C) . . . . . . . . . . . . . . . . . . 9

28 U.S.C. §1367 . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. §1631 . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. §2241 . . . . . . . . . . . . . . . . . . 7, 8, 10

28 U.S.C. §2347(c) . . . . . . . . . . . . . . . . . . . 6,

Illegal Immigration Reform and Immigrant Responsibility Act
        of 1996, ("IIRIRA"),
        §309(c)(4)(G) . . . . . . . . . . . . . . . . . . . 2

## ADMINISTRATIVE DECISIONS

*In Re Salazar-Regino,*
    23 I&N Dec. 223 (BIA 2003 . . . . . . . . . . . . . . . . 10

*Matter of K-V-D-,*
    22 I&N Dec. 1163 (BIA 1999) . . . . . . . . . . . 18, 20

*Matter of L-G-,*
    21 I&N Dec. 89 (BIA 1995) . . . . . . . . . . . . 18, 20

*Matter of Manrique,*
    21 I&N Dec. 58 (BIA 1995) . . . . . . . . . . . . . . 20

*Matter of Roldan,*
    22 I&N Dec. 512 (1999) . . . . . . . . . . . . . . . . . 1

Laura Estela Salazar-Regino, ("Ms. Salazar"), hereby files the instant response to the Government's Objections to the Report and Recommendation of the United States Magistrate Judge. [1]  As more fully shown below, contrary to the assertions of the Government, [2] the Fifth Circuit has **not** ruled on the claims raised herein, and this Court **does** have jurisdiction over the case at bar.

## I.   THIS COURT HAS JURISDICTION OVER THE INSTANT ACTION.

In *Flores-Garza v. Ashcroft*, ___ F.3d ___ (5th Cir. 2003), 2003 U.S. App. LEXIS 8389, the Court concluded, as it had in *Lerma de Garcia v. INS*, 141 F.3d 215 (5th Cir.1998), that the jurisdiction-stripping provisions of IIRIRA, (here, 8 U.S.C. §1252(a)(2)(C)), are absolute with respect to cases within their scope, and preclude consideration even of the constitutional questions raised therein.

Ms. Salazar contends that *Flores-Garza* controls her case.  While it is true that the Fifth Circuit has jurisdiction to determine its jurisdiction, the only issue that Court could consider on direct review is whether deferred adjudication constitutes a "conviction" for immigration purposes.  On finding that it did, the Court would have to dismiss the instant petition for lack of jurisdiction. It is undisputed that, when her petition was filed, Ms. Salazar stood "convicted" within the meaning of *Matter of Roldan,* 22 I&N Dec. 512 (1999), and *Moosa v. INS*, 171 F.3d 994 (5th Cir. 1999), of an offense relating to a controlled substance.  This brought her squarely within the jurisdictional bar of §1252(a)(2)(C):

> ... [N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 237(a)(2)(B) ... [8 U.S.C. §1227(a)(2)(B)].

---

[1]   Said Objections are cited herein, by page, as (OBJ:__).

[2]   Although INS has now been incorporated into the Department of Homeland Security, for simplicity, Respondents will be collectively referred to as "INS" herein.

Ms. Salazar's statutory challenges to the finding of removability were raised as a suggested escape from a constitutional swamp, much as in *Zadvydas v. Davis,* 533 U.S. 678 (2001), where, to avoid constitutional problems, the term "reasonable" was read into a detention statute. In *INS v. St. Cyr*, 533 U.S. 289 (2001) the Court held that habeas corpus has been available throughout history to review deportation orders, and is still viable today. Ms. Salazar's claim that the BIA erred as a matter of law in the finding that she is ineligible for relief falls directly under this holding.

### 1. INS' POSITION WOULD REQUIRE THIS COURT TO SPLIT MS. SALAZAR'S CASE: WITH SOME ASPECTS TO BE HEARD INITIALLY BY THE FIFTH CIRCUIT, AND SOME IN HABEAS CORPUS.

Clearly, the Fifth Circuit has jurisdiction to determine its jurisdiction. This includes jurisdiction to consider a statutory argument which, if successful, would result in a finding that Ms. Salazar not being removable as charged. It is equally clear that if a case falls under §1252(a)(2)(C), the Fifth Circuit will not entertain any claim regarding relief from removal, or a Due Process challenge to the removal proceedings. *See, Flores-Garza, Lerma de Garcia*, and *Cano-Miranda v. Ashcroft*, 262 F. 3d 477 (5th Cir. 2001) (court erred in dismissing a §2241 petition complaining of denial of due process in removal proceedings for want of jurisdiction).

It is admittedly less clear whether the Fifth Circuit would have delved into **constitutional** challenges to removability. *Flores-Garza* did not reach this issue. However, Ms. Salazar asserts that it is foreclosed by the reasoning of *Lerma de Garcia*, and *Max-George v. Reno*, 205 F.3d 194 (5th Cir. 2000), and the principle that whatever review is possible should be conducted, initially, in one Court.

In *Lerma de Garcia*, the Fifth Circuit addressed §309(c)(4) of IIRIRA, which applied to so-called "transitional" cases. The Court noted its previous holding, in *Nguyen v. INS*, 117 F.3d 206, 207

(5th Cir.1997), that the language of §309(c)(4) "completely forecloses our jurisdiction to review decisions of the BIA." While acknowledging, 205 F.3d at 216, that Ms. Lerma's case was different, as she was not "seeking review of the BIA's decision," but rather was "challenging the BIA's proceedings, as well as IIRIRA, on constitutional grounds," the Court concluded, *id.* at 217, that it did "not have jurisdiction to hear Petitioner's constitutional claims in the context she has raised them." In *Requena-Rodriguez v. Pasquarell*, 190 F.3d 299, 305 (5th Cir.1999), the Court formalized its holding that the transitional repealed "normal judicial review [i.e. direct appeal], rather than collateral review," in habeas corpus. All remaining review in such cases, therefore, was to be channeled into habeas corpus.

In *Max-George,* the opposite occurred. An immigrant appealed the denial of a petition for habeas review of a case under the permanent rules. The Court found the jurisdictional bar in the permanent rules, 8 U.S.C. §1252(a)(2)(C), to be even **stronger** than that in *Lerma de Garcia.* As the Court reasoned, 205 F.3d at 199:

> [T]he primary difference between the "transitional" and "permanent" rules is the preclusive language [of §1252(a)(2)(C)] that the jurisdictional limitation applies "notwithstanding any other provision of law."

The Court concluded, 205 F.3d at 198, that this phrase was so absolute, and so explicit, that it even repealed habeas corpus:

> We hold that IIRIRA eliminates § 2241 jurisdiction for aliens like Max-George. The clear language of IIRIRA's permanent rules force an alien to raise all potential issues regarding his deportation at one place and time: a petition for review filed in the court of appeals.

Having found that §1252(a)(2)(C) repealed habeas corpus, in order to avoid constitutional problems, the Court opined that if, instead of seeking habeas, Max-George had filed a petition for review, it could have heard his constitutional challenges, *id.* at 201,n.7:

3

We recognize that, under the transitional rules, we have held that jurisdiction over constitutional claims challenging the validity of BIA procedures was precluded on direct review. See Lerma de Garcia, 141 F.3d at 217; Nguyen, 117 F.3d at 207; Williams, 114 F.3d at 84. In those cases, we noted that the potential lack of an avenue to review constitutional claims was mitigated by the possibility of "some opportunity to apply for a writ of habeas corpus" under the transitional rules. See Lerma de Garcia, 141 F.3d at 217; Nguyen, 117 F.3d at 207; Williams, 114 F.3d at 84. However, as described supra, the permanent rules explicitly remove all habeas jurisdiction from the federal courts, while consolidating all review of immigration decisions to petitions for review filed in the courts of appeals. As we noted in Lerma de Garcia, "when a petitioner brings a constitutional challenge against the BIA proceedings themselves, an avenue of judicial review may be required." Lerma de Garcia, 141 F.3d at 216-17 (citing Chow v. INS, 113 F.3d 659, 668 (7th Cir.1997)). Given that IIRIRA's permanent rules channel all judicial review into petitions for review to be filed in the courts of appeals, constitutional challenges to BIA and to the scope of review must be brought in that context.

Under both *Lerma de Garcia* and *Max-George*, where the jurisdictional bar was implicated, the entire case was to be heard, in the first instance, in one forum. Under *Lerma de Garcia,* in habeas corpus, (for transitional cases), and under *Max-George,* on a petition for review, (under the permanent rules). But *St. Cyr* eliminated the essential premise of *Max-George*: that §1252(a)(2)(C) "remove[d] all habeas jurisdiction from the federal courts." So Ms. Salazar's situation under the permanent rules is the same as under *Lerma de Garcia*: the bar against a petition for review is absolute, and any available remedy lies in habeas corpus.

To adopt the position urged by INS, this Court would have to find that Congress intended the Courts of Appeals to consider some aspects of an alien's constitutional challenges, (those relating

solely to removability), in the context of a petition for review, while others (relating to relief and other Due Process challenges), could be heard only in habeas corpus. [3]  This would create a procedural nightmare, and the potential for even greater delay. [4]

In the instant case, the Fifth Circuit could not reach the statutory claim that Ms. Salazar is eligible for cancellation of removal, under 8 U.S.C. §1229b(a), because the retroactive application by the BIA of *U.S. v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir. 2001), deprived her of "fair notice" of the scope of the penalties that she faced for her misconduct. Similarly, that Court could not have entertained her other Due Process and Equal Protection claims involving the availability of relief.

For example, that Court could not have considered her Substantive Due Process claim. Ms. Salazar urges that the new restrictions on relief for LPRs constitute an unconstitutional "conclusive presumption" that all LPRs such as she are unworthy of being able to stay with their families, even where the State granted rehabilitative treatment to a first time offender. And by failing to permit any showing of countervailing equities, she claims that these provisions are unjustifiable, as they are not sufficiently narrowly tailored to meet a compelling state interest. Nor could it consider her claim that it violates Equal Protection to base the

-------

[3]  Still, the division would not be absolute. For example, if evidence relating to removability came into existence too late to file a motion to reopen, it could only be addressed in habeas corpus. Precisely this occurred in *Reyna-Montoya v. Cabrera*, C.A. B-02-144, currently pending before the Hon. Andrew S. Hanen.

[4]  It is doubtful that a District Court would be inclined to consider any aspect of a case until the Fifth Circuit had resolved all the issues within its purview. Indeed, there might even be a constitutional bar, arising from the "case or controversy" requirement, as issues relating to relief would be moot if the Fifth Circuit concluded that the person was not subject to removal.

availability of relief either on the speed of the administrative proceedings, or the location in which they are conducted.

There would be other complications as well, for example, where issues regarding the constitutionality of a removal order could only be resolved with extrinsic evidence. Since resolution of some claims may require evidentiary proceedings, [5] and 8 U.S.C. §1252(a)(1) now prohibits the Fifth Circuit from remanding for this purpose under 28 U.S.C. §2347(c), [6] it must be presumed that, to the extent that it considered the issue, Congress intended that claims which could only be resolved with extrinsic evidence could be addressed in habeas proceedings, regardless of whether they could otherwise have been addressed on a petition for review. [7]

### 2. WHERE SOME CLAIMS CAN ONLY BE HEARD IN HABEAS, THIS COURT CAN HEAR THE ENTIRE CASE, EVEN IF THE FIFTH CIRCUIT MIGHT HAVE ENTERTAINED SOME PORTION ON DIRECT REVIEW.

No known court has ever held, either under the transitional or permanent rules, that a case should be split: with part going to the court of appeals, and part to be heard in habeas. Nor is INS making such a suggestion now. Rather, INS has chosen to ignore the fact that some aspects of the case at bar could not, under any theory, have been heard by the Fifth Circuit on direct review.

---

[5] *See, Swain v. Pressley,* 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus").

[6] *See, Garcia v. Boldin,* 691 F.2d 1172, 1182 (5th Cir. 1982) (where alien alleges Due Process violations which are extrinsic to the record, the Court may remand the case to the agency for further inquiry and findings under 28 U.S.C. §2347(c)).

[7] For example, testimony relating to the "fair notice" and Substantive Due Process claims, neither of which could have been raised before the agency. *See, Turner v. Johnson,* 106 F.3d 1178, 1183 (5th Cir. 1997) ("federal habeas court must allow discovery and an evidentiary hearing only where a factual dispute, if resolved in the petitioner's favor, would entitle him to relief...").

Therefore, even assuming, *arguendo*, that the Fifth Circuit could have heard some of her claims on a petition for review, where this Court clearly has habeas jurisdiction, under *St. Cyr,* to hear those matters which could not have been reached in direct review, it would make no sense to conclude that it was barred from hearing the remainder of the case, over which it otherwise would also have jurisdiction, on the theory that those issues could have been heard in the first instance by the Fifth Circuit. Alternatively, even if this would bar habeas jurisdiction over those issues, they can also be heard through this Court's supplemental jurisdiction, 28 U.S.C. §1367. And in the further alternative, given the confusion over the jurisdictional questions, it is clear that there was no "deliberate by-pass" of Fifth Circuit review, and Ms. Salazar may seek habeas review of all her claims, under 28 U.S.C. §2241. [8]

Indeed, because Ms. Salazar filed her habeas within the thirty day window for filing a petition for review, if this Court concluded that it lacked jurisdiction over some of her claims, those claims could be transferred to the Fifth Circuit under 28 U.S.C. §1631. However, this would accomplish little more than delay.

## II.  HABEAS REVIEW CAN REACH ALL THE ISSUES RAISED HEREIN

INS also argues that a "district Court sitting in habeas may not take evidence de novo, but must rely upon the administrative record before it," (OBJ:9). This is not accurate. In *St Cyr, supra* at 310, The Court held that the 1961 Immigration Act did not affect the availability of habeas corpus review of deportation orders

_____

[8]    *See, U.S. ex rel Marcello v. INS,* 634 F.2d 964 (5th Cir. 1981), cited with approval in *St Cyr*, 533 U.S. at 310, for its holding that 28 U.S.C. §2241 provides an independent basis for habeas review of deportation orders. *Marcello* also held, *id.* at 971, that habeas jurisdiction could be invoked even where the case could have been heard on a petition for review, so long as there was no "deliberate by-pass" of such statutory review.

under 28 U.S.C. §2241. *St. Cyr* also held that IIRIRA did not affect habeas corpus. Therefore, this Court has full habeas jurisdiction. It can, for example, receive evidence, to the extent necessary to resolve Ms. Salazar's claims. *Turner v. Johnson*, *supra*. [9]

As discussed in *Heikkila v. Barber*, 345 U.S. 229 (1953), prior to the 1952 Immigration Act, Congress had removed federal jurisdiction to review *any* deportation order to the fullest extent permissible under the Constitution. Habeas corpus provided the only relief available during that period. So the scope of habeas review now cannot be more restrictive than during the Heikkila period, and encompasses "Due Process" in the broadest sense of the phrase. *Id.* at 236. For example, in *Kwock Jan Fat v. White*, 253 U.S. 454 (1920), the Court remanded an exclusion case for a habeas hearing, and summarized the scope of such review as follows, *id.* at 457-8:

> It is fully settled that the decision by the Secretary of Labor, of such a question as we have here, is final, and conclusive upon the courts, unless it be shown that the proceedings were 'manifestly unfair,' were 'such as to prevent a fair investigation,' or show 'manifest abuse' of the discretion committed to the executive officers by the statute, Low Wah Suey v. Backus, supra, or that 'their authority was not fairly exercised, that is, consistently with the fundamental principles of justice embraced within the conception of due process of law,' Tang Tun v. Edsell, Chinese Inspector, 223 U. S. 673, 681, 682, 32 Sup. Ct. 359, 363 (56 L. Ed. 606). The decision must be after a hearing in good faith, however summary, Chin Yow v. United States, 208 U. S. 8, 12, 28 Sup. Ct. 201, 52 L. Ed. 369, and it must find adequate support in the evidence, Zakonaite v. Wolf, 226 U. S. 272, 274, 33 Sup. Ct. 31, 57 L. Ed. 218.

Thus, while this Court cannot review for simple "abuse of

---

[9] *See also, U.S. ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (remanding for evidentiary hearing in habeas on claim that BIA had denied discretionary relief because alien's name was on secret list of undesirables issued by the Attorney General).

discretion," it may ensure there has not been a "manifest abuse" of
such discretion.  Similarly, while the Court cannot "second-guess"
factual findings, it must determine whether they "find adequate
support in the evidence." [10]  Nor is habeas review "limited to the
administrative record," as INS claims, even though statutory review
is restricted in this manner. *See, INS v. Ventura,* 123 S.Ct. 353
(2002).  While 8 U.S.C. §1252(b)(4)(A), on which INS relies, states
that "the court of appeals shall decide the petition only on the
administrative record," this has no applicability in habeas.  And
although the reference to the court of appeals is not repeated in
§1252(b)(4)(B) and (C), the context makes it clear that the entire
provision relates only to statutory review. *See also, Requena-*
*Rodriguez, supra*, interpreting the language "shall not be subject
to review by any court" as barring only "normal judicial review,"
and not collateral review through habeas corpus.

Before 1996, Due Process violations that were extrinsic to the
record were addressed through a remand, under 28 U.S.C. §2347(c).
*Garcia v. Boldin, supra.*  This option is no longer available.  8
U.S.C. §1252(a)(1).  But under *St. Cyr* and *Accardi*, there is no
reason to assume that the scope of habeas review is limited in this
manner, particularly where such an assumption would raise serious
constitutional problems because it would deprive the immigrant of
any forum in which to raise constitutional claims.

---

[10]  As stated in *Zakonaite, supra* at 274-75:

In her behalf it was contended in the court below, and is here
contended... that there was no evidence before the Secretary
of Commerce and Labor sufficient to warrant the findings of
fact upon which the order of deportation was based ...

... [A]n examination of the evidence upon which the order of
deportation was based convinces us that it was adequate to
support the Secretary's conclusion of fact. That being so, and
the appellant having had a fair hearing, the findings are not
subject to review by the courts.

It may also be, as held in *Goonsuwan v. Ashcroft,* 252 F.3d 383 (5th Cir. 2001), that the doctrine of failure to exhaust administrative remedies applies in habeas review, although this is in doubt. *Goonsuwan* applied the limitations of habeas under (former) 8 U.S.C. §1105a(c), to habeas under 28 U.S.C. §2241. However, by the time Ms. Salazar's petition was filed, 8 U.S.C. §1105a(c) had been repealed. And, as a general matter, exhaustion does not apply to habeas proceedings under §2241. *See, Marcello, supra* at 971. Since *Goonsuwan* was decided prior to *St. Cyr,* and derived from a series of cases finding habeas review to be more restrictive than was the case during the *Heikkila* era, under *St. Cyr,* this aspect is of doubtful precedential value. Nor are there exhaustion problems with respect to constitutional claims, as neither the BIA nor the Immigration Judge can entertain them. *In Re Salazar-Regino,* 23 I&N Dec. 223 (BIA 2003). And as noted in *Goonsuwan, supra* at 389:

> Even when exhaustion is a jurisdictional bar, this Court recognizes an exception "when administrative remedies are inadequate." Ramirez-Osorio v. INS, 745 F.2d 937, 939 (5th Cir.1984) (citing NLRB v. Industrial Union of Marine and Shipbuilding Workers of America, 391 U.S. 418, 426 n. 8, 88 S.Ct. 1717, 1723 n. 8, 20 L.Ed.2d 706 (1968)).

Therefore, the Magistrate Judge properly considered any and all evidence outside the "administrative record" which he considered necessary to resolve Ms. Salazar's constitutional claims. This includes her family ties, otherwise clean criminal record, and work history, all of which are directly relevant to her Substantive Due Process claim, and indirectly bear on her "fair notice" claim as well, in that they form part of the factual basis on which the Magistrate concluded that it was hard to believe that all of the petitioners in this series would have pled guilty, if they had known that such a plea would result in their mandatory deportation.

### III.   THE FACTUAL FINDINGS OF THE MAGISTRATE ARE FULLY SUPPORTED BY THE RECORD HEREIN

Under the heading of "Factual Omissions," INS argues, (OBJ:10):

> Both the R&R and the Petition for Habeas Corpus contain
> Petitioner's assertion that she relied to her detriment
> on the fact that "she was not deemed deportable at the
> time of her offense" and at the time of her plea bargain,
> the plea "carried no immigration consequences at all" but
> now "requires mandatory deportation." ... This assertion
> is directly contradicted by a clear, significant record
> evidence that neither the petitioner nor the R&R
> acknowledge:  Salazar was indeed aware of and informed
> about the immigration consequences of her guilty plea.
> Salazar signed a form which contains the statement, just
> above her signature, the phrase "I understand the
> admonitions and I am aware of the consequences of my plea
> of guilty. ...  The administrative record further
> contains the warning, "if you are not a U.S. citizen a
> plea of guilty or of nolo contendere may result in
> deportation, exclusion from admission to the country, or
> denial of naturalization." ...

This challenge is meritless.  The statement that Ms. Salazar was
"aware of the consequences" of her guilty plea must be taken in the
context of what the consequences were at the time.  At that time,
the plea was not considered to render her subject to deportation.
Period.  Nor is this essential fact counteracted by the warning
that her plea "may" result in deportation, etc..  Certainly, if she
had violated her probation, and her guilt adjudication, the plea
might have caused her deportation.  But whether or not to violate
probation was a matter under her control.  And there is a world of
difference between "may" and "shall," particularly in this context.

And while INS asserts that "the administrative record" contains
nothing to support the assertion that the plea was uninformed,
(OBJ:11), this is precisely the function of habeas corpus:  to
develop the evidence required to resolve issues extrinsic to the
administrative record.  *See, Accardi, supra,* and *Turner, supra:*

> A federal habeas court must allow ... an evidentiary
> hearing only where a factual dispute, if resolved in the
> petitioner's favor, would entitle him to relief

11

INS also challenges the statement in Ms. Salazar's verified habeas
petition that, on information and belief, "a significant number of
long-term LPRs who were otherwise similarly situated ... were
granted cancellation of removal by Respondents." (OBJ:12). INS'
challenge would not be so objectionable, but for the claim that the
assertion appears "to have misled the Magistrate Judge," *id.*. [11]

Notably, INS' Return did not dispute this (indisputable) fact. To
assert that Ms. Salazar "misled the Magistrate Judge" implies that
the statement is not true. To believe this, the Court would have
to conclude that, even though *L-G-* and *K-V-D-* clearly held that
LPRs such as Ms. Salazar were eligible for this relief, between
April 1, 1997, when IIRIRA took effect, and May 11, 2001, when
*Hernandez-Avalos* was decided, there were not a "significant number"
of cancellation applications granted to similarly situated LPRs.

## IV. THE MAGISTRATE CORRECTLY CONCLUDED THAT IT VIOLATES PRINCIPLES OF "FAIR NOTICE" TO APPLY *HERNANDEZ-AVALOS* TO MS. SALAZAR.

The legal theories underlying Ms. Salazar's position are admittedly
rather complicated. The case does not pose a single question of
statutory interpretation, but involves the interaction of several
statutes. Nor do the constitutional claims assert that any given
statute is unconstitutional on its face. Rather, it is the
interaction of the various statutes, as interpreted **after** the
events in question, which gives rise to Ms. Salazar's claim that,

---

[11] The Petition carried the following verification by counsel:

I, Lisa S. Brodyaga, hereby certify that I am familiar
with Petitioner's case and that the facts as stated with
respect thereto are true and correct to the best of my
knowledge and belief.

As one certified in Immigration and Nationality Law since 1981 by
the Texas Board of Legal Specialization, counsel is in a far better
position than the Petitioner herself to know that a "significant
number" of such applications were granted between 1996 and 2001.

12

**as applied to her** (and others similarly situated), applying these statutes as interpreted to her, violates her constitutional rights. In *St. Cyr,* only one provision was at issue, to wit, the effective date of the repeal of §212(c) of the Act.    In Part III of the dissenting opinion, by Justice Scalia, with whom the Chief Justice, Justice Thomas, and Justice O'Connor joined, the minority argued strenuously that the Court should not reach the petitioner's claim, because he allegedly had no Due Process interest in discretionary relief.    121 S.Ct. at 2303 (some internal citations omitted):

> Given the insubstantiality of the due process and Article III arguments against barring judicial review of respondent's claim (the Court does not even bother to mention them, and the Court of Appeals barely acknowledges them), I will address them only briefly.
>
> The Due Process Clause does not "[r]equir[e] [j]udicial [d]etermination [o]f" respondent's claim, Brief for Petitioners in *Calcano-Martinez,* v. *INS,* O.T.2000, No. 00-1011, p. 34.    Respondent has no legal entitlement to suspension of deportation, no matter how appealing his case.    "[T]he Attorney General's suspension of deportation [is] "an act of grace" which is accorded pursuant to her 'unfettered discretion,' ..., and [can be likened, as Judge Learned Hand observed,] to "a judge's power to suspend the execution of a sentence, or the President's to pardon a convict," ... " INS v. Yueh-Shaio Yang, 519 U.S. 26, 30, 117 S.Ct. 350, 136 L.Ed.2d 288 (1996).

Perhaps the reason that the majority did not "bother to mention" these arguments is that they were not on point.    The issue before the Court in *St. Cyr,* as in the case at bar, was not whether the Petitioner *deserved* discretionary relief, but whether the denial of the opportunity to *seek* such relief was improperly denied.    And the minority's characterization of *INS v. Yueh-Shaio Yang, supra,* as holding that relief from deportation is an "act of grace," also misses the point.    In *Yueh-Shaio Yang,* the Court examined the pertinent statute to determine what factors could be considered in

13

adjudicating an application for discretionary relief, and concluded that she had "unfettered discretion" not in terms of whether the Attorney General could arbitrarily decide not to make such relief available, but *in deciding what factors to consider*. That the exercise of discretion was not immune to scrutiny for errors of law is shown by the very issue under consideration therein! [12] And even in the context of the application for a pardon, or suspension of a criminal sentence, no known case has ever upheld a procedure, or erroneous interpretation of law, which impermissibly precluded someone from *requesting* such relief, on the basis that the ultimate decision to *grant or deny* relief was an "act of grace." [13]

If a federal court sitting in habeas corpus has the power to decide that the Attorney General improperly deprived an immigrant of the ability to seek discretionary relief, on the basis of an error of law, that Court has equal power to determine that the deprivation was improper where it derived from a constitutional violation. *See, Heikkila, supra*. To hold otherwise would gut the Historic Writ in the context of deportation cases, a result which the Supreme Court has uniformly rejected throughout the history of our nation.

Under the legal regime of the 1891 and 1917 Immigration Acts, two

---

[12]    This misconception is behind cases such as *Mohammed v. Ashcroft*, 261 F.3d 1244 (11th Cir. 2001), rejecting claims relating to the improper denial of discretionary relief in Sentencing Guidelines cases. As discussed below, different standards apply to challenges to criminal prosecutions for unlawful re-entry after deportation, than to initial habeas review of an un-executed order.

[13]    *See, Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 663 (1974) (statute retroactively removing parole constitutionally impermissible as an *ex post facto* law); *Lindsey v. Washington*, 301 U.S. 397 (1937) (statute changing maximum sentence to mandatory sentence for offense committed before enactment is impermissible *ex post facto* law).

14

cases involving the denial of discretionary relief reached the Supreme Court.  Notably, both were decided shortly *after Heikkila* specifically confirmed that Congress intended the courts to engage only in that review absolutely "required by the Constitution." These cases illustrate that the Suspension Clause requires the review of the denial of discretionary relief for both *constitutional and non-constitutional* error.  *Accardi, supra; U.S. ex rel. Hintopoulos v. Shaughnessy*, 353 U.S. 72 (1957).[14]

In *Accardi*, the Court remanded *for an evidentiary hearing* on a claimed Due Process violation in the denial of discretionary relief, to wit, that the application had been "prejudged" by virtue of the Attorney General's issuance, prior to the BIA's decision, of a confidential list of "unsavory characters," which included the petitioner, which the petitioner claimed made it impossible for him to secure fair consideration of his case.  *Accardi* is particularly significant because, as in *St. Cyr,* the majority ruled in favor of the immigrant over the objection of the dissent that habeas review did not extend to the denial of discretionary relief, and was available only to challenge the finding of deportability.  The argument that Ms. Salazar's claims are unreviewable because the underlying relief is discretionary, disregards the *Heikkila* period. In fact, like the dissenters in *St. Cyr*, the dissent in *Accardi* argued, 347 U.S. at 269 (Jackson, J. dissenting) (emphasis added):

> Petitioner... does not question his deportability or the validity of the order to deport him. .... Congress vested in the Attorney General ... discretion as to whether to suspend deportation ... *We think a refusal to exercise that discretion is not reviewable on habeas corpus...*

_____

[14]   Although decided after 1952, both *Hintopoulos* and *Accardi* arose under the 1917 Act.  *Accardi*, at 261; *Hintopoulos*, at 73.

The dissenters' assertions were necessarily rejected by the majority in both *Accardi* and *St. Cyr.* In both cases, the majority granted habeas relief and ordered a lawful exercise of discretion.

The decisions of the courts of appeals under the 1891 and 1917 Acts likewise confirm that the constitutionally-mandated habeas review of deportation orders includes review of constitutional *and* non-constitutional claims alleging that an improper legal standard was used in denying *discretionary* relief. [15]

---

[15]     *See, e.g., Stone ex rel. Colonna v. Tillinghast,* 32 F.2d 447 (1st Cir. 1929) (affirming denial of discretionary relief); *Gabriel v. Johnson,* 29 F.2d 347 (1st Cir. 1928) (reviewing sufficiency of evidence for discretionary relief); *Domenici v. Johnson,* 10 F.2d 433 (1st Cir. 1926) (reviewing sufficiency of evidence and affirming denial of discretionary relief); *Mastrapasqua v. Shaughnessy,* 180 F.2d 999 (2d Cir. 1950) (overturning denial of discretionary relief based on arbitrary application of statute); *U.S. ex rel. De Sousa v. Day,* 22 F.2d 472 (2d Cir. 1927) (reversing denial of discretionary relief based on agency's improper construction of statute); *U.S. ex rel. Picicci v. District Director,* 181 F.2d 304,306 (2d Cir. 1950) (misconstrued statute); *U.S. ex rel. Exarchou v. Murff,* 265 F.2d 504 (2d Cir. 1959) (overturning denial of discretionary relief based on insufficient evidence); *U.S. ex rel. Berman v. Curran,* 13 F.2d 96 (3d Cir. 1926) (reversing denial of discretionary relief based on misconstruction of statute). *See also Gonzalez-Martinez v. Landon,* 203 F.2d 196 (9th Cir.) (rejecting claim that discretionary relief was improperly denied), *cert. denied,* 345 U.S. 998 (1953); *U.S. ex rel. McKenzie v. Savoretti,* 200 F.2d 546 (5th Cir. 1952) (reviewing agency's construction of statute and affirming denial of discretionary relief); *Hee Fuk Yuen v. White,* 273 F. 10 (9th Cir.) (finding agency rule governing eligibility was reasonable), *cert. denied,* 257 U.S. 639 (1921); *Alexiou v. McGrath,* 101 F. Supp. 421,423-24 (D.D.C. 1951); *U.S. ex rel. Hadrosek v. Shaughnessy,* 101 F. Supp. 432,434-36 (S.D.N.Y. 1951); *U.S. ex rel. Patti v. Curran,* 22 F.2d 314,316-17 (S.D.N.Y. 1926).

Most recently, in *Demore v. Kim,* __ U.S. __ (2003), 2003 U.S. LEXIS 3428, the Court held that 8 U.S.C. §1226(e), which states that "the Attorney General's discretionary judgment regarding the application of this section shall not be subject to review" and that "no court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien," did not deprive the federal courts of jurisdiction to grant habeas relief to aliens challenging their detention under §1226(c). The Court held that the immigrant was not challenging a "discretionary judgment" by the Attorney General or a "decision" that the Attorney General had made regarding his detention or release, but that the challenge was to the statutory framework that permitted detention without bail. The Court reiterated that where Congress intends to preclude judicial review of constitutional claims, its intent must be clear. *See* also, *Webster* v. *Doe,* 486 U.S. 592,603 (1988). And, where a provision precluding review is claimed to bar habeas review, the Court requires a particularly clear statement that such is Congress' intent. *See also INS* v. *St. Cyr,* 533 U.S. at 308-309.

## V.  THIS COURT MAY REVIEW FOR DUE PROCESS VIOLATIONS, EVEN WHERE THE UNDERLYING RELIEF SOUGHT IS DISCRETIONARY.

Nor do cases such as *Hernandez-Avalos* and *U.S.* v. *Lopez-Ortiz,* 313 F.3d 225 (5th Cir. 2002), bar consideration of the issues raised herein. *Hernandez-Avalos* involved unlawful re-entry. There, the alien had lost his permanent resident status, and was contesting only an enhancement to his sentence.  In such cases, the test is "fundamental unfairness," and the threshold is quite high. As noted in *U.S.* v. *Encarcacion-Galvez,* 964 F.2d 402, 408 (5th Cir. 1992), quoting *U.S.* v. *Palacios-Martinez,* 845 F.2d 89, 92 (5th Cir. 1988):

> In evaluating a criminal trial, the threshold for establishing that the trial was fundamentally unfair is quite high. The standard for evaluating a civil proceeding like deportation to establish the foundation for a criminal offense should be no lower.

17

The claims made by Ms. Salazar were not raised in *Hernandez-Avalos*. Rather, the Court considered whether or not it was fundamentally unfair for the INS to remove the defendant as an aggravated felon, where BIA precedent at that time held that his offense did not qualify under that designation. In concluding that it was not fundamentally unfair, the Court examined two issues: whether the BIA correctly interpreted the statute in *Matter of L-G-*, 21 I&N Dec. 89 (BIA 1995), and whether the BIA, in *Matter of K-V-D-*, 22 I&N Dec. 1163 (BIA 1999), and Second Circuit, in *U.S. v. Pornes-Garcia*, 171 F.3d 142 (2nd Cir. 1999), correctly concluded that the phrase "drug trafficking offense" could have different meanings under the Sentencing Guidelines, and the Immigration and Nationality Act. The issues raised herein, including fair notice, and Substantive Due Process, were not before the Court at the time.

Nor is this Court bound by language from cases such as *Lopez-Ortiz*, *supra*, that an alien has no vested right to discretionary relief, and therefore no Due Process rights with respect thereto. First, the issue herein is not whether Ms. Salazar was denied Due Process in the denial of relief: it is whether she was deprived of fair notice of the scope of the penalties she might face as a result of her actions. The difference may be subtle, but it is vital.

More importantly, *Lopez-Ortiz* was an unlawful re-entry case. That the standard to be applied in such cases is different from that which would be applied if the immigrant had not been removed, and was challenging the removal order in habeas corpus can be seen from a comparison of *Lopez-Ortiz* and *St. Cyr*. Not coincidentally, the same error of law was involved in both cases: the denial of the opportunity to seek §212(c) relief, due to an incorrect legal interpretation. As the Court noted in *Lopez-Ortiz*, *supra* at 230:

Therefore, St. Cyr established Lopez-Ortiz's eligibility

18

for § 212(c) relief at the time of his removal, and the
Immigration Judge's contrary understanding, although in
compliance with BIA precedent, was an erroneous
application of the law.

The issue was the same in both cases: was the immigrant improperly
deprived of the opportunity to seek §212(c) relief. In both cases,
the answer was yes. That error of law entitled one immigrant to
habeas relief, but did not mandate suppression of the previously
executed deportation order of the other. The difference in the
result derives from the different standards to be applied, on
initial habeas review of an un-executed order, and in determining
whether there is such fundamental unfairness in an executed order
that it cannot form an element of a criminal offense.

Moreover, to hold that an error of law will support habeas review
of the denial of the opportunity to apply for discretionary relief,
but that a constitutional violation will not, would be to ignore
the history of habeas review of deportation orders. *See, Cano-
Miranda, supra*. *See also, Accardi, supra* at 504 (emphasis added):

> If petitioner can prove the allegation [that relief was
> denied because his name was on a secret list], he should
> receive a new hearing before the Board without the burden
> of previous proscription by the list. After the recall or
> cancellation of the list, the Board must rule out any
> consideration thereof and in arriving at its decision
> exercise its own independent discretion, **after a fair
> hearing, which is nothing more than what the regulations
> accord petitioner as a right**. ... Of course, he may be
> unable to prove his allegation before the District Court;
> but he is entitled to the opportunity to try. If
> successful, he may still fail to convince the Board or
> the Attorney General, in the exercise of their
> discretion, that he is entitled to suspension, **but at
> least he will have been afforded that due process
> required** by the regulations in such proceedings

It is therefore submitted that, regardless of whether the erroneous
denial of the opportunity to apply for discretionary relief renders

19

removal proceedings fundamentally unfair for purposes of sentencing an immigrant who unlawfully re-entered after deportation, an immigrant is entitled to assert both errors of law, and Due Process violations, in habeas review of an un-executed deportation order.

It is further submitted that, as found by the United States Magistrate Judge, Ms. Salazar was deprived of Due Process. Although the Sentencing Court had told her that her plea "might" have immigration consequences, she had no reason to believe that if she complied with her probation, her record would not be wiped clean. She therefore was not afforded fair notice of the scope of the penalties to be applied (mandatory deportation), as a result of her plea, in exchange for deferred adjudication, at a time when that disposition did not even constitute grounds for deportation, under *Matter of Manrique,* 21 I&N Dec. 58 (BIA 1995), much less would it have deprived her of all opportunity to seek discretionary relief, under *Matter of L-G-, supra,* and *Matter of K-V-D-, supra.*

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID. 1178
Texas Bar 03052800

Thelma O. Garcia, Attorney
301 E. Madison
Harlingen, TX 78550
(956) 425-3701
(956) 428-3731 (fax)

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was personally delivered to Lisa Putnam, SAUSA, 1709 Zoy St, Harlingen, Texas, on May 12, 2003.

20