# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
June 30, 2005

Charles R. Fulbruge III
Clerk

No. 03-41492

D.C. Docket No. 1:03-CV-2
1:02-CV-228
1:02-CV-225
1:02-CV-198
1:02-CV-197
1:02-CV-138
1:02-CV-136
1:02-CV-114
1:02-CV-45

LAURA ESTELA SALAZAR-REGINO

    Petitioner - Appellant

v.

E M TROMINSKI, District Director, INS;
ALBERTO R GONZALES, US Attorney General

    Respondents - Appellees

---

TEODULO CANTU-DELGADILLO

    Petitioner - Appellant

v.

E M TROMINSKI, District Director, INS;
ALBERTO R GONZALES, US Attorney General

    Respondents - Appellees

---

DANIEL CARRIZALES-PEREZ

    Petitioner - Appellant

v.

AARON CABRERA, Acting Director, INS, Acting Director
HLG/DO; ALBERTO R GONZALES, Attorney General of the United States

    Respondents - Appellees

---

MANUEL SANDOVAL-HERRERA

    Petitioner - Appellant

 v.

AARON CABRERA, Acting Director, INS;
ALBERTO R GONZALES, Attorney General of the United States

    Respondents - Appellees

---

RAUL HERNANDEZ PANTOJA

    Petitioner - Appellant

 v.

ALBERTO R GONZALES, US Attorney General;
CHARLES ARENDALE, Acting Director

    Respondents - Appellees

---

JOSE MARTIN OVIEDO-SIFUENTES

    Petitioner - Appellant

 v.

CHARLES ARENDALE, Acting Director;
ALBERTO R GONZALES, US Attorney General

    Respondents - Appellees

---

CESAR LUCIO

    Petitioner - Appellant

 v.

CHARLES ARENDALE, Acting Director
ALBERTO R GONZALES, US Attorney General

    Respondents - Appellees

---

PRAXEDIS RODRIGUEZ

    Petitioner - Appellant

 v.

AARON CABRERA; ALBERTO R GONZALES, US Attorney General

    Respondents - Appellees

---

NOHEMI RANGEL-RIVERA

Petitioner - Appellant

v.

AARON CABRERA; ALBERTO R GONZALES

Respondents - Appellees

Appeal from the United States District Court for the
Southern District of Texas, Brownsville.

Before JOLLY, SMITH, and DeMOSS, Circuit Judges.

J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed in part and dismissed in part.

ISSUED AS MANDATE: OCT 0 5 2005

A true copy
Test
Clerk, U.S. Court of Appeals, Fifth Circuit
By_____
Deputy
New Orleans, Louisiana OCT 0 5 2005

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 30, 2005

Charles R. Fulbruge III
Clerk

In the
# United States Court of Appeals
## for the Fifth Circuit

Nº 03-41492

LAURA ESTELA SALAZAR-REGINO,

Petitioner-Appellant,

VERSUS

E.M. TROMINSKI,
DISTRICT DIRECTOR, IMMIGRATION AND NATURALIZATION SERVICE;
ALBERTO R. GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondents-Appellees.

* * * * * * * * * * * * * *

TEODULO CANTU-DELGADILLO,

Petitioner-Appellant,

VERSUS

E.M. TROMINSKI,
DISTRICT DIRECTOR, IMMIGRATION AND NATURALIZATION SERVICE;
ALBERTO R. GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondents-Appellees.

* * * * * * * * * * * * * *

DANIEL CARRIZALES-PEREZ,

Petitioner-Appellant,

VERSUS

AARON CABRERA,
ACTING DIRECTOR, IMMIGRATION AND NATURALIZATION SERVICE, ACTING DIRECTOR HLG/DO;
ALBERTO R. GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondents-Appellees.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

MANUEL SANDOVAL-HERRERA,

Petitioner-Appellant,

AARON CABRERA,
ACTING DIRECTOR, IMMIGRATION AND NATURALIZATION SERVICE;
ALBERTO R. GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondents-Appellees.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

2

RAUL HERNANDEZ PANTOJA,

                      Petitioner-Appellant,

VERSUS

ALBERTO R. GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES;
CHARLES ARENDALE,
ACTING DIRECTOR;

                      Respondents-Appellees.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

JOSE MARTIN OVIEDO-SIFUENTES,

                      Petitioner-Appellant,

VERSUS

CHARLES ARENDALE,
ACTING DIRECTOR;
ALBERTO R. GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,

                      Respondents-Appellees.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

CESAR LUCIO,

Petitioner-Appellant,

CHARLES ARENDALE,
ACTING DIRECTOR;
ALBERTO R. GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondents-Appellees.

* * * * * * * * * * * * * *

PRAXEDIS RODRIGUEZ,

Petitioner-Appellant,

VERSUS

AARON CABRERA;
ALBERTO R. GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondents-Appellees.

* * * * * * * * * * * * * *

NOHEMI RANGEL-RIVERA,

Petitioner-Appellant,

VERSUS

AARON CABRERA;
ALBERTO R. GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondents-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, SMITH, and DEMOSS,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The petitioners are lawful permanent resident aliens who pleaded guilty to marihuana possession offenses and received deferred adjudication in state court. Based on their guilty pleas, the government successfully sought their removal from the United States. Although at the time of their guilty pleas the Board of Immigration Appeals ("BIA") interpreted the relevant immigration statutes as not requiring removal for this type of deferred adjudication (or at least as allowing for discretionary relief from removal), the petitioners were found to be removable and ineligible for discretionary relief based on precedent that developed after entry of their pleas. They filed for habeas corpus relief, which was denied by the district court. Finding no error, we affirm.

I.

Laura Estela Salazar-Regino and Nohemi Rangel-Rivera are lawful permanent residents who filed habeas petitions in federal district court regarding findings that they were removable and ineligible for discretionary relief from removal; the habeas petitions were consolidated with seven other similar petitions. The district court denied the petitions, and all the petritioners appealed. Salazar-Regino and Rangel-Rivera's cases were selected as the lead cases for briefing and argument. We examine the facts of each of their cases in turn.

A.

Salazar-Regino pleaded guilty on January 7, 1997, in Texas state court of third-degree-felony possession of a controlled substance (intentional and knowing possession of 5 to 50 pounds of marihuana). It was her first offense, and she received deferred adjudication of guilty and was placed on probation for 10 years. On August 10, 1998, the Immigration and Naturalization Service ("INS")[1] commenced removal proceedings against her on the grounds that she was (1) an alien who has been "convicted" of a controlled substance offense pursuant to 8 U.S.C. § 1227(a)(2)(B)(i),[2] and (2) an alien who has been "convicted" of an "aggravated felony" pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii),

---

[1] On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice, and its enforcement functions were transferred to the Department of Homeland Security; the entity is now known as the Bureau of Immigration and Customs Enforcement. Because the relevant events began before the reorganization, we continue to refer to the INS.

[2] Title 8 U.S.C. § 1227(a)(2)(B) provides that "[a]ny alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State [or] the United States relating to a controlled substance . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable."

5

namely a "drug trafficking crime" as defined by 8 U.S.C. § 1101(a)(43)(B) and 18 U.S.C. § 924(c).

Salazar-Regino denied deportability and moved to terminate the proceedings, contending she was not "convicted" for immigration purposes under the state first-offender exception created in *Matter of Manrique*, 21 I. & N. Dec. 58 (BIA 1995), which held that a first-time state drug offense of simple possession should not be considered a conviction for immigration purposes if the alien would have hypothetically been eligible for treatment under the Federal First Offender Act ("FFOA")[3] had he been prosecuted under federal narcotics laws. The immigration judge ("IJ") agreed that Salazar-Regino's deferred adjudication was not a "conviction" and concluded that her crime of drug possession would not be punishable as a felony under federal law, and thereby was not an aggravated felony under *Matter of L-G-*, 20 I. & N. Dec. 905 (BIA 1994).

The INS appealed the termination of the removal proceedings, and the BIA reversed, concluding that Salazar-Regino was deportable on either ground. The BIA found that the deferred adjudication did constitute a "conviction" for immigration purposes under the statutory definition of conviction enacted by Congress in 1996, after *Manrique* but before Salazar-Regino's guilty plea.[4] The BIA pointed to its conclusion in *Matter of Roldan*, 22 I. & N. Dec. 512 (BIA 1999), that the 1996 statutory definition superseded *Manrique*. Furthermore, the BIA concluded that Salazar-Regino was alternatively removable because her state felony drug-possession crime constituted an "aggravated felony" under *United States v. Hinojosa-Lopez*, 130 F.3d 691 (5th Cir. 1997) (which held that a state felony drug possession crime constitutes an aggravated felony for federal sentencing purposes), and *United States v. Hernandez-Avalos*, 251 F.3d 505, 508-10 (5th Cir. 2001) (which extended the definition to immigration proceedings and explicitly rejected *Matter of L-G-*). Salazar-Regino filed a habeas petition in federal district court, challenging the BIA's conclusion. The denial of that petition is the subject of the instant appeal.

B.

Rangel-Rivera pleaded guilty on March 9, 1999, in Texas state court to felony possession of marihuana (between 50 and 2000 pounds) and was granted deferred adjudication. The INS placed her in removal proceedings and charged her with being deportable as an alien convicted of a controlled substances offense. She conceded that she was deportable as charged[5] and applied for discretionary relief pursuant to 8 U.S.C. § 1229b.[6] On May 11, 1999, the IJ found that she deserved relief as a matter of discretion.

---

[3] 18 U.S.C. § 3607(a), (b).

[4] *See* 8 U.S.C. § 1101(a)(48) (defining a conviction as, *inter alia* and with no stated exceptions, a "plea of guilty" and some form of "restraint on liberty").

[5] Rangel-Rivera pleaded guilty after *Roldan* was issued, so she is foreclosed from arguing that that the decision was impermissibly applied to her retroactively in defining the term "conviction" for immigration purposes.

[6] Title 8 U.S.C. § 1229b(a)(1) states that cancellation of removal is available at the discretion of the Attorney General if the alien "(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony."

6

The INS appealed, and the BIA reversed, concluding that based on intervening precedent since the time of the prior decision, Rangel-Rivera's crime of felony drug possession was an aggravated felony under *Matter of Yanez-Garcia*, 23 I. & N. Dec. 390 (BIA 2002), which adopted the construction set forth in *Hernandez-Avalos*. Because the BIA found that Rangel-Rivera had committed an aggravated felony, it decided that the IJ had abused his discretion by granting discretionary relief. Rangel-Rivera filed a habeas petition in federal district court challenging the BIA's conclusion. Its denial is the subject of the instant appeal.

## II.

We review questions of law as to jurisdiction and merits *de novo*. *See Requena-Rodriguez v. Pasquarell*, 190 F.3d 299, 302 (5th Cir. 1999). We review the INS's constructions of the law it administers deferentially, under the test established by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999).

> On reviewing an Agency's construction of a statute it administers, we must perform the well-known two-step inquiry: First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Moosa v. INS*, 171 F.3d 994, 1005 (5th Cir. 1999) (citing *Chevron*, 467 U.S. at 842-43).

## III.

The INS argues that the district court erred when it held that it (the district court) had jurisdiction over Salazar-Regino's petition. The essence of the INS's argument is that we, as the court of appeals, had jurisdiction to review his appeal from the BIA's decision *directly*, and his habeas petition should therefore have been dismissed because he failed to exhaust his other available remedies before filing that petition.[7]

### A.

In resolving this jurisdictional question, the first issue to address is whether we would have had jurisdiction to review Salazar-Regino's claims on direct appeal. As a threshold matter, 8 U.S.C. § 1252(a)—the statute governing review of final orders of removal—states that review of such orders shall take place in the courts of appeals by means of petitions for direct review. Section 1252(a)(2)(C), however, eliminates jurisdiction to review final orders of removal involving aliens who are deportable for conviction of certain crimes, including controlled substances offenses and aggravated felonies.[8]

---

[7] The INS does not aver that the district court lacked habeas jurisdiction over Rangel-Rivera's petition, because she conceded that she was removable and only challenges her ineligibility for discretionary cancellation of removal.

[8] Section 1252(a)(2)(C) reads as follows:

(continued...)

7

Despite this jurisdictional bar, it is well established that we retain jurisdiction to determine our own jurisdiction.[9] Specifically,

> [w]hen confronted with a petition for review from a criminal alien, a court of appeals must make three specific inquiries before dismissing the petition as barred § 1252(a)(2)(C): (1) whether specific conditions act to bar jurisdiction over the petition to review; (2) whether the conditions that bar jurisdiction—for example as in this case, deportation for an aggravated felony—have been 'constitutionally applied;' and (3) if the jurisdictional bar applies, whether the remaining quantum of review satisfies the Constitution.

*Garcia*, 234 F.3d at 259. The issues raised by Salazar-Regino appear to fall squarely into what we have previously considered to be part of the "jurisdictional inquiry;" she challenges whether she was "convicted" for the purposes of removal, and she brings constitutional challenges (retroactivity, due process, and equal protection) to whether the conditions that bar jurisdiction (whether her deferred adjudication was a "conviction" and whether her offense was an "aggravated felony") apply.[10]

Finally, Salazar-Regino notes that a couple of her claims could not have been reviewed by us directly—namely, her challenge to her ineligibility for discretionary relief and her international law argument. She is correct, for these questions do not address the jurisdictional inquiry as we framed it in *Garcia, id.*

The issues that we do have jurisdiction to consider on direct review, however, are threshold issues that must be considered before reaching Salazar-Regino's ineligibility for discretionary relief. As we explained in *Lee*, 2005 U.S. App. LEXIS 9946, at *19, the proper procedure in such a situation is first to

---

[8](...continued)
Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1181(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title."

8 U.S.C. § 1252(a)(2)(C).

[9] *See Lee v. Ashcroft*, 2005 U.S. App. LEXIS 9946, at *9-*10 (5th Cir. May 31, 2005); *see also Flores-Garza v. INS*, 328 F.3d 797, 802 (5th Cir. 2003); *Garcia v. Reno*, 234 F.3d 257, 259 (5th Cir. 2000).

[10] Salazar-Regino claims this court does not have jurisdiction to entertain constitutional challenges where § 1252(a)(2)(c) applies, but the cases she cites for this proposition—*Calcano-Martinez v. INS*, 533 U.S. 348 (2001), and *Flores-Garza*, 328 F.3d at 802-03—are inapposite. The Court in *Calcano-Martinez* declined to consider this issue, because it was not relevant to the disposition of the petitions under review. *See Calcano-Martinez*, 533 U.S. at 350 n.2. Similarly, *Flores-Garza* did not decide the issue, because there we found that it was undisputed that the alien was removable by another reason that independently triggered the jurisdiction-stripping provision. *See Flores-Garza*, 328 F.3d at 802.

file a petition for direct review. If we then determine that the jurisdiction-stripping statute, § 1252(a)(2)(C), does not apply (because, for example, we decide that the offense was not an aggravated felony), then the alien is not removable, and our inquiry ends. *See id.* If, on the other hand, we determine that the alien is removable and the jurisdiction-stripping statute applies, we dismiss the case, and the alien, lacking another avenue of review, can proceed in habeas. *See id.* In sum, we agree with the government's contention that we had jurisdiction to entertain the threshold issues in Salazar-Regino's appeal on direct review.

### B.

Because there was jurisdiction for us to hear Salazar-Regino's appeal on direct review, the government urges us to dismiss her habeas petition for failure to exhaust available judicial remedies.[11] The district court correctly noted that at the time when Salazar-Regino filed her habeas petition in the district court, there was debate among the circuits as to whether the requirement of exhaustion of available judicial remedies still applies in the wake of *INS v. St. Cyr*, 533 U.S. 289 (2001).[12]

Several courts have held that the availability of an alternative forum of review does not conclusively determine, in the absence of plain Congressional intent, that habeas jurisdiction is no longer available.[13] Other circuits have ruled the other way, holding that there is no habeas jurisdiction to review an alien's removal order where he failed to exhaust available judicial remedies.[14]

Although we had not ruled on this precise jurisdictional issue at the time the district court considered Salazar-Regino's habeas petition, we have since adopted the position that the exhaustion requirement still applies post-*St. Cyr*. *See Lee v. Gonzales*, 2005 U.S.

---

[11] *See Santos v. Reno*, 228 F.3d 591, 597 (5th Cir. 2000) (holding that habeas is unavailable where the court of appeals could have heard the claims presented through another avenue of relief); *Rivera-Sanchez v. Reno,* 198 F.3d 545, 547 (5th Cir. 1999) (stating that "habeas jurisdiction exists only where 'challenges [to deportation orders] cannot be considered on direct review by the court of appeals'"); *Requena-Rodriguez v. Pasquerell*, 190 F.3d 299, 305 (5th Cir. 1999) (stating that habeas jurisdiction exists to review "statutory and constitutional challenges if those challenges cannot be considered on direct review").

[12] *Seale v. INS,* 323 F.3d 150, 54 (1st Cir. 2003) (concluding that *St. Cyr* has some ambigu-
(continued...)

[12](...continued)
ous language such that "[t]he question remains open whether the existence of another available judicial forum to adjudicate the merits of an alien's claim overrides the absence of a clear statement by Congress that it intended to strip the district courts of their habeas jurisdiction.")

[13] *See Liu v. INS,* 293 F.3d 36, 40 (2d Cir. 2002) (stating that the forum-availability argument merely reinforced but did not determine the conclusion that Congress had not plainly repealed habeas review); *see also Chmakov v. Blackman*, 266 F.3d 210, 215 (3d Cir. 2001) (concluding that although the legal questions could have been considered on direct review, the aliens still could bring a habeas petition).

[14] *Lopez v. Heinauer,* 332 F.3d 507, 510-11 (8th Cir. 2003) ("Although habeas jurisdiction remains available to deportees who raise questions of law and who have no other available judicial forum [citing *St. Cyr*], the statute here provides an adequate judicial forum, permitting the noncriminal deportee to file a petition for review in the appropriate court of appeals . . . . Lopez filed the wrong action in the wrong federal court."); *see also Baeta v. Sonchik,* 273 F.3d 1261, 1264 (9th Cir. 2001).

9

App. LEXIS 9946 (5th Cir. May 31, 2005). Because we have determined that we could have reviewed Salazar-Regino's claims on direct review, and she failed to pursue that avenue of relief before filing her habeas petition in the district court, dismissal of her habeas petition is appropriate.

Despite this, not all is lost for Salazar-Regino, for we decline to dismiss for lack of jurisdiction in this case and may consider the merits of the issues raised by her habeas petition, because transfer to this court is appropriate in the interest of justice under 28 U.S.C. § 1631,[15] which provides:

> Whether a civil action is filed in a court as defined in section of 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such court and the court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631. In the immigration context, that statute authorizes us to transfer these cases to this court if "(1) we would have been able to exercise jurisdiction on the date that they were filed in the district court; (2) the district court lacked jurisdiction over the cases; and (3) the transfer is in the interests of justice." *Castro-Cortez v. INS*, 239 F.3d 1037, 1046 (9th Cir. 2001).[16]

The first requirement is met here, because we would have had jurisdiction to review the BIA's disposition of Salazar-Regino's claims on direct review, and she filed her habeas petition in the district court within the thirty-day deadline for filing for direct review.[17] Next, we have decided that the district court lacked habeas jurisdiction because Salazar-Regino failed to exhaust her available judicial remedies. Finally, it would be in the interest of justice to allow this relief, given that the caselaw regarding this procedure was admittedly murky post-*St. Cyr*, and the purpose of the transfer statute "is to aid litigants who were confused about the proper forum for review." *Baeta*, 273 F.3d at 1264-65 (internal citations omitted).

As a final complication, we must deal with the claims that Salazar-Regino could not have brought on direct review, namely, her challenge to her ineligibility for discretionary re-

---

[15] The INS acknowledges that transfer is appropriate under § 1631.

[16] Technically, the text of § 1631 authorizes only the court in which the action was filed (which would be the district court) to effect a transfer. This places us in an odd procedural posture, because it means that if we find that the district court erred in not transferring the case to us, we would have to remand with direction to transfer back to us so that we could consider what is already before us. *See Lopez*, 332 F.3d at 511. We agree with the Eighth and Ninth Circuits that we should dispense with that formality in the interest of judicial economy, and consider the case properly transferred to us where it is otherwise appropriate under § 1631. *See id.*; *see also In re McCauley*, 814 F.2d 1350, 1352 (9th Cir. 1987).

[17] *See* 8 U.S.C. § 1252(b)(1) (stating that a petition for direct review must be filed no later than 30 days after the date of the final order of removal).

10

lief and her international law claim. The district court pointed to the existence of these claims to justify retaining jurisdiction over all of Salazar-Regino's claims.

The Ninth Circuit has taken a different approach—it splits the claims into those that could have been brought on direct appeal and those that could not, and treats them differently.[18] This approach is preferable, because it comports with the procedure recommended in *Lee*, 2005 U.S. App. LEXIS 9946, at *19—that an alien first present his threshold jurisdictional issues on direct appeal, and then if unsuccessful pursue the remainder of his claims in habeas—and because it also prevents a litigant from manufacturing habeas jurisdiction by bootstrapping, onto his habeas petition, frivolous issues that could not be reviewed on direct appeal.

Thus, pursuant to § 1631, we transfer all of Salazar-Regino's claims (other than her challenge to her ineligibility for discretionary relief and her international law claim) to this court for consideration on the merits. Because habeas jurisdiction was proper for the remaining claims, we do not transfer those, and we consider them on the merits as properly appealed to us after being denied by the district court.

IV.

Salazar-Regino challenges the BIA's decision that her Texas deferred adjudication constitutes a "conviction" for removal purposes. Importantly, no definition of "conviction" existed before 1996. In this context, the BIA decided *Matter of Manrique*, 21 I. & N. Dec. 58 (BIA 1995), which held that aliens who received deferred adjudication for first-time drug offenses in state court who would be eligible for discretionary deferred adjudication under the FFOA[19]—had they been prosecuted under federal drug laws—would not be considered to have a "conviction" for immigration removal purposes. *See id.* at 64. That decision was based on a policy consideration that the appropriate focus should be on the alien's conduct, not the breadth of the state rehabilitative statute; the BIA decided that leniency should be extended to aliens to provide them the same treatment they would have received under federal law if they had been subject to federal rather than state prosecution. *See id.* at 63-64.

In 1996, Congress drafted a concrete definition of "conviction" for immigration purposes:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
>
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

---

[18] *Cf. Baeta*, 273 F.3d at 1264 ("Under the circumstances presented, transfer of the *portion* of the habeas petition [that could have been raised on direct review] to this Court is appropriate." (emphasis added)).

[19] Under the FFOA, a successfully completed deferred adjudication could not be considered "a conviction for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, or for any other purpose." 18 U.S.C. § 3607(b).

11

8 U.S.C. § 1101(a)(48). In *Matter of Roldan*, 22 I. & N. Dec. 512, 518 (BIA 1999), the BIA determined that this new definition abrogated *Manrique*, noting that *Manrique* and the decisions it relied on were decided "in the absence of any indication from Congress as to whether a state rehabilitative action should be given any effect in immigration proceedings." *Roldan*, 22 I. & N. Dec. at 526. The BIA observed that the plain language of § 1101-(a)(48) dictated that

> a state action that purports to abrogate what would otherwise be considered a conviction, as the result of a state rehabilitative statute, rather than as a result of a procedure that vacates a conviction on the merits or on grounds relating to a statutory or constitutional violation, has no effect in determining whether an alien has been convicted for immigration purposes.

*Id.* at 527. The BIA assumed that Congress was aware of its administrative exception for deportability that was created in *Manrique* but noted that Congress had failed to provide any exceptions that would allow the *Manrique* exception to survive. *See id.*

Mainly by citing and crediting the arguments made in the *Roldan* dissents, Salazar-Regino argues that *Roldan* incorrectly concluded that § 1101(a)(48) overruled *Manrique*. As the district court correctly found, however, that question is foreclosed by *Moosa v. INS*, 171 F.3d 994, 1005-06 (5th Cir. 1999), which held that "[c]onsidering only the text of § 322(a), a Texas deferred adjudication, *see supra* note 1, is a 'conviction.'".[20] Exercising *Chevron* deference, we cannot say that the BIA's interpretation of the statute it is charged with administering was an impermissible construction in light of our binding precedent in *Moosa*, in which we found this construction to be dictated by the text of the statute. *See id.* at 1005.

V.

Salazar-Regino and Rangel-Rivera claim that the BIA erroneously applied our construction of "aggravated felony" expressed in *United States v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir. 2001). Congress has defined "aggravated felony" for immigration purposes to mean, *inter alia*, "a drug trafficking crime (as defined in section 942(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). Section 924(c) of Title 18, in turn, defines "drug trafficking crime" to include "any felony punishable under the Controlled Substances Act (21 U.S.C. § 810 *et seq.*) . . ." 18 U.S.C. § 924(c)(2); *Hernandez-Avalos*, 251 F.3d at 507.

As of 1995, the BIA used a "hypothetical federal felony" approach in defining aggravated felonies, which included any state offense that would be "punishable as a felony" under the Controlled Substances Act if it were a federal offense. *See id.* at 508-09; *Matter of L-G-*, 21 I. & N. Dec. 89 (BIA 1995). Based on this reading, the BIA construed state felony drug possession as not coming within the

---

[20] In *Moosa*, we found that the first prong of § 1101(a)(48) was met because Texas law states (continued...)

[20](...continued) that a judge may enter a deferred adjudication "after receiving a plea of guilty or plea of nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt." *Moosa*, 171 F.3d at 1005 (citing TEX.CODE.CRIM. P. art. 42.12 § 5(a)). Further, the court found the second prong was met because probation constitutes a punishment and a restraint on liberty. *See id.* at 1006.

12

definition of aggravated felony for immigration purposes. *See Hernandez-Avalos*, 251 F.3d at 508-10. Meanwhile, we used a different interpretation in federal sentencing cases, construing the definition of aggravated felony to include offenses that are (1) punishable under the Controlled Substances Act (whether as a felony or not) and (2) a felony in the law of the convicting jurisdiction. This led to divergent results. *See id.* at 508 (citing *United States v. Hinojosa-Lopez*, 130 F.3d 691, 694 (5th Cir. 1997)).

In *Hernandez-Avalos, id.*, we resolved this discrepancy by extending to the immigration context the definition of "aggravated felony" as established by *Hinojosa-Lopez*. We decided that the plain language of the statutes "indicate[s] that Congress made a deliberate policy decision to include as an 'aggravated felony' a drug crime that is a felony under state law but only as a misdemeanor under the [Controlled Substances Act], and that a lack of a uniform substantive test for determining which drug offenses qualify as 'aggravated felonies' is the consequence of a deliberate policy choice by Congress that the BIA and the courts cannot disregard" (internal citations omitted).

The BIA directly applied *Hernandez-Avalos* in Salazar-Regino's case, and to the extent that her argument attacks that case as wrongly decided, it is foreclosed by our obligation to follow the prior panel opinion. Similarly, we cannot say that the BIA was incorrect to apply *Matter of Yanez-Garcia*, 23 I. & N. Dec. 390 (BIA 2002) (adopting the *Hernandez-Avalos* rule) to Rangel-Rivera, because we are bound by *Hernandez-Avalos*, which tells us that the plain language of the statute dictates the interpretation of "aggravated felony" made by the BIA in *Yanez-Garcia*. Accordingly, we cannot say that the BIA, in light of *Chevron* deference, made an unreasonable interpretation of the statute that it is charged to administer.

## VI.

Salazar-Regino and Rangel-Rivera claim that their due process rights were violated by the retroactive application of *Roldan* and *Hernandez-Avalos* to them, because they pleaded guilty before those rulings were made. As correctly noted by the district court, the retroactive application of judicial decisions is a longstanding maxim. "The general principle that statutes operate prospectively and judicial decisions apply retroactively had been followed by the common law and the Supreme Court's decisions 'for near a thousand years.'" *Hulin v. Fibreboard Corp.*, 178 F.3d 316, 329 (5th Cir. 1999) (quoting *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372 (1910) (Holmes, J., dissenting)).

This reasoning originates from the notion that "[w]hen [the courts] appl[y] a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the court's] announcement of the rule." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993). The logic is that judges "say what the law is," rather than "what the law shall be" as legislatures do; overruling a former judicial decision is not a new declaration of law, but rather a new decision that corrects legal error. *See id.* at 107 (Scalia, J., concurring) (citing *Marbury v. Madison*, 5 U.S. 137 (1803)).[21]

---

[21] For a comprehensive discussion of the development of the retroactivity doctrine in the Su-
(continued...)

13

### A.

First, Salazar-Regino argues that principles of *administrative* rather than judicial retroactivity should be applied, citing *Microcomputer Tech. Inst. v. Riley,* 139 F.3d 1044, 1050 (5th Cir. 1998).[22] As we stated in *Riley,*

> When an agency changes its policy prospectively, a reviewing court need only determine the reasonableness of the new interpretation in terms of *Chevron.* But where an agency makes a change with retroactive effect, the reviewing court must also determine whether application of the new policy to a party who relied on the old is so unfair as to be arbitrary and capricious.

*Id.* We concluded that in evaluating the retroactive effect of a change in administrative policy, we "balance the ills of retroactivity against the disadvantages of prospectivity." *Id.*

We do not apply the administrative retroactivity test in this case, where the rule that is sought to be applied retroactively is not a change in administrative policy, but rather an administrative decision that interprets a statutory change. In *Riley,* the petitioner claimed reliance on policy stated in a memorandum, issued by the agency, that was contrary to the administrative decision made by the agency in his case. *See id.* at 1049-50.

Salazar-Regino may claim reliance on policy expressed in *Manrique* befor her guilty plea, but the fact is that § 1101(a)(48), defining "conviction," also predated her plea, and thus *Roldan* did not constitute a *sua sponte* change in policy that we review for arbitrariness and capriciousness, but rather a determination that the statute that it was charged with administering abrogated its prior policy. *Roldan* was not establishing a new rule or standard of conduct, but was merely determining the effect of a superseding act of Congress.

### B.

The petitioners also claim, citing *Hulin,* 178 F.3d at 333, that the judicial retroactivity doctrine is inapplicable to apply *Roldan* and *Hernandez-Avalos* to their cases because they claim that judicial retroactivity cannot trump the claimed due process violation, the requirement of "fair notice" under *BMW of North America v. Gore,* 517 U.S. 559 (1996). In *Hulin,* we noted several instances in which a new rule does not "determine the outcome of the case":

> Thus, a court may find (1) an alternative way of curing the constitutional violation, or (2) a previously existing, independent legal basis (having nothing to do with retroactivity) for denying relief, or (3) as in the law of qualified immunity, a well-established general legal rule that trumps the new rule of law, which general rule reflects both reliance interests and other significant policy justifications, or (4) a principle of law, such as that of "finality" present in the *Teague* context, that limits the principle of retroactivity itself. But, this case [where a

---

[21](...continued)
preme Court, *see Hulin,* 178 F.3d at 329-33.

[22] This argument could only possibly apply to the retroactive application of *Roldan,* which was a BIA decision, and not the retroactive application of *Hernandez-Avalos,* which is one of this court's opinions. Consequently, this argument could benefit only Salazar-Regino and not Rangel-Rivera, who appeals only the retroactive application of *Hernandez-Avalos* to prevent her obtaining discretionary relief from removal.

14

concern about reliance alone has led the Ohio court to create what amounts to an ad hoc exemption from retroactivity involves no such instance[.]

*Hulin*, 178 F.3d at 333 (citing *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758-59 (1995)). We then added:

> Evidently, the Supreme Court has concluded that the *Linkletter*[23] and *Chevron Oil*[24] departures from traditional retroactivity doctrine proved unsatisfactory. The Court's most recent decisions substantially reject those departures and return to the general rule of adjudicative retroactivity leaving only an *indistinct possibility* of the application of pure prospectivity *in an extremely unusual and unforeseeable case*.

*Id.* (emphasis added). The petitioners then cite language from *St. Cyr*, 533 U.S. at 323-24, which stated that it would be "contrary to 'familiar considerations of fair notice, reasonable reliance and settled expectations'" to disrupt a fully-executed plea bargain by making drastic, retroactive, changes to its immigration consequences—and claim that it establishes the "extremely unusual" circumstances envisioned by *Hulin* that may allow for the "indistinct possibility" that judicial rulings not be given retroactive effect.

The flaw in petitioners' presentation is that it is in essence nothing more than an argument that the rulings should not be applied retroactively because of reliance interests—that petitioners detrimentally relied on the BIA's pronouncements pre-*Manrique* and pre-*Hernandez-Avalos*. The Supreme Court has repeatedly rejected reliance alone as a reason for overcoming the retroactivity doctrine.[25] In this context, where reliance interests alone are insufficient to overcome judicial retroactivity, petitioners fail to cite any cases that dictate "a well-established general legal rule that trumps the new rule of law, which general rule reflects *both* reliance interests *and other significant policy justifications*" as in the law of qualified immunity. *Hulin*, 178 F.3d at 333 (emphasis added).

Although it is true that in *St. Cyr*, 533 U.S. at 321-22, the Court noted the problems of fair notice in the context of attaching new disabilities to plea agreements, that case dealt with the question whether a *statutory* change could be applied retroactively by command of Congress, and did not deal with whether a judicial decision can be applied in such a way. *See St. Cyr*, 533 U.S. at 321-22. This distinction is important—although the plain, *correct* statement of the law provided St. Cyr with the type

---

[23] 381 U.S. 618 (1965) (holding that a decision to limit a new rule of criminal constitutional law to prospective application can be based on a balancing of the purpose of the new rule, the reliance placed on the previous view of the law, and the effect on the administration of justice of a retrospective application).

[24] 404 U.S. 97 (1971) (holding that in the federal noncriminal law context, a judicial decision can be applied nonretroactively if it established a new principle of law, if such a limitation will avoid substantial inequitable results, and if retrospective application will not retard the purpose and effect of the new rule).

[25] *See, e.g., Harper*, 509 U.S. at 97 ("In both civil and criminal cases, we can scarcely permit the substantive law [to] shift and spring according to the particular equities of individual parties' claims of actual reliance on an old rule and of harm from a retroactive application of the new rule.") (internal citations omitted); *see also Reynoldsville Casket*, 514 U.S. at 759.

of relief he desired at the time of his plea agreement, Salazar-Regino and Rangel-Rivera were relying on plainly *erroneous* interpretations of the law in expecting relief at the time they pleaded guilty, as illuminated by the BIA in *Roldan* and by this court in *Hernandez-Avalos*.[26] The district court and the BIA did not err in applying *Roldan* and *Hernandez-Avalos* retroactively.

## VII.

The petitioners argue that their removal violated the Equal Protection Clause for two reasons, based on alleged unequal disposition of their cases resulting from the (1) timing and (2) location of their proceedings. We examine each in turn.

### A.

Salazar-Regino claims her rights under the Equal Protection Clause were violated because the results of her proceedings were influenced by their timing. She finds unfairness in the fact that had her removal proceedings taken place a few weeks later, *Roldan* would already have been issued, so the IJ would have found her removable. Because, however, at that hypothetical time, *Hernandez-Avalos* would not yet have been issued, Salazar-Regino would have been eligible for discretionary relief. Although Salazar-Regino is correct concerning the unfortunate effect of the timing of her proceedings, we dismiss the argument as frivolous, because she points to no persuasive authority that an Equal Protection Clause violation may be based on timing.[27]

### B.

Petitioners allege equal protection violations based on the *location* of their proceedings; arguing that varying case law in other circuits would have made them eligible for relief. We dismiss this claim as frivo-

---

[26] In *Hernandez-Avalos*, the alien argued that the interpretation of "aggravated felony" we articulated in that case should not apply to him because, had the INS officials properly applied BIA precedent at the time he was removed, his underlying state crime would not have qualified. *See Hernandez-Avalos*, 251 F.3d at 508. We rejected this claim, noting that "[w]e see no reason why the procedural posture of this case requires us to hold that it was fundamentally unfair to treat Hernandez as an aggravated felon because he should have the benefit of an agency's erroneous interpretation of applicable law." *Id.* at 509.

[27] Salazar-Regino cites only the *separate* opinion in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), which would have found an Equal Protection violation where a statute gave different treatment to discrimination claims that were considered by a Commission within 120 days of being filed by a complainant, and claims that were considered afterwards (which would be summarily dismissed). The Court found no rational basis in the distinction, because "[t]erminating potentially meritorious claims in a random manner obviously cannot serve to redress instances of discrimination," prevention of which is the purpose of the statute. *See id.* at 439 (separate opinion of Blackmun, J.).

This is distinguishable from the situation at hand, because no statute works here to create divergent outcomes based on timing of certain actions beyond Salazar-Regino's control; rather, the disparate effects are a result of the speed of the removal proceedings in relation to the issuance of other legal precedent. The fact is that any party who is subject to the effect of a judicial decision that changes the interpretation of a statute can always complain that he received disparate treatment *vis-à-vis* others whose cases were finalized before the new interpretation was rendered. We cannot find an equal protection violation in such a circumstance, because it would eviscerate the well-established judicial retroactivity doctrine.

16

lous—adopting this unsupported argument would wreck havoc on the federal judicial system as we know it—basically disallowing any split of authority between or among the various circuits.

### VIII.

Petitioners contend their removal violated international law. Their entire argument solely consists of a citation to *Beharry v. Reno*, 183 F. Supp. 2d 584, 593-99 (E.D.N.Y. 2002). This point is waived for failure to brief adequately.[28] Beyond failing to explain how the cited opinion should apply to the instant case, petitioners fail to mention that the opinion is not even good law: It was overruled in *Beharry v. Ashcroft*, 329 F.3d 51 (2d Cir. 2003).

### IX.

In summary, we DISMISS Salazar-Regino's claims that we transferred to this court, pursuant to 28 U.S.C. § 1631, because the BIA did not commit reversible error. We AFFIRM the dismissal of the entirety of Rangel-Rivera's habeas petition and the claims that remained in Salazar-Regino's habeas petition, because the district court committed no reversible error.

---

[28] *See* FED. R. APP. P. 28(a)(9)(A); *see also United States v. Ogle*, 2005 U.S. App. LEXIS 12714, at *2 (5th Cir. June 27, 2005) (per curiam); *United States v. Martinez*, 263 F.3d 436 (5th Cir. 2001).

17